David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)

Michael J. McMorrow (admitted *pro hac vice*)
mjmcmorrow@edelson.com
Rafey Balabanian (admitted *pro hac vice*)
rbalabanian@edelson.com
EDELSON McGUIRE LLC
350 N. LaSalle St., Suite 1300
(312) 589-6370 (phone)
(312) 589-6378 (facsimile)

Counsel for Plaintiffs

Case 8:09-cv-01097-DOC -AN   Document 78   Filed 08/16/10   Page 1 of 12   Page ID #:774

FILED
2010 AUG 16 PM 3: 42
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY: _____

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| TRACIE THOMAS, individually and on behalf of a class of similarly situated individuals,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>TACO BELL CORP., a California corporation, and THE CHICAGO AREA TACO BELL RESTAURANT OWNERS' ADVERTISING ASSOCIATION, an Illinois corporation,<br><br>　　　　　　Defendants. | Case No. SACV09-1097 DOC (ANx)<br><br>**FOURTH AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

## FOURTH AMENDED CLASS ACTION COMPLAINT

Plaintiff Tracie Thomas brings this class action complaint against Defendants Taco Bell Corp. and The Chicago Area Taco Bell Restaurant Owners' Advertising Association (collectively, "Defendants") to stop Defendants' practice of making unsolicited text message calls to cellular telephones, and to obtain redress for all persons injured by their conduct. This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1332 (d). Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and upon information and belief as to all other matters,, including investigation conducted by her attorneys.

## NATURE OF THE CASE

1. In October and November 2005, Defendant Taco Bell Corp. ("Taco Bell") launched a national campaign to promote the sale of new food products added to their restaurants' menus: Chicken and Steak Nachos Bell Grande. The campaign was supported nationally by television ads and supported locally by in-store advertisements on signage, bags and trayliners, by radio ads, and by "new media" advertisements including email and text messages. The new Chicken and Steak Nachos Bell Grande were the only products promoted during this time period by Taco Bell and its local affiliates. Taco Bell itself placed the national advertising, while the local advertising was placed by local advertising cooperatives.

2. One of those local advertising cooperatives is the Chicago Area Taco Bell Restaurant Owners' Advertising Association, or as it is called by Taco Bell, the Chicago DMA ("Chicago DMA"). The Chicago DMA, acting in coordination with and with the approval of Taco Bell, developed complimentary advertising to support the national Chicken and Steak Nachos Bell Grande advertising, including a contest by which consumers could vote by SMS message or email for either "chicken" or "steak" as their favorite Nachos Bell Grande variety (the "Contest"). The Contest was supported by radio ads, bags, trayliners, and also by two "SMS blasts," or the sending of unauthorized advertisements in the form of

"text message" calls, to the cellular telephones of consumers located throughout the Chicago metropolitan area and beyond.

3. By effectuating these unauthorized text message calls (hereinafter, "wireless spam"), Defendants have caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

4. In order to redress these injuries, Plaintiff, on behalf of herself and a nationwide class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

5. On behalf of the class, Plaintiff seeks an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

**PARTIES**

6. Plaintiff is an individual who maintains residence in Georgia.

7. Defendant Taco Bell is a California corporation and maintained its principal place of business in this district at all times material to this complaint. It does business throughout California and the nation.

8. Defendant The Chicago Area Taco Bell Restaurant Owners' Advertising Association (the "Chicago DMA"), an Illinois corporation, maintained its principal place of business in Illinois at all times relevant to this complaint. The Chicago DMA is an advertising cooperative whose owners, operators and/or members consist of the local owners of Taco Bell restaurants in the Chicago area and Defendant Taco Bell itself. It does business throughout Illinois, Indiana, Michigan and Wisconsin, and nationwide through the website www.MyLocalTacoBell.com. Taco Bell maintains a continuous high level of supervision and control over the Chicago DMA, in several ways, including but not limited to the following:

(a) The existence of the Chicago DMA requires the approval of Taco Bell and each member of the Chicago DMA must be a Taco Bell franchisee;

(b) Taco Bell is itself a member of the Chicago Association and the only permanent member of the Chicago Association's Board of Directors;

(c) The Chicago DMA acts subject to Taco Bell's franchise agreements, Taco Bell's Marketing Funds Policy, and other agreements written and controlled by Taco Bell;

(d) The funding for the Chicago DMA's advertisements comes directly from Taco Bell's Universal Fund and is controlled by Taco Bell's National Advertising Funds Administration;

(e) The decision as to which particular items the Chicago DMA promotes through its advertisements is controlled by Taco Bell's national advertising calendar;

(f) On information and belief, the expenses of the Chicago DMA are approved and reimbursed by Taco Bell;

(g) Taco Bell maintains requirements for all vendors hired to conduct advertising on behalf of the Chicago Association; and

(h) Taco Bell maintains final approval over all advertising conducted by the Chicago Association or on its behalf.

## JURISDICTION

8. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (c) none of the exceptions under § 1332(d) apply to this action.

9. The Court has general personal jurisdiction over Taco Bell because Taco Bell is headquartered in Irvine, California, which is located in this District.

10. The Court has general personal jurisdiction over the Chicago DMA because it has systematic and continuous contacts with California and this District through its conduct

of business with Defendant Taco Bell. Those contacts include regular contacts between the Chicago DMA and Taco Bell for approval by Taco Bell of the actions of the Chicago DMA, as well as the residence of one of the Chicago DMA's directors – Taco Bell – in this district.

11. The Court has specific personal jurisdiction over the Chicago DMA because it has contacts with the state of California and this District out of which the cause of action in this case arose:

(a) Taco Bell itself voted to proceed with the Contest and was present when the idea for the contest was discussed by the Chicago DMA.

(b) The Chicago DMA, through its advertising agent, sent the artwork for the bags and trayliners used in the Contest to Taco Bell itself for approval, and similarly sent the Contest rules to Taco Bell for approval. Taco Bell's employees reviewed and approved the rules, bags and trayliners for the Contest, separately approved all uses of trademarks and intellectual property of Taco Bell, and communicated regularly with the Chicago DMA in connection therewith.

(c) The Chicago DMA, through its advertising agent, hired ipsh!net, Inc. ("ipsh!"), a Delaware corporation with its principal place of business in San Francisco, California, to assist with several aspects of the Contest.

(d) ipsh! and the Chicago DMA, through its advertising agent, collaboratively designed and implemented much of the local advertising in the Chicken and Steak Nachos Bell Grande Promotion and the Contest, including the rules for the Contest, the artwork for bags and trayliners, and the two short message service ("SMS") blasts.

(e) ipsh! and the Chicago DMA, through its advertising agent, collaboratively worked to obtain a "vanity" SMS short code for the Contest, which was TBELL (82355), and spent several months working together to "provision" the short code (obtain the approval for its use) on all wireless carriers.

(f) ipsh! performed its work on the Contest from several locations, including from its offices in San Francisco and from Los Angeles. The vast majority of ipsh!'s employees working on the Contest were located in San Francisco.

(g) ipsh! programmers in San Francisco extensively tested the SMS blasts with carriers over a course of several weeks, and sent test SMS messages to several California wireless numbers.

(h) ipsh! directed both SMS blasts to be transmitted nationwide from a company, known as an aggregator, headquartered in Sunnyvale, California with servers also located in Sunnyvale. The aggregator transmitted all the messages at issue to the wireless carriers located throughout the United States, who in turn forwarded the messages to consumers, including to plaintiff.

(i) Several of the cellular phone numbers to which the messages were sent had area codes corresponding to San Francisco and San Jose phone numbers.

(j) ipsh! maintained a website for use by the Chicago DMA and its advertising agent to monitor the results of and responses to the Contest.

(k) ipsh! purchased the lists of phone numbers to which the two SMS blasts were sent from a vendor located in San Francisco, California.

(l) After the Contest was over, ipsh! renewed the vanity short code TBELL (82355) for potential use in future advertising campaigns with the Chicago DMA.

(m) All payments to ipsh! were forwarded to ipsh! at its San Francisco offices.

(n) All payments made by ipsh! to other vendors were made from ipsh!'s San Francisco offices.

(o) The Chicago DMA and its advertising agent communicated extensively, via telephone and email, with ipsh! and Taco Bell personnel in San Francisco, Los Angeles, and Irvine, California over a period of several months beginning in or around July 2005 and continuing through March 2006.

## VENUE

12. Venue is proper in this district under 28 U.S.C. § 1391(a), as Defendant Taco Bell is a resident of this district and a substantial part of the events concerning the wireless spam at issue occurred in this district.

## COMMON ALLEGATIONS OF FACT

13. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

14. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

15. A "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When a SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

16. Unlike more conventional advertisements, wireless spam can actually cost its recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or for a text plan that includes a number of messages, regardless whether or not the message is authorized.

17. Over the course of October through November 2005, Defendants began a nationwide promotion of Chicken and Steak Nachos Bell Grande, which included as one of its elements the mass transmission of tens of thousands of wireless spam calls to cellular telephones of what they hoped were potential customers of Taco Bell fast food products.

18. Taco Bell, both in its individual capacity and as a member and Director of the Chicago DMA, maintained final approval over all such spam advertisements, and all such advertisements explicitly advertised Taco Bell's products and Taco Bell itself within Taco Bell's own advertising schedule.

16. On information and belief, Taco Bell paid for such advertisements through the Chicago DMA, through Taco Bell's National Advertising Funds Administration, through Taco Bell's Local Media Funds and/or through other means. Indeed, pursuant to franchise agreements, local association bylaws, and other agreements, Taco Bell required and maintained direct prior approval of all advertising in order to present to the general public a unified, coherent and consistent approach and image for the Taco Bell brand.

17. On or about October 11, 2005, Plaintiff's cell phone rang, indicating that a text call was being received.

18. The "from" field of such transmission was identified cryptically as "47336," a format which is an abbreviated telephone number known as an SMS short code licensed and operated by Defendants' agent ipsh!. The body of such text message read:

> VISIT TACO BELL TO TRY THE NEW CHICKEN
> & STEAK NACHOS BELL GRANDE RPLY
> "CHX" OR "STK" 2 VOTE 4 UR FAVE! U MAY
> WIN A YEAR OF FREE TACOS! PWDBYZINGY
> 2STOP2OPTOUT

19. Over the next several months, on information and belief, Plaintiff received additional spam text message advertisements from Defendants, including from short code "82355" (TBELL), an additional SMS short code licensed and operated by Defendants' agent ipsh!, in knowing violation of Plaintiff's privacy. On information and belief, Defendants paid ipsh! for the creation and transmission of all such text message advertisements either directly or through third parties, and supervised and approved all such advertisements.

20. At no time did Plaintiff consent to the receipt of such text message calls from Defendants.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a class (the "Class") defined as follows: all persons in the United States and its Territories who received one or more unauthorized text message advertisements on behalf of Taco Bell since September 15, 2005.

22. The Class consists of thousands of individuals and other entities, making joinder impracticable.

23. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

24. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

25. Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

26. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class as a result of the transmission of the wireless spam alleged herein. Plaintiff and the other Class members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting the wireless spam.

27. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

(a) Does the wireless spam distributed by Defendants violate 47 U.S.C. § 227?

(b) Are the Class's members entitled to treble damages based on the willfulness of Defendants' conduct?

**FIRST CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227: On behalf of the Class)**

28. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

29. Defendants and their agents made tens of thousands of unsolicited commercial text calls to the Class members' wireless telephone numbers using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

30. These text calls were made *en masse* and without the prior express consent of the Plaintiff and the other members of the Class.

31. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' illegal conduct, the members of the class suffered actual damages and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500.00 in damages for each violation of such act.

32. Because Defendants' misconduct was willful and knowing, the Court should, pursuant to section 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the Class.

WHEREFORE, Plaintiff Tracie Thomas, on behalf of herself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;
2. An award of actual and statutory damages;

3. An injunction requiring Defendants to cease all wireless spam activities;

4. An award of reasonable attorneys' fees and costs; and

5. Such further and other relief the Court deems reasonable and just.

Respectfully submitted,

Dated: August 16, 2010

By: _____
David C. Parisi
Suzanne Havens Beckman
PARISI & HAVENS LLP
Attorneys for TRACIE THOMAS,
individually and on behalf of a class of
similarly situated individuals

FOURTH AMENDED COMPLAINT
11
11

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: August 16, 2010

By: /s/ David C. Parisi
David C. Parisi
Suzanne Havens Beckman
PARISI & HAVENS LLP
Attorneys for TRACIE THOMAS,
individually and on behalf of a class of
similarly situated individuals