1  David C. Parisi (SBN 162248)
   dparisi@parisihavens.com
2  Suzanne Havens Beckman (SBN 188814)
   shavens@parisihavens.com
3  PARISI & HAVENS LLP
   15233 Valleyheart Drive
4  Sherman Oaks, California   91403
   (818) 990-1299 (phone)
5  (818) 501-7852 (facsimile)

6  Michael J. McMorrow (admitted *Pro Hac Vice*)
   mjmcmorrow@edelson.com
7  Rafey Balabanian (admitted *Pro Hac Vice*)
   rbalabanian@edelson.com
8  EDELSON MCGUIRE LLC
   350 N. LaSalle Street, Suite 1300
9  Chicago, Illinois 60654
   (312) 589-6370 (phone)
10 (312) 589-6378 (facsimile)

11 Counsel for Plaintiff

12                    **UNITED STATES DISTRICT COURT**
                      **CENTRAL DISTRICT OF CALIFORNIA**
13                        **SOUTHERN DIVISION**

14

15  TRACIE THOMAS, individually, and on       **Case No.: SACV09-1097 DOC(ANx)**
    behalf of a class of similarly situated
16  individuals,                               **PLAINTIFF'S REPLY IN SUPPORT OF**
                                               **MOTION TO COMPEL DISCOVERY**
17                    Plaintiff,               **RESPONSES FROM DEFENDANT TACO**
                                               **BELL CORP.**
18  v.
                                               **Discovery Cut-off Date:  June 8, 2011**
19  TACO BELL CORP., a California
    corporation,                               **Pretrial Conference Date:  October 3, 2011**
20
                      Defendant.               **Trial Date:  October 18, 2011**
21
                                               Judge: Hon. David O. Carter
22
                                               Time:  8:30 a.m.
23                                             Date:  April 4, 2011

24

25

26

27

28

---

REPLY IN SUPPORT OF MTN. TO COMPEL                      NO. SACV09-1097 DOC (ANX)

1    Taco Bell's resistance to discovery in this case is without merit.  Taco Bell claims it had

2    nothing to do with the marketing campaign conducted by the Chicago Area Taco Bell Restaurant

3    Owner's Advertising Association ("Chicago DMA") in October/November 2005, and is in the

4    process of filing a motion for summary judgment based on its contention.[1]  This makes whether

5    Taco Bell can be held liable for the text message spam campaign a central question of this case.

6    Yet Taco Bell refuses to respond to any discovery which would help answer that question.  Taco

7    Bell has not produced a single document relating to its role in the Chicago DMA's local campaign,

8    nor has it answered interrogatories designed to explore what that role was.[2]

9    The argument that Taco Bell had nothing to do with the Chicago DMA's marketing

10   campaign is simply false—what little discovery Plaintiff has obtained thus far confirms that Taco

11   Bell played some role in the campaign.  Taco Bell is a board member of the Chicago DMA and

12   twice voted to approve the local campaign; it also approved several aspects of the campaign

13   separately, and simultaneously ran a national campaign promoting the same product.  Taco Bell's

14   Marketing Funds Policy requires that it approve all aspects of local advertising campaigns in

15   advance, and that it pay the vendors.  Yet Taco Bell has steadfastly refused to provide any

16   information or documents that would identify the extent of its role in the Chicago DMA's local

17   campaign, or how that local campaign ties into Taco Bell's national campaign.  Furthermore, Taco

18   Bell claims that, even if it had such documents and information, they would have been destroyed.

19   Taco Bell's resistance to discovery is unfounded.  Plaintiff is entitled to such discovery

20   under the federal rules.  To the extent that Taco Bell has destroyed the relevant information, that

21   destruction violates Taco Bell's own document retention policies, which show that relevant

22   documents should still be maintained.

23

24

---

25   [1] Taco Bell initiated a meet and confer process regarding its proposed Motion for Summary Judgment

26   on March 15, 2011.  Taco Bell intends to file its Motion on Friday, March 25, 2011.
     [2] Most of Plaintiff's contentions regarding the deficiency of Taco Bell's individual responses remain

27   unchanged from the contentions contained in the Proposed Joint Stipulation filed with Plaintiff's Motion.
     Plaintiff incorporates those contentions herein.

28

**A. Taco Bell's Control and Approval of the Chicken and Steak Nachos Bell Grande Advertising in October/November 2005 Is Relevant to Key Issues Concerning the Liability of Taco Bell in this Case.**

Taco Bell claims that the relevant question is whether it can be held vicariously liable for the actions of the Chicago DMA.  Although that may be a relevant question, Plaintiff also contends that Taco Bell is <u>directly</u> liable for the Chicago DMA's campaign because: (a) it voted to approve the campaign and the text message component thereof; (b) it subsequently approved several aspects of the campaign; (c) the advertising was for Taco Bell's own restaurants and brands, and as such, the purpose of the campaign was to benefit Taco Bell financially, both indirectly and directly; and (d) the campaign was coordinated with a national Taco Bell campaign promoting the same product at the same time.

In litigation under the TCPA, the entity on whose behalf the offending message is sent is liable, along with the entity that transmits the unsolicited message, as well as any entity that "had a high degree of involvement in, and actual notice of the allegedly unlawful activity and nonetheless failed to take steps to prevent it."  *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 92-93 (D.D.C. 2006); *Charvat v. Echostar Satellite LLC*, 676 F. Supp. 2d 668, 673 (S.D. Ohio 2009)

Plaintiff is entitled to discovery on "any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b); *See Jadwin v. County of Kern*, 2008 WL 2025093, at *1 (E.D. Cal. May 9, 2008).  The scope of this rule is broad; the requested documents need not be admissible at trial to be deemed relevant under Rule 26.  *In re eBay Seller Antitrust Litigation*, 2008 WL 3925350, at *1 (N.D. Cal. Aug. 22, 2008).  Additionally, the documents need only be "reasonably calculated to lead to the discovery of admissible evidence."  *Id.*; Fed. R. Civ. P. 26(b). Issues of Taco Bell's control and approval of the text message campaign are essential in this case.

Plaintiff is entitled to documents and information relating to both Taco Bell's involvement in the Chicago DMA's local campaign, and Taco Bell's simultaneous national marketing campaign.  The marketing campaign conducted by the Chicago DMA and the national campaign conducted by Taco Bell were coordinated.  Taco Bell has not produced a single document having

anything to do with either campaign, despite the fact that third-party discovery has already shown

that responsive documents exist within Taco Bell's possession.

1.      **Documents already uncovered suggest that Taco Bell had a high
degree of involvement in the transmission of text messages**

The presentation from the Chicago DMA's August 4, 2005 meeting demonstrates some of

the involvement by Taco Bell in the transmission of text messages.    Taco Bell's area Marketing

Manager (Susan Viti) presented Taco Bell's National Advertising Calendar, which dedicated W9

(window 9) to Chicken and Steak Nachos Bell Grande. (McMorrow Decl., Ex. N, at 1)  The

presentation described radio purchases and national and local television purchases between the

dates 10/10 – 11/13-05 (*Id*., at 2), as well as a promotion to "launch and promote the Chicken and

Steak Nachos Bell Grande products in W9" which included support by "radio tags, bags,

trayliners, email blast and a text message push." (*Id*.)

Additionally, the timing of the text message blast was set so that it would coincide with the

local and national advertising going on at that same time (and promoting the same new products).

An October 7, 2005 email from ESW Partners to ipsh![3] is instructive.  It states:

> Putting the [brakes] and/or delaying this promotion is not an option.  There
> are several other variables involved.  The text component is just one.  This
> Friday morning (3 days to the start of the campaign) it is IMPOSSIBLE to
> contact each store and stop the in-store part of this promotion from
> happening.  As far as media is concerned, traffic went out on Wednesday
> (TV and radio).

McMorrow Decl., Ex. S.  As this email and the initial presentation show, all of the local and

national advertising[4] was coordinated within the same "window" to promote the same product.

Taco Bell cites to deposition testimony of ESW and ipsh!net, Inc. as evidence that Taco

Bell had no involvement in the creation or development of the "text message component" of the

marketing campaign.  See Opp. At 7.  But these statements by third parties are contradicted by

---

[3] ESW Partners is an advertising agency who worked on behalf of the Chicago DMA.  ipsh!net, Inc. is
a company that was hired by the Chicago DMA to perform work related to the text messaging campaign.
[4] According to deposition testimony from ESW, national advertising consists mainly of television
commercials.

1  <u>every</u> document produced in this case; even if the deponents were correct, that would not mean

2  that Taco Bell should be excused from discovery on these issues.  Plaintiff has had no opportunity

3  to take discovery from Taco Bell to determine whether Taco Bell may have information or

4  documents, or witnesses who might refute these statements.

5       **2.       Evidence already produced shows that Taco Bell must have approved the text message campaign in this lawsuit**

6

7       The Chicago DMA could not have conducted this campaign without Taco Bell's prior

8  approval or acquiescence.  ███████████████████████████████████

9  ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ███████████████

12 ████████████████████████████████████████████████

13 ████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 █████████████████████

21 ████████████████████████████████████████████████

22 ████████████████████████████████████

23 ████████████████████████████████████████████████

24 ███████████████████

25 ██████████████████████████████████████

26 ████████████████████████████  To the extent that

27 Taco Bell claims it did not approve this local campaign, some documents bearing on this lack of

28 approval should likewise exist, and Plaintiff is entitled to those.

1    Taco Bell also relies on the fact that the Chicago DMA is a "distinct legal entity" from

2  Taco Bell and follows appropriate corporate formalities.  See Opp. At 7-8.  This is a meaningless

3  distinction.  Under the TCPA, the FCC has said that the focus during a liability analysis is "on the

4  nature of an entity's activity rather than any label that the entity may claim."  *Kopff*, 425 F. Supp.

5  2d at 92 n. 19; 47 U.S.C. § 227(b)(2).  Although the Chicago DMA is a legally-separate entity

6  from Taco Bell, it exists only with Taco Bell's approval, it receives all of its funding from Taco

7  Bell, Taco Bell is the only permanent member of the Chicago DMA and of its Board of Directors,

8  and ███████████████████████████████████████████████████████████████

9  ████████████████████████████████  Thus, the information requested by Plaintiff is

10  certainly relevant to her claims against Taco Bell.

11    Taco Bell finally complains that the requested discovery would constitute an "undue

12  burden" and cause Taco Bell to incur substantial expense, and to "reveal confidential and

13  proprietary information" regarding its advertising practices. Opp. At 8. Taco Bell provides no

14  explanation of what that expense or burden would be, or why its relevant information cannot be

15  produced simply because it is confidential or proprietary.  Furthermore, the parties have agreed to

16  produce confidential documents subject to an "attorneys' eyes only" restriction pending the entry

17  of a protective order in this case.  The party resisting discovery bears the burden of showing why

18  the requests are improper, (*Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009), and

19  Taco Bell has presented nothing but generalized objections.

20    Taco Bell uses its objection to the scope of discovery to refuse answers to a number of

21  discovery requests.  For example, Document Requests 15, 28, 36, and 38 (Second Set) request

22  documents relating to the implementation of the marketing campaign (which Plaintiff defines to

23  include the national campaign), approvals, the date Taco Bell became aware that the Chicago

24  DMA's local initiatives would include text messaging, and correspondence regarding the

25  marketing campaign with the Chicago DMA and its advertising agency.  Taco Bell has produced

26  nothing, repeatedly stating simply that it did not approve the local promotion.  See Opp. At 16.

27  Issues of Taco Bell's control and approval of the text message campaign are essential in this case.

28  Defendant's response, therefore, is deficient.

**B. Taco Bell's Records Information Management Program Dictates that Taco Bell Should Maintain Documents Relevant to the Marketing Campaign**

Taco Bell claims that any responsive documents to Plaintiff's discovery requests would no longer exist because Plaintiff waited nearly four years to file suit. (Resp. at 11). This argument is demonstrably incorrect. Taco Bell's own document retention policy states that all of the documents requested still exist.

Taco Bell belatedly produced a copy[5] of its document retention policy after Plaintiff began the process of filing this Motion. The retention policy provides clear guidelines that describe how long records must be maintained. ██████████████████████████████████ ████████████████████████████████

Furthermore, several documents have already been produced by other parties which show that Taco Bell has, or had, some records relating to the marketing campaign. Exhibits N-R of the Declaration of Michael J. McMorrow all consist of documents created in connection with the marketing campaign. All were addressed to or from employees of Taco Bell Corp. Yet, Taco Bell has not produced any of these documents,[7] nor has it produced any related internal documents.

Taco Bell's statements that it has no such documents and that it only obtained these documents from the Chicago DMA's advertising agent in connection with this suit (Opp. At 14) defy reason. The only documents Taco Bell has provided in this litigation show that Taco Bell required prior approval of the campaign, that any payments made to ESW or other vendors (such



1   as ipsh!) had to be paid by Taco Bell's NAFA, and that Taco Bell had to maintain all the relevant

2   records until well after this suit was filed. ████████████████████████████████

3   ████████████████████████████████████████████████

4   ████████████████████████████████████████████████

5   ████████████████████████████████████████████████

6   ██████████████████████████████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████████████████████████

9        This Court should compel Taco Bell to produce these documents, or to explain when and

10   how they were destroyed, so that Plaintiff can decide whether a spoliation claim and/or an adverse

11   inference is appropriate.

12   **C. Taco Bell Cannot Unilaterally Limit the Scope of Discovery**

13        Taco Bell attempts to unilaterally limit the scope of the relevant issues in this case by

14   ignoring the allegations of the Fourth Amended Complaint ("Complaint").  The Complaint alleges

15   that the text messages were part of a coordinated national and local campaign to promote Nachos

16   Bell Grande (McMorrow Decl., Ex. L, ¶¶ 1, 2, 17), and defines the class as including all persons

17   who received unauthorized text messages "on behalf of Taco Bell since September 15, 2005," (*Id.*

18   Ex. L, ¶ 21) but Taco Bell refuses to produce any documents related to either campaign.  Taco

19   Bell's refusal to produce any documents or information, given the information already uncovered

20   in the limited discovery in this case, suggests that Taco Bell is withholding relevant documents

21   and information, or that it has destroyed such documents in violation of its own document

22   retention policies.

23        Taco Bell argues that Plaintiff's alleged class definition is too broad, because she received

24   only one spam text message from Taco Bell.  (Opp. At 8-11).  Even if true, this fact does not make

25   the class definition too broad, nor does it make Plaintiff's discovery requests related to Taco Bell's

26   sending of text messages improper.  Plaintiff has pled the class definition; she is entitled to

27   discovery which may affect that class definition.   Plaintiff is "master of her complaint," and as

28   such defines the scope of her putative class, not the Defendant.  *See Lowdermilk v. U.S. Bank*

1    *Nat'l Ass'n*, 479 F.3d 994, 998-99 (9th Cir. 2007).  Whether the text messages were sent from

2    short code 82355 (TBELL) or some other short code is of no moment.  Plaintiff pled a class of

3    consumers who received an unauthorized text message from Taco Bell since September 15, 2005.

4         The Chicago DMA licensed short code 82355 in 2005-06; Taco Bell now licenses it.[8]

5    Plaintiff does not currently know how many consumers received unauthorized text messages from

6    Taco Bell, except that it was at least the 28,000 consumers who received the two text message

7    blasts on October 10-11, 2005 and November 10-11, 2005.  If Taco Bell has records relevant to

8    that class definition, it should be required to produce them. *See Transamerican Refining Corp. v.*

9    *Dravo Corp.*, 139 F.R.D. 619 (S.D. Tex. 1991) (discovery by interrogatories and request for

10   documents generally allowed when relevant to common questions, posed in good faith, not unduly

11   burdensome, and information not available to class representatives).

12   **D.  Plaintiff's Requests for Electronically Stored Information Are Proper**

13        Plaintiff's First Set of Document Requests and First Set of Interrogatories are designed to

14   identify the location and sources of electronically stored information ("ESI") and how searches

15   were constructed (see Interrogatory 2-4), basic groups of relevant ESI (DR 2-5), and preservation

16   (DR 5-15).  Taco Bell objects to producing any electronically stored information, and in fact, has

17   produced not a single email or other form of ESI.  Taco Bell belatedly claims that it has

18   "performed a diligent search for relevant documents" (Opp. At 11), and attaches a Supplemental

19   Response to a single Interrogatory purporting to describe the search terms used in that "diligent

20   search."  (Bledsoe Decl., Ex. B, at 36).  This response, sent over four months after the

21   propounding of the discovery requests, merely shows the inadequacy of Taco Bell's efforts.

22        The purported search terms are themselves inadequate.  Taco Bell claims that it performed

23   a search for relevant documents and ESI, using the following search terms: "text message";

24   "'steak;' 'chicken' [term] 'Nachos Bell Grande'"; "ESW"; "ipsh"; "82355"; "TBELL"; "TBell";

25   "SMS"; "text alert"; "Text and Vote"; "RPLY CHX OR STK"; "VOTE 4 UR FAVE!" (Opp. At

26   _____

27        [8] In response to this Motion, Taco Bell belatedly produced a Declaration apparently showing
     Taco Bell's licensing of short code 82355 in 2009.

28

15).  Plaintiff's counsel was given no input over the search terms, which are patently inadequate.[9] Even so, it is impossible to conclude that Taco Bell ran a search of <u>any</u> database or computer in its possession and retrieved no documents responsive to the broad search terms "text message," which is a very common term, "82355," which is a short code licensed and operated by Taco Bell, or the names of two popular menu items—"'Chicken' and 'Steak' Nachos Bell Grande."

Additionally, Taco Bell does not identify who performed the search described in its Supplemental Response.  It does not identify when the search was performed.  It does not identify what systems, computers, databases, etc. were searched.  The response gives no indication that the computers or files of relevant Taco Bell employees were searched.

At a minimum, the computers and files of Susan Viti,[10] Bernadette Jones, Jennifer Arnoldt, Dana Moore, Susan Gauthier, Pamela Freeman, and Renee Fromme should have been searched, as Plaintiff already knows from other discovery that these employees were involved in various approvals related to the Marketing Campaign and should contain relevant documents. *See, e.g*., McMorrow Decl., Exs. N-S; s*ee also* Prop. Joint Stip., at 24.  ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████.  Taco Bell's responses do not indicate that any of this happened.

Taco Bell's indication that it no longer retains documents responsive to Plaintiff's discovery requests (*see* Opp. at 11) exemplifies why Plaintiff's ESI-related discovery requests are necessary.  A litigant is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or the subject of a pending discovery request. *Wm. T. Thompson Co. v. General Nutrition Corp.,* 593 F. Supp. 1443, 1455 (C.D. Cal.

---

[9] Plaintiff proposes that any Order granting her Motion include a provision that her ESI expert coordinate with Defense counsel on a reasonable set of ESI search terms.

[10] Taco Bell's counsel has indicated that Taco Bell is unable to locate any of Susan Viti's files, but has not indicated whether, how, where, or when Taco Bell searched her files. Ms. Viti now works for a different division of Yum! Brands, Taco Bell's parent company.

1   1984).   Furthermore, a party's failure to follow its own document retention policies is grounds for

2   sanctions and adverse inference instructions.  *See Dong Ah Tire & Rubber Co., Ltd. v. Glasforms,*

3   *Inc.*, C 06-3359 JF (RS), 2009 WL 1949124 (N.D. Cal. July 2, 2009) *modified,* C 06-3359 JF

4   (RS), 2009 WL 2485556 (N.D. Cal. Aug. 12, 2009) (discussing failure of defendant to maintain

5   repair records in contravention of its own retention policy).

6        Taco Bell has, according to its own document retention policy, failed to preserve relevant

7   evidence.  This is precisely why documents and ESI related to Taco Bell's deletion of data,

8   reformatting of computers, etc. is relevant and necessary.

9                                **CONCLUSION**

10       For the reasons stated above and in Plaintiff's Motion to Compel and Proposed Joint

11  Stipulation attached thereto, Plaintiff respectfully requests, pursuant to Federal Rule of Civil

12  Procedure 37 and L.R. 37, that this Court issue an Order compelling Defendant Taco Bell Corp. to

13  Respond to Plaintiff's Discovery Requests, as outlined herein and in the Proposed Joint

14  Stipulation, as well as an imposition of an appropriate sanction on Defendant and/or its counsel

15  under Fed. R. Civ. P. 37(a)(5)(A) and Local Rule 37-4.

16

17  Dated:  March 21, 2011                    Respectfully Submitted,

18                                            TRACIE THOMAS, individually and on behalf of a
                                              class of similarly situated individuals,
19

20                                             /s/  Michael J. McMorrow
                                              One of Plaintiff's Attorneys
21
    David C. Parisi (SBN 162248)
22  dcparisi@parisihavens.com
    Suzanne Havens Beckman (SBN 188814)
23  shavens@parisihavens.com
    PARISI & HAVENS LLP
24  15233 Valleyheart Drive
    Sherman Oaks, California   91403
25  (818) 990-1299 (phone)
    (818) 501-7852 (facsimile)
26
    Michael J. McMorrow (admitted *Pro Hac Vice*)
27  mjmcmorrow@edelson.com
    Rafey Balabanian (admitted *Pro Hac Vice*)
28  rbalabanian@edelson.com

1   EDELSON MCGUIRE LLC
    350 N. LaSalle Street, Suite 1300
2   Chicago, Illinois 60654
    (312) 589-6370 (phone)
3   (312) 589-6378 (facsimile)

4   Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I, Suzanne Havens Beckman, an attorney, certify that on March 21, 2011, I served the above and foregoing *Plaintiff's Supplemental Memorandum of Law in Support of Motion to Compel Discovery from Defendant Taco Bell Corp.* by causing true and accurate copies of such paper to be filed and transmitted to the persons registered to receive such notice via the Court's CM/ECF electronic filing system.


/s/ Suzanne Havens Beckman