Robert O'Brien (SBN 154372)
obrien.robert@arentfox.com
Steven E. Bledsoe (SBN 157811)
bledsoe.steven@arentfox.com
Steven A. Haskins (SBN 238865)
haskins.steven@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401

Attorneys for Defendant
TACO BELL CORP.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| TRACIE THOMAS, individually and on behalf of class of similarly situated individuals,<br><br>              Plaintiff,<br><br>     v.<br><br>TACO BELL CORP., a California corporation,<br><br>              Defendants. | Case No.  SACV09-1097 CJC (ANx)<br><br>*Assigned to The Hon.Cormac J. Carney*<br><br>**DECLARATION OF NEIL BORKAN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed concurrently with (1) Notice of Motion and Motion for Summary Judgment; (2) Statement of Uncontroverted Facts; (3) Declaration of Susan Viti; (4) Declaration of Steven A. Haskins; (5) Declaration of Sherry Ostrowski; (6) Declaration of Bernadette Jones; and (7) [Proposed] Judgment]<br><br>Date:          October 17, 2011<br>Time:          1:30 p.m.<br>Courtroom:     9B<br><br>Complaint Filed:  September 15, 2009<br>Trial Date:       October 18, 2011 |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

SACV09-1097 CJC (ANx)                    DECLARATION OF NEIL BORKAN

## DECLARATION OF NEIL BORKAN

I, Neil Borkan, hereby declare as follows:

1. I am the President of the Chicago Area Taco Bell Restaurant Owners Advertising Association ("Chicago Association"). I have been President of the Chicago Association since shortly after its formation over 10 years ago. I was President of the Chicago Association during the events that are the subject of the lawsuit brought by Plaintiff Tracie Thomas.

2. I have read the deposition transcript of Sander Rosen of ESW Partners and the exhibits attached to it. I have reviewed the Chicago Association's Board Conference Report of August 4, 2005.

3. The Chicago Association is a local advertising cooperative whose members own Taco Bell restaurants in the greater Chicago, Illinois area. The Chicago Association is a non-profit corporation registered in the State of Illinois. A true and correct copy of the Chicago Association's registration with the State of Illinois is attached hereto as **Exhibit A**.

4. The purpose of the Chicago Association is to promote and further the interest of the owners and operators of Taco Bell Restaurants in the greater Chicago, Illinois area, in order to increase public exposure for Chicago-area Taco Bell restaurants. The Chicago Association is responsible for its own advertising efforts, and sets aside a portion of its revenues for the purpose of funding regional advertising campaigns in its area of influence. A true and correct copy of the Chicago Association's Bylaws is attached hereto as **Exhibit B**.

5. The Chicago Association is organized under the direction of a four-member governing Board of Directors. Three positions on the Board are filled by local franchise owners elected by a vote of the Chicago Association's membership. I am, and have been, one of the members of the Board elected by the membership for over 10 years. The fourth position was filled by an individual appointed by

1  Taco Bell Corp. per section 6.3 of the Association Bylaws (**Exhibit "B"**). The
2  Board Member appointed by Taco Bell Corp. in 2005 was Susan Viti.
3    6.   In 2005, the Chicago Association had twelve members representing
4  the interests of approximately 160 stores in the greater Chicago, Illinois area. Taco
5  Bell Corp. was one of the twelve members of the Chicago Association in 2005 and
6  owned approximately two dozen stores at that time. The Chicago Association's
7  corporate structure is designed to ensure that local store owners have control of the
8  Board of Directors. The local owners comprised eleven of the twelve Chicago
9  Association members.
10   7.   The Chicago Association could only proceed with an advertising
11 campaign if it is recommended by a majority of its Board of Directors, and then
12 approved by at least seven of its twelve members. The Chicago Association can
13 proceed with an advertising initiative even if the member of the Board of Directors
14 appointed by Taco Bell Corp. votes against it. I am personally aware of at least
15 four instances where the Association wished to do certain types of advertising and
16 the member of the Board of Directors appointed by Taco Bell Corp. did not agree.
17 The Association in each instance went ahead with that advertising. The first
18 instance involved the use of a debit card which the Chicago Association was in
19 favor of doing. The member of the Board of Directors appointed by Taco Bell
20 Corp. was opposed. Debit cards were accomplished. The next situation involved a
21 local radio personality Mancow Mueller. The member of the Board of Directors
22 appointed by Taco Bell Corp. did not want the Association to run advertisements on
23 Mr. Mueller's show. The Association believed it was good advertising and ran the
24 advertisements on his show. The next situation involved the formation of a local
25 website for the Association. The member of the Board of Directors appointed by
26 Taco Bell Corp. did not wish us to do this. We did our own local website,
27 www.mylocaltacobell.com. The last situation involved local newspaper drops or
28 coupons. These are discount coupons which were in the newspaper. The member

of the Board of Directors appointed by Taco Bell Corp. was opposed to us doing this. We did it anyway.

8. The Chicago Association uses ESW Partners, LLC ("ESW Partners") (and used its predecessor company) for all of its advertising work. The Chicago Association relies upon ESW Partners to perform that work in accordance with proposals that are presented to the Association and voted upon by the Association.

9. In 2005, Taco Bell Corp. introduced Nachos Bell Grande with a new chicken or steak option, which it promoted with national television advertisements. Around the time Taco Bell Corp. decided to run its national television advertisements related to the new Nachos Bell Grande products, the Chicago Association and its advertising agent, ESW Partners, sponsored a separate, different and independent local promotion to promote Nachos Bell Grande. Specifically, ESW Partners developed a local "sweepstakes" contest in which the Chicago Association would award a grand prize of a year of free tacos from the Association.

10. ESW Partners devised the local advertising promotion without any input or involvement from Taco Bell Corp. The goal of the local promotion was to have Chicago-area customers vote on their favorite flavor of Nachos Bell Grande—steak or chicken. Of those that voted, one winner would be selected.

11. In accordance with its Bylaws, the individuals on the Chicago Association's Board of Directors reviewed the outline of the local sweepstakes promotion. There were several aspects of the local promotion, including plastic bags and trayliners designed by ESW Partners to display information about the contest, as well as outgoing and incoming text messages. The individuals on the Chicago Association's Board of Directors voted in favor of the local sweepstakes campaign developed by ESW Partners at their meeting on August 1, 2005.

12. After the Board of Directors gave their approval for the local promotion, it was submitted to a vote of the full Chicago Association membership.

The members of the Chicago Association voted and elected to proceed with the local sweepstakes.

13. All of the details of when, how, and to whom the text messages were sent, were left entirely to the Chicago Association's advertising agent, ESW Partners. The contest was sponsored exclusively by ESW Partners and the Chicago Association, not by Taco Bell Corp. This advertising promotion was handled consistently with the procedures followed by the Association, both before and after the time of this particular advertising promotion. Based on my knowledge, Taco Bell Corp. did not initiate any of the text messages, or request that the messages be sent. Based upon the way the Chicago Association has done business during the past 10 years, no part of the promotion would be done by Taco Bell Corp.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on March 11, 2011, at Lincolnshire, Illinois.

_____
Neil Borkan

# EXHIBIT A

**DOMESTIC/FOREIGN CORPORATION**
**ANNUAL REPORT**
General Not for Profit Corporation Act

Secretary of State Jesse White
Department of Business Services
501 S. Second St.
Springfield, IL 62756
217-782-7808
www.cyberdriveillinois.com

FILED
MAY 14 2009
JESSE WHITE
SECRETARY OF STATE

Filing fee: $10 (if late, add $3 penalty fee.)

Year: 2009   File #: 5688-267-7

1. Corporation Name: The Chicago Area Taco Bell Restaurant Owners Advertising Association

2. Registered Agent: CT Corporation System
   Registered Office: 208 S. LaSalle St. #814
   City, IL, ZIP, County: Chicago, IL 60604

3a. Date of Incorporation/Qualification: 9/23/92   3b. State of Incorporation: Illinois

4. Names and Addresses of Corporation's Officers and Directors:

| NAME | OFFICE | NUMBER & STREET | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| Neil Bodyn | President | 251 Olde Half Day Rd | Lincolnshire | IL | 60069 |
| Tony Haseman, VP | Secretary | 155 Revere Dr #5 | Northbrook | IL | 60062 |
| Barb Lucas | Treasurer | 1934 Weldon Office Square #150 | Schaumburg | IL | 60173 |
| Tim Reyner, Field Mktg Mgr | Director | 600 W. Rte 4404 | Chicago | IL | 60622 |
| Neil Bodyn | Director | 251 Olde Half Day Rd | Lincolnshire | IL | 60069 |
| Tony Haseman | Director | 155 Revere Dr #5 | Northbrook | IL | 60062 |

NOTE: List all officers and directors above or on an additional sheet. Illinois corporations must have three directors.

5. Brief statement of type of business the corporation is conducting:
   Restaurant Advertising Association

6. Is this corporation a Condominium Association as established under the Condominium Property Act? (check one)
   ☐ Yes   ☒ No

   Is this corporation a Cooperative Housing Corporation defined in Section 216 of the Internal Revenue Code of 1954? (check one)
   ☐ Yes   ☒ No

   Is this corporation a Homeowner's Association that administers a common-interest community as defined in subsection (c) of Section 9-102 of the Code of Civil Procedure? (check one)
   ☐ Yes   ☒ No

ITEM 6 MUST BE COMPLETED. Failure to answer any question on this form may result in a late penalty, involuntary dissolution or revocation.

7. Address, including street and number, of Corporation's Principal Office:
   EBW, 600 W. Fulton, Suite #301   Chicago   IL   60661

Under penalties of perjury and as an authorized officer, I declare that this Annual Report, pursuant to the provisions of the General Not for Profit Corporation Act, has been examined by me and is to the best of my knowledge and belief, true, correct and complete.

8. BY [signature]   President   5/14/09

**ITEM 8 MUST BE SIGNED.**

Printed on recycled paper.
Printed by authority of the State of Illinois. May 2008 — 5M — C-54.94

# EXHIBIT B

# BYLAWS
# OF THE CHICAGO AREA
# TACO BELL RESTAURANT OWNERS' ADVERTISING ASSOCIATION

## ARTICLE I

The purpose of this not-for-profit corporation, hereafter the "Association" is to promote and further the interests of the owners and operators of Taco Bell restaurants in the Chicago Illinois area of dominant influence ("ADI") as defined from time to time by Arbitron, Inc. through the cooperative use of advertising, promotional media and related trade research in order to increase public exposure for Taco Bell restaurants and their products. Upon approval from Taco Bell Corp. (the "Franchisor"), the Association is to act as the "Local Association" for such ADI pursuant to the Taco Bell franchise agreements held by various Members and the Franchisor's Marketing Fund Policy as revised from time to time (the "Policy") and as such will be responsible for the spending of Local Media Funds paid by its Members to the Franchisor and/or its National Advertising Funds Administration ("NAFA") as well as any additional payments or contributions made by Members for the benefit of the Association ("Additional Contributions").

## ARTICLE II

## REGISTERED AGENT AND OFFICE

The Association shall have and continuously maintain in this state, a registered office and a registered agent whose office is identical with such registered office, and may have other offices in such other places or states as the Association may, from time to time determine.

## ARTICLE III

## MEMBERSHIP

Section 3.1  **Eligibility for Membership.** Franchisor shall be a Member. Any person, partnership, corporation or other legal entity, that owns and operates one or more Taco Bell restaurants under a franchise granted by Franchisor in the ADI and who has accepted a Membership by executing a Membership Application and Agreement (the "Membership Agreement") is eligible to be a Member and shall become a Member upon approval by the Association as provided in these By-Laws. Owners and operators of Express Units may be non-voting Members.

Section 3.2  **Membership Agreements.** Each Member of the Association shall be required to execute a Membership Agreement in the form attached hereto, if any, and incorporated herein by reference or such other form as may be approved by the Association.

Page 1

ASTACO.BY

Section 3.3  **Membership Certificates.**  The Association may provide for the issuance of certificates evidencing Membership in the Association which shall be in such form as may be determined by the Association.

Section 3.4  **Class of Members.**  The Association shall have only two classes of members, voting and non-voting, as set forth in Section 3.1.

Section 3.5  **Termination of Membership.**  The Franchisor's Membership shall not terminate. All other Members' memberships shall terminate upon the Member no longer having a franchise agreement in effect with Franchisor to operate a Taco Bell restaurant in the ADI. A terminated Member shall have no recourse and waives all claims occurring prior to such termination to the fullest extent of the law, against the Association, its directors, officers, members or representatives arising out of or relating to the Association.

Section 3.6  **Reinstatement.**  Upon again becoming eligible for Membership and by a former Member's written request filed with the Secretary, the Association may reinstate such former Member to Membership at any time upon such additional terms and conditions as the Association in its discretion may deem appropriate.

Section 3.7  **Resignation.**  A Member may resign by filing a written resignation with the Secretary of the Association. Such resignation shall be deemed effective ninety (90) days after such notice is received. Such resignation shall not relieve the Member so resigning of the obligation to pay all contributions, assessments or other charges of the Association due from such Member prior to the effectiveness of the resignation. No attempted resignation except as set forth herein shall be effective or in any way relieve any Member of its obligations to the Association.

Section 3.8  **Sale of Member's Restaurant(s).**  When a Member sells all of its Taco Bell Restaurants located within the ADI, such Member shall cease to be eligible to be a Member of the Association but shall remain responsible for all obligations owed to the Association up to the time of sale. A Member must notify the Association in writing of each pending sale of a Restaurant at least ten (10) days prior to the anticipated takeover by the purchaser.

Section 3.9  **Participation in Association Programs.**  No Member shall be required to participate in any Association approved advertising and/or promotion program which requires the Member to advertise or to charge a specified retail price for food product, beverage, promotional item or any combination thereof. All advertising and promotional materials concerning such a program must contain a statement that it is valid only at participating Taco Bell restaurants or a statement of equal effect, as determined by the Association.

Section 3.10  **Default in Payment of Fees and Additional Contributions.**  When any Member is in default in the payment of Marketing Fees or of Additional Contributions for a period of thirty (30) days or more from the date such fees or contributions became due, such Member shall lose the right to vote on any matter submitted for a vote to the Association until such Member cures all such defaults to the Association's satisfaction and

Page 2

A:TACO.BY

to the satisfaction of the Franchisor regarding a default in payment of Marketing Fees. Such Member shall remain responsible for all obligations to the Association during any such period of default and loss of voting rights.

## ARTICLE IV

## DUES AND CONTRIBUTIONS BY MEMBERS

Section 4.1   Annual Dues.  The Association may determine from time to time the amount of annual dues payable by each member to the Association or NAFA for the benefit of the Association.  Such dues are in addition to the Marketing Fees payable to Franchisor pursuant to the Taco Bell Franchise Agreements and are to be determined on a per restaurant basis.  The annual membership dues for a new restaurant shall be prorated from the 10th day prior to the expected date of opening and shall be due and payable on the restaurant's opening day.

Section 4.2   Payment of Dues.  The payment date for membership dues pursuant to Section 4.1 of this Article and any other contributions set forth in these Bylaws shall be determined by the Association.

Section 4.3   Additional Contributions.  Additional contributions shall be defined as monetary contributions, in addition to annual dues, to be used for incremental media, promotion or advertising related commitments made by individual Members to the Association with regard to specific proposals.  Such additional contributions shall be assessed on a per restaurant basis and shall be assessed only against the members approving the commitment.

Section 4.4   Payment of Additional Contributions.  All Additional Contributions shall be payable in accordance with the Taco Bell Marketing Fund Policy and the Association's resolution adopting and approving such Additional Contributions.  If an Additional Contribution is based on a percentage of "Gross Sales" from a restaurant, "Gross Sales" shall have the same meaning as the definition of gross sales in the Member's applicable Taco Bell Franchise Agreement.

Section 4.5   Late Charges.  Late charges shall be assessed by the Association or on behalf of the Association by NAFA for any delinquent dues and additional contributions. Delinquencies and late charges shall be the same as determined for Marketing Fees.

Section 4.6   Enforcement.  The Association reserves the right to enforce the obligations of delinquent, terminated or resigned Members by such means as the Directors and Officers shall deem appropriate, including but not limited to, the commencement of any legal action in any court of record, whether in law or equity.  In addition to the obligations set forth in these Bylaws, the measure of recovery shall include, but not be limited to, costs, damages and attorneys' fees incurred by the Association as the result of any such legal action commenced on behalf of the Association.

TBC000004

EXHIBIT B
PAGE 8

Section 4.7  Contributions Non-refundable. Except as may be set forth in the Marketing Fund Policy, a Member shall not be entitled to a refund of any dues or contributions, in whole or in part, under any circumstances, including the sale or termination of the Member's Taco Bell Restaurant or the dissolution or liquidation of the Association.

## ARTICLE V

## VOTING RIGHTS

Section 5.1  Voting by Members. For voting purposes, where a Restaurant is owned jointly by a husband and wife or by two or more partners, they shall be considered as one Member, and one of the owners of such Member shall be designated in writing to exercise such Member's right to vote. The President of a corporate Member shall be its authorized representative to the Association prior to voting. In the event that the same individual, corporation, partnership or other legal entity has a fifty percent or more ownership interest in more than one Member, such commonly-owned Members shall be considered as the same Member for purposes of voting on the basis of one vote for each Member; provided, however, that if this sentence creates hardship for any Member, the Board of Directors of the Association may make such exception for voting purposes as it may make in its sole discretion.

Section 5.2  Voting Rights for Additional Contributions or Any Other Association Spending Which Will Not Be Paid from NAFA Funds. Any Additional Contributions or other Association spending which will not be paid from NAFA Funds shall be submitted to the members for a vote. Except as otherwise provided herein, each issue shall require the majority vote of all of the Members of the Association for approval, whether or not such members are present at the meeting when the vote is taken. Voting hereunder shall be subject to Section 5.1 above where each Member receives 1 Vote. In the event the issue does not receive the required vote of the members, it shall fail; however, each Member shall then have the option to committing to the Association for such Additional Contributions or spending, on an individual basis. In the event the Association relies on a Member individual commitment for spending, then the Member shall be obligated to pay such sums to the Association as provided for in these bylaws.

Section 5.3  Voting Rights for Specific Issues. With respect to any of the following issues, each issue shall require the percentage shown of the votes cast in order to be approved; however, such vote must include not less than two Members other than the Franchisor. For this voting purpose "Members" shall not include any special purpose outlet such as a portable unit, a temporary facility, airport or other concession offering a substantially reduced menu, a retail store selling Taco Bell brand products or any similar outlets. Voting hereunder shall be subject to Section 5.1 above. The voting rights described in Section 5.3 shall apply to the following issues:

Simple Majority Required
a.    Price Advertising

Page 4

ANTACO.BY

  b. Any deviations from the Taco Bell National Media Plan
  c. Amendment of Bylaws
  d. Change of Advertising Agency

<u>Eighty Percent (80%) Required</u>
  a. Spending of Pepsi Funds
  b. Incremental Spending

  Section 5.4 <u>Voting Rights for All Other Issues</u>. With regard to any other issues not described in Section 5.2 and 5.3 above, which may be submitted to the members for a vote, voting rights shall be subject to Section 5.1 above. Each issue shall require simply a majority of the votes cast in order to be approved. For this voting purpose "Members" shall not include any special purpose outlet such as a portable unit, a temporary facility, airport or other concession offering a substantially reduced menu, a retail store selling Taco Bell brand products or any similar outlets. This Section shall be subject to the provisions of Section 6.15.

  Section 5.5 <u>Election of Directors</u>. At any election of Directors, each Member as defined in Section 5.1 shall have the right to cast one (1) vote.

## ARTICLE VI

## BOARD OF DIRECTORS

  Section 6.1 <u>Powers</u>. Subject to the provisions of applicable law, the Association's Articles of Incorporation and these Bylaws as more specifically set forth in Section 6.15 below relating to actions requiring approval by the Members, the business and affairs of the Association shall be managed and all corporate powers shall be exercised by or under the direction of its Board of Directors.

  Section 6.2 <u>Number of Directors</u>. The authorized number of Directors shall be four (4) unless a greater number is set forth below. This number can be changed by an amendment to this Section 6.2 approved by the vote or written consent of the members.

  Section 6.3 <u>Election and Term of Directors</u>. One seat on the Board of Directors shall be filled by the Franchisor. Every other Director must be a representative of a Member, who is the person entitled to vote as defined in Section 5.1 hereof. Directors shall be elected at a meeting held for that purpose as provided in Section 8.1. Election of a Director by written consent without a meeting requires that written consent of a majority, as defined hereof of the votes entitled to be voted on such issue. Each Director, including a Director elected to fill a vacancy, shall hold office until the expiration of the term for which elected and until a successor has been elected and qualified. If a Director resigns as a Member or is disqualified as a Member, he or she shall automatically be removed as a Director. No reduction of the authorized number of Directors shall have the effect of removing any Director before his or her term of office expires.

Section 6.4 Vacancies.

(a) A vacancy in the Board of Directors shall be deemed to exist (i) if a Director dies, is removed, resigns, or is terminated; (ii) if the Board of Directors declares vacant the office of a Director who has been convicted of a felony or declared of unsound mind by an order of court; (iii) if the authorized number of Directors is increased; or (iv) if the Members fail to elect the full authorized number of Directors. Vacancies may be filled by a majority of the remaining Directors, whether or not they constitute a quorum, or by a sole remaining Director.

(b) Vacancies on the Board caused by the removal of a Director (except for vacancies created by a disqualification or resignation of the Director or when the Board declares the office of a Director vacant as provided in clause (ii) of the first paragraph of this section) may be filled only by the Members.

(c) Any Director may resign effective on giving written notice to the President, the Secretary or the Board of Directors, unless the notice specifies a later effective date. If the resignation is effective at a future time, the Board of Directors may elect a successor to take office when the resignation becomes effective.

(d) The Members may elect a Director at any time to fill a vacancy not filled by the Board of Directors.

(e) The term of office of a Director elected to fill a vacancy shall run until the next annual Members' meeting, and the Director shall hold office until a successor is elected.

Section 6.5 Place of Meetings. Regular meetings of the Board of Directors may be held at any place within or outside the state of Incorporation of the Association as designated from time to time by the Board. In the absence of a designation, regular meetings shall be held at the principal executive office of the Association. Special meetings of the Board may be held at any place within or outside such state designated in the notice of the meeting, or if the notice does not state a place, at the principal executive office of the Association. Any meeting, regular or special, may be held by conference telephone or similar communication equipment, provided that all Directors participating can hear one another.

Section 6.6 Annual Directors Meeting. Immediately after each annual Members meeting, the Board of Directors shall hold a regular meeting at the same place or at any other place designated by the Board, to transact necessary business as desired, and to elect officers. Notice of this meeting shall not be required unless some place other than the place of the annual Members meeting has been designated.

Section 6.7 Other Regular Meetings. Other regular meetings of the Board of Directors shall be held not less frequently than one time per month at such times and places as the Board shall determine. Such regular meetings may be held without notice.

Case 8:09-cv-01097-CJC -AN   Document 140-2   Filed 09/19/11   Page 15 of 20   Page ID
 #:4656

Minutes of each meeting shall be distributed to Members within three (3) business days following such meeting.

Section 6.8  **Special Meetings.**  Special meetings of the Board of Directors may be called for any purpose or purposes at any time by the President, any Vice President, the Secretary or any two Directors. Special meetings shall be held on four (4) days notice by mail or twenty-four (24) hours notice delivered personally or by telephone or telegraph. Oral notice given personally or by telephone may be transmitted either to the director or to a person at the Director's office who can reasonably be expected to communicate it properly to the Director. Written notice, if used, shall be addressed to each Director at his or her address shown on the Association's records. The notice need not specify the purpose of the meeting.

Section 6.9  **Waiver of Notice.**  Notice of a meeting, if otherwise required, need not be given to any Director who (a) either before or after the meeting signs a waiver of notice or a consent to holding the meeting without being given notice, (b) signs an approval of the minutes of the meeting, or (c) attends the meeting without protesting the lack of notice before or at the beginning of the meeting. Waivers of notice or consents need not specify the purpose of the meeting. All such waivers, consents, and approvals of the minutes, if written, shall be filed with the Association's records or made a part of the minutes of the meeting.

Section 6.10  **Quorum.**  A majority of the authorized number of Directors shall constitute a quorum for the transaction of business, except for adjournment. Except as otherwise required by law, every act done or decision made by a majority of the Directors present at a meeting duly held at which a quorum is present shall be deemed the act of the Board of Directors unless a different requirement is imposed by the Articles of Incorporation of the Association. A meeting at which a quorum was initially present may continue to transact business despite the withdrawal of Directors, if the action taken is approved by at least a majority of the quorum required for that meeting.

Section 6.11  **Adjournment to Another Time or Place.**  Whether or not a quorum is present, a majority of the Directors present may adjourn any meeting to another time and place.

Section 6.12  **Notice of Adjourned Meeting.**  Notice of the time and place of resuming an adjourned meeting need not be given if the adjournment is for twenty-four (24) hours or less. If the adjournment is for more than twenty-four (24) hours, notice of the new time and place shall be given, before the time set for resuming the meeting, to any Directors who were not present at the meeting, to any Directors who were not present at the time of adjournment, but need not be given to Directors who were present at the time of adjournment.

Section 6.13  **Action Without a Meeting by Written Consent.**  Any action required or permitted to be taken by the Board of Directors may be taken without a meeting, if all members of the Board individually or collectively consent in writing to that action. Any action by written consent shall have the same effect as a unanimous vote of the Board of

Page 7

EXHIBIT B
PAGE 12

TBC000008

Directors. All such written consents shall be filed with the minutes of the proceedings of the Board of Directors.

Section 6.14  <u>Compensation of Directors</u>. Directors and Members of committees of the Board shall not be compensated for their services. They shall be reimbursed for expenses, as fixed or determined by resolution of the Board of Directors.

Section 6.15  <u>Responsibilities of the Board of Directors</u>. Without otherwise limiting the responsibilities and rights of the Members, as set forth herein, the Board or its designated representative(s) shall be solely responsible for meeting with the approved advertising agency and for making recommendations as to programs. The Board of Directors may make final determinations as to local programs which then must be voted on for approval by Association Members. Expenditure of funds shall require approval by the membership as outlined in Article I. The Board shall receive and consider input from the membership as to all programs.

## ARTICLE VII

## MEETINGS OF MEMBERS

Section 7.1  <u>Annual Meeting</u>. The annual meeting of the members for the purpose of electing Directors and officers and for the transaction of such other business as may come before the meeting, shall be held on the second Tuesday of January in each year.

Section 7.2  <u>Regular Meetings</u>. Regular meetings of the Members for the transaction of business shall be held on the second Tuesday in April, July, and October, at a time and place to be determined by the Members, or such other date as the Members may determine.

Section 7.3  <u>Special Meetings</u>. Special meetings of the Members may be called either by any officer or by Members entitled to vote and representing no less than one-third of the membership vote.

Section 7.4  <u>Written Consents</u>. Any action which is or is required to be or may be taken at a meeting of the Members of the Association may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all Members entitled to vote with respect to the subject matter thereof.

Section 7.5  <u>Place of Meeting</u>. The association may designate any place either within or without the DMA as the place of meeting for annual, regular, or special meetings.

Section 7.6  <u>Notice of Meeting</u>. Written or printed notice stating the place, day and hour of every meeting of Members shall be delivered, either personally or by mail to each Member entitled to vote at any such meeting, not less than five (5) nor more than sixty (60) days before the date of the meeting, by or at the direction of the President or the Secretary, or Members calling the meeting. In case of a special meeting or when required by statute, the purposes for which the meeting is called shall be stated in the notice. If mailed, the

Page 9

ATTACO.BY

notice of the meeting shall, be deemed delivered when deposited in the United States Mail addressed to the Member at the address of the Member as it appears on the records of the Association, with postage prepaid. In the event all Members shall meet and consent to the holding of a meeting, such meeting shall be valid without call or notice and at such meeting any corporate action may be taken.

Section 7.7 <u>Quorum</u>. The presence, either in person or by the presence of a duly authorized agent of Members in good standing holding a majority of voting rights in the Association shall constitute a quorum. In the event that a quorum is not present at any meeting of the Members, the Members present shall adjourn the meeting to such later date as a majority vote of those present shall designate.

Section 7.8 <u>Proxies</u>. Each Member shall have the right to authorize any other person to vote on such Member's behalf but only by authorizing such other person to do so in a written proxy signed and dated by the Member and delivered to the President before the meeting commences. A proxy is only valid for the next meeting of Members held after its date.

Section 7.9 <u>Fixing a Record Date</u>. For the purpose of determining the Members entitled to vote at any meeting of the Members, the Members of the corporation may fix in advance a date as the record date. Such date shall not be more than sixty (60) days prior to the meeting. If no record date is fixed to vote at a meeting of the Members, the date on which notice of meeting is delivered shall be the record date.

Section 7.10 <u>Manner of Acting</u>. The act of a majority vote of those Members in good standing present either in person or by valid proxy at a meeting at which a quorum is present, shall be the act of the Association, except where otherwise provided by law or these Bylaws.

Section 7.11 <u>Agenda</u>. The agenda for business at meetings of the Members shall be as follows:

1. Membership roll call.
2. Proof of Notice of Meeting or Waiver of Notice.
3. Minutes of previous meeting.
4. Treasurer's report.
5. Election of Directors and Officers (where appropriate).
6. Old business.
7. New business.
8. Adjournment.

Section 7.12 <u>Miscellaneous Matters</u>. In the event that any procedural issue arises at any meeting of the Association which is not governed by these Bylaws, the President or other presiding officer shall follow the procedures set forth in the latest available edition of <u>Robert's Rules of Order</u>.

EXHIBIT B
PAGE 14

TBC000010

Section 7.13 **Voting by Franchisor.** In accordance with its Marketing Fund Policy, votes by the Franchisor will not be used to increase the amounts which the Association may charge Members for advertising, marketing or promotion expenditures in excess of the contractually required contributions of the Members' Taco Bell franchise agreements. Such votes shall be included for purposes of determining a quorum at any meeting at which such an increase is to be considered.

Section 7.14 **Members.** No Member may represent or purport to represent the Association or act on its behalf except as a Member thereof or except as the Member may be duly qualified or elected as an officer or Director of the Association.

## ARTICLE VIII

## OFFICERS

Section 8.1 **Designation of Officers.** The officers of the Association shall be a President, a Vice President and a Secretary/Treasurer.

Section 8.2 **Election and Terms of Officers.** All officers of the Association shall be Directors and shall be elected by an affirmative majority of the Directors of the Association from among themselves. The President shall be the Chairman of the Board of Directors. Vacancies may be filled or new offices created and filled at any meeting of the Association. Each officer shall hold office until his or her successor has been qualified and has duly taken office, except where such officer is removed from office. The term of office of each officer shall be the same as the Directors.

Section 8.3 **President.** The President shall be the principal executive officer of the Association and shall supervise and administer all of the business of the Association. The President shall secure the approval of the budget; sign advertising agency contracts together with the Treasurer or Secretary after approval by the Members; review the accounts and bookkeeping procedures of the Treasurer; and sign any and all checks drawn on any checking account for the Association, jointly with at least one other officer of the Association as approved by the Members of the Association.

Section 8.4 **Vice President.** The Vice President shall perform such duties and have such other powers as may from time to time be prescribed by the Board of Directors or the President.

Section 8.5 **Secretary/Treasurer.** The Secretary/Treasurer shall be responsible for the keeping of the minutes of the meetings of the Association; assuring that all notices are duly given according to the provisions of these Bylaws or as required by law; shall keep a register of the mailing address of each Member which shall be furnished to the Secretary/Treasurer by such Member; attest to the signatures of certain documents and work with the President on necessary communications. Furthermore, the Secretary/Treasurer may co-sign advertising agency contracts together with the President, and, in general, shall perform all duties as from time to time may be assigned to the Secretary/Treasurer by the President or by the Association.

EXHIBIT B
PAGE 15

TBC000011

The Secretary/Treasurer shall also be responsible for accounting for the funds of the Association, including all payments made to NAFA on behalf of the Association or for its benefit. The Secretary/Treasurer shall assist and cooperate with the President in securing the approval of budgets; may co-sign with the President or the Vice President checks drawn on any checking account of the Association as the Association shall, from time to time, approve; and work with auditors with respect to the preparation of financial statements. The Secretary/Treasurer shall be responsible for filing all the necessary tax returns of the Association.

Section 8.6  Removal from Office. Any officer may be removed by a vote of an affirmative majority of the Directors at any regular or special meeting, whenever the best interests of the Association would be served thereby. An officer shall automatically be removed from office if he or she resigns, is no longer a member, or if the Member for whom the officer is the voting representative is no longer a member, and is precluded from voting at any Association meeting thereafter unless otherwise provided by these Bylaws.

Section 8.7  Indemnification of Officers. Any officer involved, or potentially involved, as a party or otherwise, in any potential, pending or completed action, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Association) by reason of the fact that he or she is or was an officer of the Association, shall in accordance with this Article VIII, be indemnified by the Association against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him or her in connection with such action, suit or proceeding or the defense thereof, if such officer acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the Association, and with respect to any criminal act or proceeding, had no reasonable cause to believe that such conduct was unlawful. Provided, however, the foregoing indemnification shall not apply unless, within a reasonable time after the institution of action, such or proceeding, the person seeking indemnity shall have given the Association written notice thereof, together with a copy of the complaint or declaration filed therein.

Section 8.8  Members. No Member may represent or purport to represent the Association or act on its behalf except as provided in these Bylaws.

## ARTICLE IX

## CONTRACTS

The Members of the Association may, from time to time, authorize any officer or officers to enter into and deliver any contract or instrument in the name of and on behalf of the Association and such authority may be general or confined to specific instances. No Member other than an officer has any authority to bind the Association by entering into any contract or other instrument either in the Member's own name or in the name of the Association.

A:TACO.BY

EXHIBIT B
PAGE 16

TBC000012

## ARTICLE X

## AMENDMENT OF BYLAWS

The Bylaws of this Association may be amended upon due notice at any regular or special meeting of Members in the manner set out in Article V, Section 5.3 at such meeting at which a quorum is present.

## ARTICLE XI
## MISCELLANEOUS

Section 11.1 <u>Books and Records</u>. The Association shall keep accurate and complete books and records of account and shall also keep minutes of the proceedings of its meetings and shall keep a record giving the names and addresses of the Members entitled to vote. All books and records of the Association may be inspected by any Member, or his agent, or by a representative of the Franchisor for any purpose at any reasonable time.

Section 11.2 <u>Fiscal Year</u>. The fiscal year of the Association shall be the same as that designated by the Franchisor as its fiscal year.