Stephen G. Larson (SBN 145225)
larson.stephen@arentfox.com
Robert C. O'Brien (SBN 154372)
obrien.robert@arentfox.com
Steven E. Bledsoe (SBN 157811)
bledsoe.steven@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401

Attorneys for Defendant
TACO BELL CORP.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| TRACIE THOMAS, individually and on behalf of class of similarly situated individuals,<br><br>                    Plaintiff,<br><br>          v.<br><br>TACO BELL CORP., a California corporation,<br><br>                    Defendants. | Case No.  SACV09-1097 CJC (ANx)<br><br>*Assigned to The Hon. Arthur Nakazato*<br><br>**DEFENDANT TACO BELL CORP.'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**<br><br>**DISCOVERY MATTER**<br><br>Discovery Cut-off Date:      1/17/12<br><br>Courtroom:          6B<br><br>Complaint Filed:  September 15, 2009<br>Trial Date:          TBA |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

SACV09-1097 CJC (ANx)

TACO BELL'S OPPOSITION TO
PLAINTIFF'S *EX PARTE* APPLICATION

### **INTRODUCTION**

Plaintiff's *ex parte* application marks yet another step in her on-going effort to divert this Court's attention from the lack of merit of her claim against Taco Bell and to delay consideration of Taco Bell's summary judgment motion.  Even if all of Plaintiff's factual assertions were true—and they are not—none of them merit relief.  Plaintiff should complete discovery by January 17, 2012, as ordered by this Court, after which Taco Bell will file its summary judgment motion.

First, Plaintiff attempts to re-litigate her failed request for spoliation sanctions, but nothing has changed.  The acts alleged in the Fourth Amended Complaint occurred in 2005, and she did not file her lawsuit until September, 2009, having failed to contact Taco Bell at any time prior to filing suit.  Indeed, Plaintiff herself has already admitted to destroying all of the documents in her possession in that interim timeframe.  Nevertheless, upon learning of Plaintiff's claim, Taco Bell suspended its internal document retention policy and reasonably implemented a discovery hold on potentially relevant documents.  Plaintiff has not demonstrated a single relevant document that was purportedly destroyed after Taco Bell implemented its litigation hold.  In fact, none of these facts has been challenged by Plaintiff at all.

Instead, Plaintiff reverts to her shop-worn argument that, in the interim time period between the events alleged in the Fourth Amended Complaint (occurring in 2005) and her filing of this litigation (in September 2009), Taco Bell did not preserve documents in accordance with its own, internal, document retention policy.  But the law is crystal clear on this point:  An internal document retention policy implemented to control corporate paper flow does not create a preservation duty to unknown, hypothetical plaintiffs.  Judge Carney already concluded that Taco Bell did not have a duty to preserve documents until at least October, 2009.

The remainder of Plaintiff's application is an amalgam of supposed grievances without merit.  Her complaint that Taco Bell destroyed relevant

documents notwithstanding, Plaintiff turns on a dime to instead strenuously complain that Taco Bell **produced** several pages of documents prior to her 30(b)(6) deposition of Lisa Halloran, a Taco Bell employee responsible for the entity that holds local advertising funds for local franchisee associations like the Chicago Association. Contrary to Plaintiff's unsupported assumption, the documents **produced** by Taco Bell were not responsive to the overbroad and objectionable document requests she served in November, 2010, and she never bothered to serve any supplemental requests consistent with the Court's May 19, 2011, Order. Taco Bell properly produced the documents in advance of the 30(b)(6) deposition, in accordance with the rules.

Meanwhile, Plaintiff further complains that Taco Bell failed to produce a Taco Bell trademark "Style Guide." Notwithstanding Plaintiff's conclusory protestations, that document has never been relevant to Plaintiff's claim that the Chicago Association sent her an unwanted text message. To the contrary, it contains technical information about Taco Bell's trademarks and intellectual property that is simply not at issue in this lawsuit.

The only abuse of the discovery process in this case has been Plaintiff's, and it only begins with the inconsistent spoliation arguments she continues to make to this Court, despite her own admission of pre-litigation spoliation. Rather than conduct discovery on the merits and attempt to bring this litigation to a conclusion, Plaintiff has now brought a second baseless spoliation motion—this one in contravention of every local rule and order of this Court having to do with the handling of discovery disputes. It appears that Plaintiff's goal is not resolution but delay, hardship, and expense. Taco Bell has acted in good faith and in accordance with the requirements of the Federal Rules of Civil Procedure throughout this litigation, and while Plaintiff has been content to stall this matter, Taco Bell has attempted and will continue to attempt to facilitate its completion.

Plaintiff's manipulation of the discovery process will not stop of its own accord.  Taco Bell respectfully asks that this Court deny Plaintiff's *ex parte* application, reaffirm the January 17, 2012, close of the discovery deadline, and allow this litigation to finally proceed to a conclusion on its merits.

## I.   PLAINTIFF'S APPLICATION IS A MERITLESS AND IMPROPER ATTEMPT TO RELITIGATE THE COURT'S DETERMINATION THAT TACO BELL HAS COMPLIED WITH ITS DOCUMENT PRESERVATION DUTIES

Plaintiff continues to erroneously insist that Taco Bell's preservation duties are defined by its pre-litigation document retention policy.  Despite the fact that Judge Carney already established the boundaries of Taco Bell's duty, she has filed yet another motion complaining that Taco Bell destroyed documents in contravention of the internal document retention policy in effect ***prior*** to the lawsuit's filing.  Her argument remains groundless.

Plaintiff incorrectly represents the law regarding Taco Bell's discovery preservation duties, as well as Taco Bell's efforts to comply with its duties under the Federal Rule of Civil Procedure.  (*See* Dkt. No. 154 at 7:18-20.)  She has singularly devoted her discovery efforts to engaging Taco Bell in lengthy and unnecessary discovery conferences related to Taco Bell's pre-litigation document retention policy—a policy that was not, is not, and will never be relevant to Taco Bell's preservation duties in this lawsuit.  (*See* Dkt. Nos. 137-3 at Ex. F; 137-4 at Ex. I.)  Judge Carney, in fact, has already decided that "Thomas has failed to establish that Taco Bell had a duty to preserve the alleged documents from the time of the campaign in 2005 until Ms. Thomas' suit in 2009."  (*See* Dkt. No. 148.)  Because Taco Bell had no duty to Plaintiff to preserve documents prior to this lawsuit, it does not matter whether documents existing before that time took the form of "hard copies" (as Plaintiff complains here) or ESI.  Without an existing duty to Plaintiff, Taco Bell was not required to retain documents ***at all*** prior to the

TACO BELL'S OPPOSITION TO

litigation, regardless of Taco Bell's internal pre-litigation policy.  To that end, Plaintiff has never demonstrated that Taco Bell did anything other than reasonably implement a discovery hold after learning of the litigation, and then reasonably preserve documents that may have contained relevant information.  There is no dispute that Taco Bell has, at all times, acted in good faith and attempted to comply with its discovery preservation duties as defined, not by Plaintiff's misrepresented standards, but by the Federal Rules of Civil Procedure.

Moreover, the testimony of the witnesses that Plaintiff has deposed simply confirms the representations that Taco Bell made during its lengthy meet-and-confer process with Plaintiff.  After the Court issued its May 19, 2011, Order limiting discovery, Plaintiff abandoned litigation on the merits and instead engaged Taco Bell in an unnecessarily cumbersome meet-and-confer process focused on Taco Bell's pre-litigation preservation duties.[1]  Throughout that process, Plaintiff insisted that Taco Bell's pre-litigation document preservation duties were established by its own internal document retention policies, a position directly at odds with the law.  *See DeBakker v. Hanger Prosthetics & Orthotics East, Inc.,* No. 3:08-CV-11, 2009 WL 5031319, at *4 (E.D. Tenn. Dec. 14, 2009) ("Contrary to plaintiff's assertions, the mere existence of a document retention policy does not give rise to a duty to preserve every document generated under that policy."); *see also Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. 2009) ("A general concern over litigation does not trigger a duty to preserve evidence. Real had no duty to preserve relevant documents or evidence until a potential claim was identified or future litigation was probable."); *Nat'l Union Fire Ins. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992).

---

[1] Even as Plaintiff was needlessly meeting and conferring about Taco Bell's irrelevant pre-litigation document retention policy, she failed to meet and confer about a single one of the more than fifty document requests or thirteen interrogatories that she had previously served upon Taco Bell.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

SACV09-1097 CJC (ANx)          - 4 -          TACO BELL'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

Indeed, Plaintiff has still never accounted for why she thinks her purported pre-litigation preservation standard applies to Taco Bell but not to her, despite having now filed two sanctions motions against Taco Bell. (*See* Dkt. No. 137-8, Ex. A.) In any event, frustrated by Taco Bell's adherence to the rules of preservation as they exist—and not as Plaintiff and her counsel misrepresent them—Plaintiff filed her meritless sanctions motion, hoping that this Court would supply her with a way out of her baseless lawsuit. Having reviewed Plaintiff's motion and Judge Carney's Order, this Court is no doubt well-aware of that motion's lack of merit. Now that this Court has forced her to finally take actual discovery, Plaintiff's strategy remains impeding the progress of the litigation, and seeking from the Court what she cannot establish on the merits.

Indeed, on numerous occasions Taco Bell has informed Plaintiff's counsel that neither the identified custodians, nor Taco Bell's records department, possessed responsive documents after Plaintiff filed her lawsuit. Specifically, Taco Bell's counsel provided letters dated June 10, 2011; June 23, 2011; July 8, 2011; and July 29, 2011, outlining its preservation efforts in great detail. (*See* Dkt. No. 137-4, Exs. B, G, H, J.) Taco Bell's final letter of July 29, 2011, summarized its document retention practices both before, and after, implementation of the litigation hold:

> Taco Bell's [internal] document retention policy is generally self-enforcing. Pursuant to that policy employees are responsible for determining which documents should be deemed a "record." Employees may choose to save electronic records in any number of ways—as a .pst file, locally on their computers, on a shared drive, or by simply placing a printed document in a desk or file drawer. An employee may also send paper copies of records for preservation by the Records Department. All of these sources have been considered in Taco Bell's preservation efforts and subsequent search for responsive documents.
>
> Taco Bell maintains records of those documents handled by the Records Department pursuant to its document retention policies. . . . *In 2009, Taco Bell notified the Records Department of the litigation hold in this matter. It has since been determined, however, that the Records Department does not possess documents responsive to any of*

***Plaintiff's document requests, or this matter generally***.[2]  (Emphasis added.)  (*See* Dkt. No. 137-4, Ex. J.)

Taco Bell has repeatedly informed Plaintiff of its preservation and search methodologies, including a search of Ms. Jones' and Ms. Arnoldt's files and computers for documents related to the lawsuit.  (*See* Dkt. No. 137-4, Exs. B, G, H, J.)  When asked, Taco Bell's witnesses affirmed during their depositions that they do not have any such documents in their possession.[3]  This was consistent with both Plaintiff's long delay in filing her suit, and Taco Bell's representations.

This Court should not accept Plaintiff's invitation to conflate Taco Bell's non-existent preservation duties prior to the litigation with its preservation duties after the litigation was filed.  For the purposes of this litigation, Taco Bell suspended its typical document retention policy and preserved documents.  Plaintiff has offered zero evidence to the contrary.  Her motion fails.

## II.   TACO BELL HAS NOT CONCEALED ANY DOCUMENTS AND HAS FULLY COMPLIED WITH ITS OBLIGATIONS TO PRODUCE NON-PRIVILEGED, RESPONSIVE DOCUMENTS

### A.   Taco Bell's Production Of Documents Prior To The December 8, 2011, Deposition Was Proper And Provides No Basis For Sanctions

Having failed to resurrect her spoliation claims, Plaintiff is left with complaining about Taco Bell's ***production*** of the documents that ***were in fact preserved***, fully consistent with Taco Bell's good-faith execution of its preservation and production duties.  As such, Plaintiff's position again disregards the Federal Rules of Civil Procedure and exposes her relentless strategy to litigate insignificant,

---

[2] Indeed, since Plaintiff's motion is simply a rehash of her earlier motion in masquerade, Taco Bell incorporates herein its related briefing on this subject.  (*See* Dkt. Nos. 123, 126, and 127.)

[3] *See* Bledsoe Decl., Ex. B (Jones Tr.) at 27:10-15.

ancillary matters rather than turn to the merits (or, more precisely, the lack thereof) of her case. *See Swofford v. Eslinger*, No. 6:08-cv-66-Orl-35DAB, 2009 WL 1025223 (M.D. Fla. Apr. 14, 2009) (denying Plaintiff's discovery motion where it was an apparent "attempt to seek punishment for a variety of circumstances that took place during the extended course of discovery" on the ground that the "creation of satellite litigation or opportunities for seeking sanctions is not a goal of the [discovery rules]").

Plaintiff has not, and cannot, present any evidence that Taco Bell acted in bad faith by producing documents prior to Ms. Halloran's deposition. The documents were produced in a timely manner, and at a time allowing Plaintiff's counsel to have adequate opportunity to review the production (which totaled only eight pages) and depose Ms. Halloran as to its substance and significance. Plaintiff's complaints are much ado about nothing.

Moreover, Plaintiff has not demonstrated that the produced documents were responsive to any enforceable document request or requests. First, Taco Bell objected to each and every document request propounded by Plaintiff on numerous grounds, including that the requests were vague, ambiguous, and unintelligible, particularly in light of Plaintiff's unreasonably long, eleven pages of "Definitions" and "Instructions." (*See* Dkt. Nos. 98-2, 101, 101-3.) The merits of these objections were impliedly reflected in Judge Carney's May 19, 2011, Order, which significantly reduced the scope of discovery in this case. (*See* Dkt. No. 120.)

Here, again, Plaintiff's latest discovery dispute merely underscores the deficiencies inherent in her discovery requests, as reflected by Taco Bell's objections. Any grievances that Plaintiff has regarding Taco Bell's responses to her Requests for Production arise solely from the language of her requests, which were, at best, imprecisely drafted and, at worst, deliberately intended to elicit admissions of material fact. For example:

- Requests Nos. 1, 2, 3, 7, 8 seek documents related to the sending of text messages by Taco Bell or on Taco Bell's behalf.  (*See* Dkt. No. 154-3.)  Taco Bell did not send the text message and the text message was not sent on Taco Bell's behalf.

- Request No. 4 requests documents that refer to sending text messages to Plaintiff.  (*See* Dkt. No. 154-3.) The produced documents include no such reference.

- Request No. 15 requests documents referring to, relating to, or reflecting the implementation of the "Marketing Campaign," which Plaintiff defined as both the national and local marketing campaigns to promote chicken and steak Nachos BellGrande.  (*See* Dkt. No. 154-3.)  Plaintiff's definition of "Marketing Campaign" also included a reference to Taco Bell's "sending, causing to be sent, or requesting others to send SMS text messages."  (*See id.*)  Not only is this request compound, overly broad, and unduly burdensome, it was improper because it assumed that Taco Bell sent the text message, caused it to be sent, or requested that it be sent.  None of these things are true and, moreover, the documents produced are not relevant to that question.

- Requests Nos. 20 and 23 request documents that either identify the entities involved in the transmission of text message or that were identified in any answer to Plaintiff's second set of interrogatories.  (*See* Dkt. No. 154-3.)  NAFA was in no way involved in the transmission of the text message and the document produced was not identified in Taco Bell's responses to special interrogatories.  When Plaintiff—reaching for any theory by which she could create an illusion that Taco Bell controlled the Chicago Association's promotion—focused her negligible discovery efforts on NAFA, Taco Bell produced the documents prior to the deposition.

- Request No. 26 requests documents related to and describing conduct by local advertising associations other than the Chicago DMA.  (*See* Dkt. No. 154-3.)  Even if this line of inquiry had not been rendered out of order by the May 19, 2011 Order, the document produced does not describe conduct by other local advertising associations.

- Request No. 27 requests documents related to and describing Taco Bell's "control" over the local promotion.  (*See* Dkt. No. 154-3.)  The produced documents are irrelevant to the issue of who controlled the local promotion as it reflects only the Chicago Association's request that its own money be disbursed from the Chicago Association's account at NAFA.  Moreover, Taco Bell did not control the Chicago Association's local promotion.  (*See* Bledsoe Decl., Ex. A (Arnoldt Tr.) at 44:9-17; Ex. C (Halloran Tr.) at 46:22-25, 80:2-5.)

- Request No. 28 requests documents related to Taco Bell's approval of any element of the Marketing Campaign.  The produced documents are not related to Taco Bell's approval of any element of the local promotion.  As Ms. Halloran testified, NAFA does not approve any element of a local promotion but merely pays invoices approved by a local association, using that local association's own funds.  (*See* Bledsoe Tr., Ex. C (Halloran Tr.) at 80:2-81:7.)

- Request No. 33 requests documents and correspondence between Taco Bell and ipsh!net, Inc. ("Ipsh").  (*See* Dkt. No. 154-3.)  The document does not reflect correspondence between Taco Bell and Ipsh—in fact, Taco Bell never corresponded with Ipsh.  (*See* Dkt. No. 107-4 at 73:17-20.)

- Request No. 34 requests documents related to Taco Bell's purchase of the short code 82355.  (*See* Dkt. No. 154-3.)  Taco Bell did not purchase or acquire the short code, nor does the document reflect that it did.  (*See* Dkt. No. 107-4 at 65:1-67:9.)

- Request No. 36 requests documents indicating the date on which Taco Bell became "aware" of the text messaging component to the campaign.  (*See* Dkt. No. 154-3.)  Plaintiff has had the only documents—a brief sequence of emails between Jennifer Arnoldt, Bernadette Jones, and Susan Viti regarding the review of bags and trayliners—that demonstrate Taco Bell's limited awareness of the local promotion since they were produced by ESW in 2010.  Because Taco Bell was not aware of the outbound text message allegedly sent to Plaintiff without consent, the produced documents were not responsive to this request.

Plaintiff's written discovery was infested with the sort of overbreadth and ambiguity set forth above.  Even after Judge Carney's May 19, 2011, Order that narrowed discovery and ordered Plaintiff to conduct limited, defined, and "reasonable" discovery, Plaintiff did ***nothing*** to narrow the scope of her written discovery.  And despite subjecting Taco Bell to a protracted meet and confer dialogue regarding Taco Bell's pre-litigation document preservation duties (of which there were none), Plaintiff never bothered to meet and confer with Taco Bell to address the objectionable deficiencies in any of her written discovery, nor did she propound new, succinct discovery requests that would satisfy the Court's May 19, 2011, Order.  Plaintiff's failures preclude her from obtaining any of the relief requested.  *See, e.g.*, *Eichler v. Tilton*, No. CIV S-06-2894-JAM-CMK-P, 2010 WL 3734023 (E.D. Cal. Sept. 20, 2010) (rejecting Plaintiff's request for a motion to compel because it made no effort to articulate the meaning of vague, ambiguous, and overly broad discovery requests).  Nonetheless, Plaintiff again attempts to avoid the consequences of her strategy as the discovery deadline nears its close.

Finally, even if the produced documents had been responsive to an unobjectionable document request, the Federal Rules of Civil Procedure encourage—indeed, they mandate—supplementation of responses to requests for production.  Federal Rule of Civil Procedure 26(c)(1)(A) ***obligates*** litigants to

1  supplement if a response is incomplete or incorrect.  Moreover, the "instructions"

2  provided by Plaintiff in her Requests for Production provided that "[t]hese are

3  intended as continuing requests having within them a duty to timely supplement the

4  responses until and during the course of trial."  (*See* Dkt. No. 154-3.)  Out of an

5  abundance of caution, Taco Bell supplemented its responses and produced the

6  documents.  A supplemental production does not equate with a showing that a party

7  intended to subvert discovery.  It demonstrates just the opposite—adherence to the

8  rules of discovery.  *See Swofford*, 2009 WL 1025223 at *2.  In *Swofford*, the party

9  supplementing its responses did so after the discovery deadline without sanction—a

10  policy consistent with determining cases on their merits, not encouraging discovery

11  gamesmanship.

12      At the end of the day, there is no evidence that Taco Bell has abused the

13  discovery process.[4]  To the contrary, Taco Bell's actions are consistent with the

14  Federal Rules of Civil Procedure, and its document production was consistent with

15  its good faith effort to resolve this litigation on the merits.  Plaintiff has

16  demonstrated no reason for this Court to impose *any* of the burdensome,

17  unwarranted sanctions she calls for in her application.

18

19  _____

20  [4] Despite her assertion to the contrary, Plaintiff has significantly overstated the
significance of the supplemental production.  The document is merely a request

21  submitted by the Chicago Association's local advertising agency, ESW, for funds
to be released from the Chicago Association's local advertising fund, which is

22  administered by the National Advertising Funds Administration ("NAFA").  As
Ms. Halloran testified, NAFA collects, maintains, and disburses advertising funds

23  that franchise and company stores pay to a bank account at U.S. Bank.  (*See*
Bledsoe Decl., Ex. C (Halloran Tr.) at 14:19-25; 18:2-4.) To effectuate this

24  purpose, NAFA is organized separately within Taco Bell Corp. (i.e., all of the

25  accounting and auditing practices are separate; no funds are commingled; and

26  NAFA reimburses Taco Bell Corp. for its overhead).  (*See id.* at 27:20-25.)  NAFA
does not approve local promotions, but merely pays any invoices approved by the

27  local association.  (*See id.* at 43:9-19.)

28

**B.**     **Plaintiff Is Not Entitled To Production Of Taco Bell's Trademark Style Guide**

Plaintiff argues that she is entitled to obtain Taco Bell's trademark "Style Guide," a document that visually describes Taco Bell's trademarks and other intellectual property.  She posits, without support, that the "Style Guide" is "highly relevant" to whether Taco Bell approved the text messaging component of the local promotion, but offers no reason why.  First, Plaintiff makes no showing that the information in the Style Guide—essentially a collection of visual marks representing Taco Bell's trademarks—would be relevant under the Court's May 19, 2011, Order.  The content of those trademarks is not relevant to any of Plaintiff's claims—indeed, none of them is even reflected in the text message alleged in the Fourth Amended Complaint, which simply references "Taco Bell."  Ms. Arnoldt made clear that her review of the bags and trayliners used in the Chicago Association's promotion was based on those designs, "using the correct font, colors, look and feel."  (*See* Bledsoe Decl., Ex. A (Arnoldt Tr.) at 77:1-25.)  Ms. Arnoldt did not even consult the "Style Guide" when she reviewed the designs.  (*See id.* at 77:20-22.)  Second, Ms. Arnoldt testified that no one at Taco Bell approves a local promotion run by a local association.  (*See id.* at 37:13-16.)  Third, Ms. Arnoldt did not approve the sending of any unsolicited outbound text message, and even if she had, the "Style Guide" would not be probative of that fact.  (*See id.* at 108:17-20.)

In light of the foregoing facts, it is evident that Plaintiff's demand for the Style Guide is not reasonably calculated to lead to the discovery of admissible evidence.

### III.  **<u>JENNIFER ARNOLDT TESTIFIED FULLY AND ADEQUATELY ON THE ISSUES FOR WHICH TACO BELL DESIGNATED HER AS A 30(B)(6) WITNESS</u>**

Plaintiff's remaining argument, that Taco Bell failed to produce a qualified deponent to testify regarding Taco Bell's "Vice President of Marketing," demonstrates her unwillingness to conduct discovery in good faith.  Plaintiff cannot sincerely challenge Ms. Arnoldt's qualifications—she was not only adequately prepared as a 30(b)(6) witness, she is the *only* current employee of Taco Bell's marketing department who has any personal knowledge about the Nachos BellGrande promotion at all.  Ms. Arnoldt testified that approving the creative execution (font, logo, colors) of the use of trademarks on the bags and trayliners was her job responsibility in 2005, and that no one else in Taco Bell's marketing department had any involvement in this process unless she elevated the matter to a superior.  (*See* Bledsoe Decl., Ex. A (Arnoldt Tr.) at 109:6-17, 112:9-11.)  Ms. Arnoldt testified unequivocally that she did not elevate the bags and trayliners for this promotion to her superior or to any other employee in Taco Bell's marketing department—including any Vice President of Marketing.  (*See id.* at 49:17-50:18.)

Accordingly, Ms. Arnoldt was unquestionably qualified to testify about the Vice President of Marketing's role relative to the Chicago Association's local promotion.  Indeed, she testified that no Vice President of Marketing had any role in the promotion.  (*See id.*)  Thus, it is truly without significance that Ms. Arnoldt cannot recall the name of the Vice President of Marketing in 2005.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

SACV09-1097 CJC (ANx)                        - 13 -

TACO BELL'S OPPOSITION TO
PLAINTIFF'S *EX PARTE* APPLICATION

## IV.   PLAINTIFF'S *EX PARTE* APPLICATION, BESIDES BEING MERITLESS, IS PROCEDURALLY FLAWED AND CONTRARY TO THIS COURT'S RULES

Plaintiff's *ex parte* application does not comply with the Local Rules of the Central District of California for either the filing of discovery motions or for the filing of *ex parte* applications.

Prior to filing any discovery motion in the Central District, the moving party is required to contact the opposing party, ***in writing***, and identify all issues, state its positions, provide authorities in support thereof, and specify the terms of the discovery order that Plaintiff is seeking—the purpose of which is to "eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible." *See* L.R. 37.  Plaintiff, whose principal objective in discovery is the creation of peripheral disputes, did none of these things prior to filing her *ex parte* application.

Indeed, Plaintiff was aware of the issues that she now complains of no later than her completion of the depositions of Ms. Arnoldt, Ms. Halloran, and Ms. Jones on December 7 and 8.  Plaintiff, however, made no effort to meet and confer with Taco Bell during the two weeks that lapsed between those depositions and the deposition of Neal Borkan (of the Chicago Association) on December 22.  Instead, Plaintiff's counsel deliberately waited those two weeks, only to announce—at the ***conclusion*** of Mr. Borkan's deposition—his intention to file an *ex parte* application the next day.  That day, of course, was December 23, the last business day before the Christmas holiday.  (*See* Bledsoe Decl. at ¶ 8.)

This Court's rules require a good faith effort to advise opposing counsel of the date and substance of an application.  *See* L.R. 7-19.  Plaintiff's bad faith was apparent.  Plaintiff's counsel orally offered a number of supposed justifications for filing an *ex parte* discovery motion, none of which explained why a filing for *ex parte* relief was necessary at all, much less on the day before the Christmas

weekend.  Plaintiff ultimately waited until after the holiday to file its application, but made no further effort to meet-and-confer in the meantime.  Indeed, Plaintiff's failure to comply with this Court's rules is additional evidence that her *ex parte* application is not a good faith effort to obtain discovery, but rather another side-show designed to further burden Taco Bell, and to continue delaying the resolution of this case on the merits.

If Plaintiff were at all sincere about addressing the issues of which she complains, she could have employed a number of options that were fully compliant with the rules.  For example, despite claiming that she is interested in obtaining the Style Guide, Plaintiff opted not to serve supplemental document requests immediately after Ms. Arnoldt's deposition, taken a full forty days before the discovery cutoff.[5]  Moreover, any urgency was ultimately of Plaintiff's own creation.  Taco Bell, which for the better part of a year has all but begged Plaintiff to take depositions in this matter, provided dates in November and December on which its 30(b)(6) witnesses and Ms. Viti were available for deposition *before* the parties October 27, 2011 scheduling conference.  (*See* Bledsoe Decl. at ¶ 5.) Plaintiff's counsel ignored this offer and Taco Bell ultimately sent a follow-up letter on November 3, 2011.  (*See id.* at ¶ 6.)  Fully aware of the January 17, 2012, discovery cutoff, Plaintiff again deliberately waited to begin taking depositions— yet another pretext for filing her "emergency" motion.  (*See id.* at ¶ 7.)

Indeed, nothing in Plaintiff's motion rises to the level of requiring *ex parte* relief at all.  As set forth in this Court's instructions to counsel, the Central District of California maintains a high bar for *ex parte* relief—in part, to avoid allowing parties to play litigation games:

---

[5] During the deposition of Ms. Arnoldt, Taco Bell's counsel invited Plaintiff's counsel to do so as follows: "If you have any requests for documents that are within the scope of discovery that the court has permitted, you know, send me a letter, send me a document request and we'll with it that way."  (*See* Bledsoe Decl., Ex. A (Arnoldt Tr.) at 63:1-4.)

Regrettably, [] lawyers are the principal abusers of what Judge Rymer referred to as a "hybrid" form of ex parte communication: a request for action by the court made outside the framework of the rules. These are

usually captioned, "Ex parte Application," "Ex parte Motion," or "Ex parte Request." They contain no notice of hearing, though they often ask the court to hold a hearing urgently. They purport to have been served on the other side, and, under the local rules of this district, they contain a declaration of counsel stating that he or she notified the opposing party, usually by telephone, and that the opposing party does or does not oppose the motion. The court either permits the opposing party to file opposing papers, or it calendars oral argument that is heard urgently, often by telephone conference call. . . .

The fact that opposing parties are usually given an opportunity to argue or file opposing papers does not mask the plain truth: these hybrid ex parte motions are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system. Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship. The opposing party is usually told by telephone when the moving party has completed all preparation of the papers and has a messenger on the way to court with them. The goal often appears to be to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice.

. . . .

When an ex parte motion is filed, it is hand-delivered immediately from the clerk's office to the judge.  The judge drops everything except other urgent matters to study the papers.  It is assumed that the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken. Other litigants are relegated to a secondary priority. The judge stops processing other motions.  Even hearings or trials—where a courtroom full of deserving users of the court are waiting—are often interrupted or delayed.

It is rare that a lawyer's credibility is more on the line, more vulnerable, than when he or she has created this kind of interruption.

> Lawyers must understand that filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, "Fire!"  There had better be a fire.

*Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490-92 (C.D. Cal. 1995).[6]

No more textbook example of the infirmities of Plaintiff's approach, identified by Judge Edwards more than fifteen years ago, could be found than here. Not only does Plaintiff's application fit the script written by Judge Edwards, Plaintiff failed to identify any actual emergency warranting her complete failure to abide by the rules.  As of December 23rd, the discovery period did not lapse for another 25 days.  This Court did not request a response from Taco Bell until January 4, and this document is not even being filed at the Court's behest until January 9.  (*See* Dkt. No. 154.)  There was no emergency, and there is no emergency, let alone an emergency sufficient to justify Plaintiff's total disregard for the rules.

To the extent that an emergency has arisen, it is only because Plaintiff—fully aware of the discovery deadline—sandbagged Taco Bell with its preemptive declaration of intent to file this *ex parte* application.  Taco Bell, having dealt with similar ploys throughout the litigation, offered in writing to meet and confer on December 28th, after the Christmas holiday, with plenty of time to accommodate Plaintiff or, if the parties could not reach agreement on the underlying issues, reach agreement on a briefing schedule.  (*See* Bledsoe Decl., Ex. 9.)  Plaintiff rejected Taco Bell's offer to meet and confer, instead filing her meritless application.  (*See id.* at ¶¶ 9-10.)  This has resulted in yet another waste of litigation resources and

---

[6] This Court specifically requires litigants to review *Mission Power* and follow its guidance prior to filing an ex parte application, and even then only in cases of "true" emergency.

1  this Court's time.  Plaintiff should not be rewarded for her gamesmanship and

2  abuse of the rules.  Her application should be rejected for this reason as well.

3  **V.**    **CONCLUSION**

4        For the foregoing reasons, Taco Bell respectfully requests that this Court

5  deny Plaintiff's *ex parte* application, reaffirm the January 17, 2012, close of the

6  discovery deadline, and allow this litigation to finally proceed to a conclusion on its

7  merits.

8

Dated:  January 9, 2012                    ARENT FOX LLP

9

10

                                          By:    */s/ Steven E. Bledsoe*

11                                              Steven E. Bledsoe
                                              Attorneys for Defendant
12                                             TACO BELL CORP.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28