David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California   91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)

Evan Meyers (Admitted *Pro Hac Vice*)
emeyers@edelson.com
John Ochoa (Admitted *Pro Hac Vice*)
jochoa@edelson.com
EDELSON MCGUIRE LLC
350 N. LaSalle Street, Suite 1300
Chicago, Illinois 60654
(312) 589-6370 (phone)
(312) 589-6378 (facsimile)

[Additional Counsel appear after signature]

Counsel for Plaintiff TRACIE THOMAS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| TRACIE THOMAS, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>TACO BELL CORP., a California corporation,<br><br>Defendant. | Case No.: SACV09-1097 CJC (AN)<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE JUDGE'S JANUARY 12, 2012 ORDER PURSUANT TO L.R. 72-2.1**<br><br>Judge: Hon. CORMAC J. CARNEY<br><br>Time:  1:30 p.m.<br>Date:  February 27, 2012 |

## Table of Contents

**Introduction** ....................................................................................................... 1

**Argument** ........................................................................................................... 3

    **I.**    **Taco Bell Admits that the Payment Records, by their Very Production, Are Relevant and Responsive to Plaintiff's Document Requests.** ................................................................................ 3

    **II.**   **Taco Bell Does Not Contest that it Withheld the Relevant and Responsive Documents in Question or that its Withholding of Such Documents Violated the Federal Rules and this Court's May 19, 2011 Order.** ........................................ 4

    **III.**  **Taco Bell's Opposition Ignores its Substantive Discovery Violations and Offers Nothing but Unfounded Arguments Relating to Plaintiff's Diligence in Seeking Relief for Such Violations.** ................................................................................. 8

    **IV.**  **The Magistrate's January 12, 2012 Order Should Be Reversed.** ............................................................................................ 12

**Conclusion** ........................................................................................................ 13

## Table of Authorities

**Cases:**

*Islamic Shura Council of Southern California v. F.B.I.*,
    No. SACV-07-1088 CJC (AN), 2011 WL 5593132
    (C.D. Cal. Nov. 17, 2011) ...........................................................................7

*Wardell v. County of Los Angeles*, No. CV-06-5673 CJC (RC),
    2008 WL 2220937 (C.D. Cal. May 21, 2008) .........................................13

**Statutes**

Fed. R. Civ. P. Rule 26 ........................................................................................4

Fed. R. Civ. P. Rule 34 ........................................................................................4

Fed. R. Civ. P. Rule 37 ......................................................................................13

**Miscellaneous:**

Local Rule 37-1 .................................................................................................11

## Introduction

For over a year, Defendant Taco Bell ("Defendant" or "Taco Bell") hid critical payment records related to its approval and authorization of the text message campaign at issue in this litigation—documents that bear directly on summary judgment in this case. Despite recently producing these documents – a clear admission that the documents are relevant and responsive – Defendant continues to hide equally relevant and responsive documents that its own employee testified under oath it has. Yet nowhere in its Opposition brief does Defendant address the documents produced, their belated production, or why it continues to refuse production of other certain responsive and probative documents. Instead, Defendant devotes its entire brief to arguments over the process Plaintiff used to bring this Motion and the *ex parte* Application, and arguments to impugn Plaintiff's diligence in pursuing discovery.

The reason this Motion is before the Court, however, is not due to alleged improper procedure pursued by Plaintiff or lack of diligence. The reason is Defendant's false discovery certifications and repeated statements in court filings that no responsive documents exist, only to produce, months later, documents *directly responsive* to Plaintiff's requests and this Court's May 19, 2011 Order to compel. Defendant's refusal to discuss its own failure to produce the payment records for over a year is the most glaring omission in its Opposition. Defendant simply ignores the substance of Plaintiff's Motion. The reason for this is obvious – Defendant has no defense. Because the payment records Taco Bell produced in December 2011 are responsive to Plaintiff's previous document requests, there can be no dispute that Defendant violated its obligations under the Federal Rules and under this Court's May 19 Order. And because Taco Bell is in possession of additional responsive and relevant documents, Taco Bell remains in violation of the Federal Rules and this Court's May 19 Order. The Magistrate's Order on the *ex parte* Application was, thus,

clearly in error and contrary to law, and Taco Bell offers absolutely nothing in its Opposition brief to conclude otherwise.

Defendant attempts to distract this Court by purporting to oppose a motion for review that Plaintiff never actually filed. As required by the Local Rules, Plaintiff laid out that portion of the Magistrate's Order she was appealing. (*See* Dkt. 160-1, at 4.)[1] Plaintiff's Motion for Review repeated the relief that she sought in her *ex parte* Application, that Taco Bell identify how it would retrieve and produce responsive documents, and then produce such documents.[2] Although Plaintiff's use of the *ex parte* process was proper, the thrust of her appeal was not this finding, but instead was the Magistrate's finding that Taco Bell did not withhold documents in violation of the Federal Rules and that Taco Bell has no further duty to produce documents shown to exist. Taco Bell's arguments as to Plaintiff's diligence in bringing its *ex parte* Application have merit only if the clear facts of this case are ignored.

Plaintiff's *ex parte* Application, and this Motion for Review, seeks redress for the prejudice she has suffered from Defendant's disregard of the Federal Rules and this Court's discovery orders and asks that Taco Bell satisfy its obligations by producing all outstanding relevant and responsive documents, specifically including all records of payment for the text message campaign at issue. In the end, Plaintiff simply wants a fair hearing on Defendant's Motion for Summary Judgment with this relevant evidence before the Court.

---

[1] Plaintiff stated it as follows: "The January 12 Order erroneously made the following holding: 'Plaintiff's application still fails to show that Defendant had a duty to preserve any documents or has withheld other pertinent information.'"

[2] *See* Pl.'s *ex parte* App., Dkt. 154 at 13 (requesting that Taco Bell identify how it would search for responsive documents and requesting an extension of the discovery period so that Defendant produces all responsive documents. *See also* Pl.'s Mot. for Review, Dkt. 160-1 at 8 (requesting this same relief.)

## Argument

### I. Taco Bell Admits that the Payment Records, by their Very Production, Are Relevant and Responsive to Plaintiff's Document Requests.

On December 8, 2011, literally minutes before the deposition of a Taco Bell employee, Taco Bell produced – for the first time – documents, including transmittal forms and invoices sent from ESW Partners,[3] demonstrating that it received payment requests for the text message campaign at issue and, thus, had knowledge of, authorized and approved the text message campaign. In its Opposition brief, Taco Bell fails to explain why it produced those documents if, in fact, Taco Bell did not consider them both relevant to this litigation and responsive to Plaintiff's document requests. The reality, of course, is that Taco Bell knew that those documents were responsive, and produced them not in a display of altruism, but rather in an attempt to belatedly comply with the Federal Rules and with this Court's May 19 Order compelling their production.

Although Taco Bell conveniently attempts to ignore this issue in an effort to distract the Court from the substantive arguments set forth in Plaintiff's Motion for Review, there can be no doubt that Taco Bell's production of the documents in December 2011 concedes the documents' relevance and the fact that they are responsive to the document requests that Plaintiff propounded over a year ago. Hence, the only remaining questions are whether these documents should have been produced earlier and whether Taco Bell remains in possession of additional responsive documents that it has not yet produced. The answer to these questions is clearly in the affirmative, and the Magistrate's findings to the contrary were erroneous.

---

[3] Witness Lisa Halloran, a Taco Bell employee, confirmed that ESW Partners would have sent the NAFA transmittal forms and invoices to Taco Bell. (*See* Deposition Transcript of Lisa Halloran at 58:23-25, Dkt. 160-3 at 12.)

## II. Taco Bell Does Not Contest that it Withheld the Relevant and Responsive Documents in Question or that its Withholding of Such Documents Violated the Federal Rules and this Court's May 19, 2011 Order.

In its Opposition brief, Taco Bell also does not refute that its failure to produce these relevant and responsive documents for over a year after they were requested – and 7 months after their production was compelled by the Court – constituted a violation of both its obligations under the Federal Rules[4] and this Court's May 19, 2011 Order. Taco Bell's silence on this point speaks volumes. The facts giving rise to Plaintiff's need to file the *ex parte* Application and this Motion for Review have already been set forth in detail[5] but bear repeating. On November 23, 2010, Plaintiff issued document requests and interrogatories relating to, among other things, Defendant's knowledge and approval of the 2005 text message marketing campaign, and communications related thereto. (*See* Plaintiff's Second Set of Document Requests, No.'s 36 & 38, Dkt. 154-3 at 19.) After Defendant failed to produce any documents, on March 7, 2011, Plaintiff filed her motion to compel seeking, among other things, the production of documents relating to Defendant's approval and authorization of the text message campaign. (Dkt. 98.) On May 19, 2011, the

---

[4] *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter"); Fed. R. Civ. P. 34(a)(1)(a) ("A party may serve on any other party a request within the scope of Rule 26(b) … to produce … any designated documents or electronically stored information" within its "possession, custody, or control.")

[5] For a detailed timeline of Plaintiff's document requests, Defendant's responses and representations with respect thereto, and Defendant's subsequent partial production*, see* Plaintiff's *ex parte* Application, dkt. 154 at 6-9.

Court issued an Order granting in part Plaintiff's motion to compel, requiring Defendant to produce documents relating to Defendant's knowledge and approval of the text message campaign. (Dkt. 120.) That Order stated that Plaintiff was entitled to discovery whether (a) Taco Bell approved or authorized the text messaging component of the 2005 advertising campaign for steak and chicken Nachos Bell Grande in the Chicago area, or (b) communicated with individuals associated with the Chicago DMA, its Board of Directors, ESW Partners, LLC, or Ipsh!net, Inc. about the text messaging component of the 2005 advertising campaign for steak and chicken Nachos Bell Grande in the Chicago area. (Dkt. 120.)

In direct response to this Court's May 19 Order, Defendant provided Supplementary Discovery Responses affirmatively stating that responsive documents had already been produced and that no additional documents relating to the subjects of that Order existed.[6] However, on December 8, 2011, almost 7 months later and literally minutes before the deposition of one of its employees, Defendant pulled an "about face" and produced communications between ESW and Taco Bell that demonstrate Defendant's knowledge, approval and funding of the text message campaign at issue. The responsiveness of these documents to both Plaintiff's Document Requests and this Court's May 19 Order is discussed in detail in Plaintiff's *ex parte* Application, (dkt. 154 at 7, 11-12), and in Plaintiff's Motion for Review (dkt. 160-1 at 6-12).

---

[6] *See* Pl.'s *ex parte* Application, (dkt. 154 at 7, 11-12) *and* (dkt. 154-6 at 12-13) (Defendant's Supplementary Responses, which affirmatively stated that it had no responsive documents regarding its awareness of a text message marketing component to the promotion, and that all documents had been produced related to communications between itself and ESW)).

      Again, if the documents produced in December 2011 were responsive to previous document requests, what excuse could there be for Taco Bell not having produced them months earlier?  Taco Bell did not, and does not, claim that it accidentally came upon those documents, or that it didn't realize they existed.  In fact, Taco Bell offers no explanation, much less any actual factual or legal justification, for why documents that were relevant and responsive enough to be produced were ultimately produced a year after they were requested, just minutes before a deposition.

      What makes Taco Bell's actions even more egregious, and prejudicial to Plaintiff, is that Defendant moved for summary judgment twice (dkt. 107 & 140), and moved to close discovery (dkt. 126), while it was withholding these documents.  It affirmatively represented to Plaintiff and this Court that it had no relevant documents to produce—assertions that are now shown to be false.

      For example, in Taco Bell's opposition to Plaintiff's Motion to Compel, filed on March 14, 2011, it stated that "Taco Bell has not withheld any unprivileged documents in its possession relating to the text message, or the Chicago Association's local promotion."  (Dkt. 101 at 11.)  In Defendant's portion of a joint stipulation in support of its motion to close discovery, filed on August 25, 2011, it said that "Taco Bell has produced its responsive documents" and stated that the documents Plaintiff sought "no longer exist." (Dkt. 127 at 5, 9.)  It went further and added that "Taco Bell had already . . . produced all responsive documents in its possession, custody or control, including those described in the [May 19] Order."  (Dkt. 127 at 15.)  These assertions, filed with the Court and signed by Defense counsel, are in addition to the repeated statements made to Plaintiff's counsel that no additional

documents exist,[7] and its signed, verified discovery responses stating the same. (*See* Dkt. 154-6.)

As this Court has observed, "parties cannot choose *when* to tell the Court the truth. They must be truthful with the Court at all stages of the proceedings if judicial review is to have any real meaning." *Islamic Shura Council of Southern California v. F.B.I.*, No. SACV-07-1088 CJC (AN), 2011 WL 5593132, at *8 (C.D. Cal. Nov. 17, 2011). In *Islamic Shura*, the defendant denied the existence of documents responsive to plaintiff's FOIA request when in fact those documents existed. *Id.* at *1. Here, Taco Bell makes no excuse as to why it did not produce the documents earlier, or why it told this Court after it issued its May 19 Order that no responsive documents existed. Taco Bell does not give any explanation for its actions because there are none; Plaintiff issued all of her document requests over a year ago, and Taco Bell has not described any ongoing search for responsive documents. It simply cannot be disputed – and Taco Bell makes no effort to dispute – that it produced responsive and relevant documents a year after they were requested, 7 months after their production was ordered by this Court, and months after it affirmatively represented that no such documents existed. Taco Bell's actions have run afoul of the Federal Rules and this Court's discovery orders, and the Magistrate's January 12, 2011 Order erroneously fails to recognize this.

It also cannot be disputed that Taco Bell continues to violate the Federal Rules and this Court's discovery orders by continuing to withhold relevant and responsive documents. Taco Bell does not deny that it has additional responsive documents, as its own employee testified. (*See* Halloran Tr. at 53:12-25, Dkt. 160-3 at 10; *see also* Pl.'s *ex parte* App., Dkt. 154 at 5.) Yet it

---

[7] *See* Def.'s June 10, 2011 letter to Plaintiff's counsel, (dkt. 160-5), and Def.'s July 29, 2011 letter to Plaintiff's counsel (dkt. 154-8).

continues to refuse to produce those documents. The documents Taco Bell produced, along with those that Lisa Halloran testified were in Taco Bell's possession, demonstrate Taco Bell's payment of the costs of the text message marketing campaign at issue in this case, and are critical to defeating Taco Bell's upcoming Motion for Summary Judgment. To permit Taco Bell to move forward, yet again, with a motion for summary judgment without having to produce documents that are responsive to document requests and directly relevant to issues on summary judgment, would be unfair and an abuse of discretion. The Magistrate's Order was erroneous and should be reversed.[8]

### III. Taco Bell's Opposition Ignores its Substantive Discovery Violations and Offers Nothing but Unfounded Arguments Relating to Plaintiff's Diligence in Seeking Relief for Such Violations.

Taco Bell hopes that by adding enough invective and trying to focus the Court's attention on procedure, it can avoid the simple issues of why Taco Bell hid these documents for over a year, and why will it not produce the additional relevant payment records that its own employee said Defendant has in its possession or control. Because it cannot defend the substance of the Motion, Taco Bell hopes to avoid any discussion of that substance. But nothing Taco Bell could say in its defense would detract from the fact that its failure to produce these documents in a timely manner has significantly prejudiced

---

[8] The depositions of Taco Bell's employees raised a host of other problems with Taco Bell's production, several of which were raised in the *ex parte* Application below. (*See* Dkt. 154, at 5-6.) Plaintiff decided to focus the Motion for Review only on Taco Bell's most egregious discovery violations, however. Because these are the most important documents, Plaintiff focused the Motion on obtaining the rest of those documents. That focus does not mean Plaintiff has abandoned the remaining relief requested in the *ex parte* Application. Taco Bell argues that Plaintiff has "waived" all of the relief sought in the *ex parte* Application by focusing her Motion on the most glaring issue, but Plaintiff plainly repeated her request for all of the relief in her Motion. (*See* Pl.'s Mot. for Review, Dkt. 160-1, at 8, 14.)

1 Plaintiff and violated the Federal Rules and this Court's May 19, 2011 Order.
2 As a result, Taco Bell devotes its entire brief to a series of disingenuous
3 arguments about Plaintiff's diligence in discovery and Plaintiff's pursuing of
4 the Application on an *ex parte* basis. As discussed below, however, those
5 arguments fail as well.
6      Taco Bell argues at length that Plaintiff was less than diligent in seeking
7 the discovery requested in this Motion. This is untrue. Taco Bell's argument
8 baldly misrepresents Plaintiff's discovery efforts and Taco Bell's own
9 responsibility for the intractable discovery process in this case.
10      Taco Bell argues that Plaintiff "did not take a single deposition or serve a
11 single document request" in the six months following this Court's May 19th
12 Order granting Plaintiff's Motion to Compel. (Def. Opp., Dkt. 165 at 15.) But
13 there was no rational basis to issue any more document requests—Taco Bell
14 repeatedly asserted that it had no documents whatsoever relating to the text
15 message marketing campaign at issue in this case. (*See supra* at 6-7; *see also*
16 Pl.'s *ex parte* App., Dkt. 154 at 7-8.) Additional document requests seemed
17 pointless in light of Defendant's explicit representations. As to the depositions,
18 Plaintiff repeatedly explained to Taco Bell and to the Court that she did not
19 want to take depositions without the benefit of document production from Taco
20 Bell. (*See* Dkt. 127, at 23-24 *and* July 1, 2011 ltr. from Pl. to Def. counsel, Dkt.
21 123-4 at 7.) Plaintiff eventually moved forward with depositions[9] without
22 documents only when the Court ruled on Plaintiff's earlier motion regarding
23 spoliation sanctions. (Dkt. 148.) Once those depositions began, however, Taco

---

[9] Taco Bell also argues that Plaintiff "waited to begin taking depositions, for reasons known only to her" after Magistrate Nakazato rescheduled the discovery deadline. (Def. Opp., Dkt. 165 at 16). But there was a reason Plaintiff took depositions on those dates—they were the dates provided by Defendant. (*See* Declaration of Michael J. McMorrow, ¶ 2.)

Bell suddenly produced the documents it had been hiding from Plaintiff and this Court for the entirety of this litigation.

Taco Bell also takes issue with Plaintiff's "time-wasting crusade regarding Taco Bell's pre-litigation discovery preservation duties." (Def. Opp., Dkt. 165 at 15.) That "crusade" was not a waste of time. What few documents Taco Bell produced prior to May 19, 2011 made it absolutely clear that: (a) Taco Bell should have payment records of the Chicago DMA's vendors; and (b) those documents should have been preserved pursuant to Taco Bell's own document retention policy. When Taco Bell claimed that those documents had been destroyed or never existed, Plaintiff did not believe it. Plaintiff's "crusade" was to prove that Taco Bell had these documents all along. She was right, of course; Taco Bell did have additional documents, some of which it produced at a deposition on December 8, 2011, and others of which it still has not produced.

Taco Bell also argues that Plaintiff's document requests "were subject to numerous objections," (Def. Opp., dkt. 165 at 15), but as discussed at length here, in Plaintiff's *ex parte* Application, and in her Motion for Review, the documents produced and the documents requested herein were responsive to those requests. Furthermore, Taco Bell's belated production of these documents itself concedes both that the documents are relevant and that they are responsive to Plaintiff's requests, regardless of any such objections.

Taco Bell's arguments that Plaintiff delayed unreasonably before filing her *ex parte* Application and that Plaintiff failed to follow this Court's *ex parte* procedures fare no better. Plaintiff first learned of Defendant's withholding of relevant documents on December 8, 2011. Even if Plaintiff had wanted to file her *ex parte* application on a "normal" track, there would not have been

adequate time left to do so and obtain a ruling during the discovery period.[10] Plaintiff's counsel attempted to meet and confer with Defendant's counsel in person during the Halloran deposition regarding the basis of the Application, but Defendant's counsel refused to discuss the issue. (Halloran Tr. pp. 72-73, Dkt. 160-3 at 14; *see* McMorrow Decl., ¶ 4.) Other depositions raised additional issues, which Defendant's counsel again refused to discuss during the depositions in which they arose.[11] Additionally, Defendant steadfastly refused to extend the discovery period. (McMorrow Decl., ¶ 3.) Thus, Plaintiff's counsel decided to wait until the deposition transcripts arrived, the last of which (for the Taco Bell witnesses) arrived on December 23. (McMorrow Decl., ¶ 6.) Plaintiff again attempted to meet and confer with Defense counsel in person at the end of the December 22 deposition of Neil Borkan, but Defendant's counsel refused and complained about the fairness of filing a motion right before

---

[10] Defendant refused to discuss the issues raised in this Motion on December 7-8 when Plaintiff first raised them. (*See* Halloran Tr. pp. 72-73, Dkt. 160-3 at 14.) Even if Plaintiff formally requested a conference under Local Rule 37-1 the following day, Defendant did not have to respond for ten days (December 19). The earliest Plaintiff could serve a joint stipulation was December 20, and Defendant would have until December 28 to serve its additions (given an extra day for the holiday). If Plaintiff turned around a final document on December 29, Defendant would have until December 30 to sign and return, making January 3 the earliest date to file. This would mean that Thursday, January 26, 2012 (more than one full week *after* the close of the existing discovery deadline) would be the first day that Plaintiff could have had her motion heard.

[11] *See, e.g.*, Deposition Transcript of Susan Viti, 188:8-20, Dkt. 154-14 at 10 ("Request away. I think that's –this is an improper time to do that and I'm not responding to your request"); Deposition Transcript of Jennifer Arnoldt, 62:19-25, Dkt. 154-11 at 7 (refusing to discuss producing the 2005 National advertising calendar); *id.* at 49-52, Dkt. 154-11 at 5-6 (refusing to discuss producing an organizational chart that the witness testified would refresh her recollection); *id*. at 107, Dkt. 154-11 at 10 (informing Taco Bell that Plaintiff would file a motion with the Magistrate regarding documents discussed in the deposition and redesignation of a 30(b)(6) witness).

1  Christmas. (McMorrow Decl., ¶ 5.) Because Defense counsel refused to meet-
2  and-confer twice in person (as is the preferred method of a meet-and-confer per
3  the Local Rules), Plaintiff again laid out the basis of the Motion in writing and
4  requested input from Defendant (and even withheld filing until after Christmas,
5  due to Defendant's concerns). (McMorrow Decl., ¶ 7.)

6  It was not a lack of diligence by Plaintiff that necessitated this Motion; it
7  was Taco Bell's concealment of responsive documents for over a year that
8  necessitated this Motion.

### IV. The Magistrate's January 12, 2012 Order Should Be Reversed.

As discussed thoroughly in Plaintiff's Motion, the January 12, 2012 Order of the Magistrate was clearly erroneous and contrary to law, and should be reversed. The Magistrate denied the *ex parte* Application on a basis that was never raised in that Application and ignored the valid bases for relief that were raised in that Application.

As discussed therein, Plaintiff did not seek spoliation sanctions in the Application and does not seek them in this Motion.[12] Plaintiff's requests for relief all revolve around Defendant's refusal to produce responsive documents in the face of Plaintiff's requests, the Federal Rules, and this Court's Orders. Spoliation sanctions were not requested. Although the *ex parte* Application did request that the Court "issue an establishment order" <u>if</u> it found that Taco Bell violated this Court's May 19 discovery Order, that request was not based on

---

[12] Taco Bell again tries to transmogrify Plaintiff's *ex parte* Application, and this Motion, into an attempt to relitigate Plaintiff's earlier Motion for Sanctions for Defendant's purported destruction of responsive documents. (Def. Opp., dkt. 165 at 8, 11.) As explained thoroughly in Plaintiff's Motion for Review, however, that earlier Motion for Sanctions was based on Taco Bell's assertions that it had destroyed all relevant documents. Because Taco Bell actually has those documents that it claimed had been destroyed, spoliation sanctions are not at issue. Spoliation assumes that the nonproducing party destroyed the documents; Taco Bell has the documents, it just refuses to produce them.

1 spoliation, but on Taco Bell's violation of this Court's Order. Such relief is
2 appropriate under Rule 37(b)(2)(a)(i), but it has nothing to do with spoliation.
3 *See Wardell v. County of Los Angeles*, No. CV-06-5673 CJC (RC), 2008 WL
4 2220937, at *2 (C.D. Cal. May 21, 2008) (discussing the remedies available
5 under Rule 37(b)(2)(A) for violations of Court Orders that compel the
6 production of documents, which include establishment orders and other
7 evidentiary sanctions.)

8     Of course, Taco Bell's repeated references to spoliation sanctions here
9 are yet another attempt to divert the Court's attention from the real issue—Taco
10 Bell withheld relevant documents and continues to do so. Taco Bell focuses on
11 the Magistrate's statements about Plaintiff's "poor planning" in discovery.
12 (Def. Opp., Dkt. 165 at 7, 10.) But Plaintiff could not have planned on Taco
13 Bell concealing responsive documents – documents specifically discussed in
14 Plaintiff's Motion to Compel – for well over a year.

15     Taco Bell managed to convince the Magistrate that Plaintiff's *ex parte*
16 Application was about Taco Bell's destruction of documents. It was not. The
17 Application and this Motion are about documents that Taco Bell actually has,
18 but refuses to produce. These documents will help defeat Defendant's Motion
19 for Summary Judgment, which is why Taco Bell does not want to produce
20 them.

21 **<u>Conclusion</u>**

22     For the reasons set forth herein, in her Motion, and in her *ex parte*
23 Application of December 28, 2011, Plaintiff Tracie Thomas respectfully
24 requests that this Court overturn the Magistrate's January 12, 2012 Order, and
25 grant the relief requested in Plaintiff's *ex parte* Application.

26
27
28

Dated: February 13, 2012

                                      Respectfully submitted,

                                      TRACIE THOMAS, individually and on behalf of a class of similarly situated individuals

                                      BY:  <u>/s/ Michael J. McMorrow</u>
                                                      One of her attorneys

David C. Parisi
dparisi@parisihavens.com
Suzanne Havens Beckman
shavens@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California   91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)

Evan Meyers (Admitted *Pro Hac Vice*)
emeyers@edelson.com
John Ochoa (Admitted *Pro Hac Vice*)
jochoa@edelson.com
EDELSON MCGUIRE LLC
350 N. LaSalle Street, Suite 1300
Chicago, Illinois 60654
(312) 589-6370 (phone)
(312) 589-6378 (facsimile)

Michael J. McMorrow (Admitted *Pro Hac Vice*)
mjmcmorrow@smithmcmorrow.com
SMITH & MCMORROW P.C.
53 West Jackson Blvd., Suite 1018
Chicago, IL 60604
(312) 546-6139 (phone)
(888) 664-8172 (facsimile)

*Attorneys for Plaintiff Tracie Thomas*

**CERTIFICATE OF SERVICE**

I, Michael J. McMorrow, an attorney, certify that on February 13, 2012, I served the above and foregoing *Reply Memorandum in Further Support of Motion for Review of Magistrate Judge's January 12, 2012 Order Pursuant to L.R. 72-2.1,* by causing true and accurate copies of such paper to be filed and transmitted to the persons registered to receive such notice via the Court's CM/ECF electronic filing system.

/s/  Michael J. McMorrow