David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California   91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)

*Counsel for Plaintiff*
(Additional Counsel Appear below Signature)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACIE THOMAS, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>TACO BELL CORP., a California corporation,<br><br>Defendant. | **Case No.: SACV09-1097 CJC (AN)**<br><br>**PLAINTIFF'S SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Cormac J. Carney |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56-2, Plaintiff Tracie Thomas submits this Separate Statement of Genuine Disputes of Material Fact in support of her Opposition to Defendant Taco Bell Corp.'s Motion for Summary Judgment.

All exhibits referenced herein are exhibits to the Declaration of Michael J. McMorrow, filed contemporaneously herewith.

| DEF.'S UNCONTROVERTED FACT | PLAINTIFF'S RESPONSE |
| --- | --- |
| 1.  Taco Bell Corp. ("Taco Bell") is a for-profit corporation registered in the State of California, with its principal place of business in Irvine, California.<br><br>Jones Decl., ¶ 1. | Undisputed. |
| 2.  The Chicago Taco Bell Restaurant Owners Advertising Association (the "Chicago Association") is a non-profit corporation registered in the State of Illinois, with its principal place of business in Chicago, Illinois.<br><br>Borkan Decl., ¶ 3, and Ex. A thereto; Kalseim Depo., 23:3-7; 12-19 [Ex. A]. | Undisputed, except that Plaintiff notes that the members comprising the Chicago Association, including Defendant Taco Bell Corp., have financial interests, and the purpose of the Chicago Association is to "promote the interests of the owners and operators of Taco Bell restaurants in the Chicago, Illinois area of dominant influence."  Ex. R, at Art. I. |

| | |
|---|---|
| 3. The Chicago Association's purpose is to efficiently promote Taco Bell restaurants in the Chicago area by pooling their resources for local advertising, and it initiates its own marketing plans and carries them out through to completion.<br><br>Borkan Decl., ¶ 4; Borkan Depo., 64:22-65:4, 149:6-15 [Ex. B]; Arnoldt Depo. 36:12-14 [Ex. D]. | Disputed. Plaintiff objects to this characterization of the Chicago Association's purpose, as the purpose of the Chicago Association is clearly defined by its bylaws (Ex. R, Art. I). Plaintiff further objects to this statement because it is compound and suggests the Chicago Association "initiates its own marketing plans and carries them out through completion" with no input from Taco Bell Corp. The Chicago Association is limited in its marketing plans by the Taco Bell Marketing Fund Policy (Ex. K, § IV), and invoices from its vendors will not be reimbursed through the National Advertising Funds Administration (NAFA) unless its marketing plans meet certain criteria laid out by Taco Bell Corp. (Ex. K; SAF ¶¶ 58-59.) Further, local associations must obtain approvals from Taco Bell Corp. before utilizing any trademark owned by Taco Bell Corp. (*See* Plaintiff's Statement of Additional Facts ("SAF") ¶ 67, below). |

Plaintiff's Statement of Genuine Disputes and
Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 4. In 2005, the Chicago Association had twelve members, one of which was Taco Bell.<br><br>Borkan Decl., ¶ 6; Rosen Depo., 268:12-18 [Ex. C]. | Undisputed. |
| 5. In 2005, the Chicago Association's Board of Directors had four directors, one of which was appointed by Taco Bell.<br><br>Borkan Decl., ¶ 5, and Ex. B thereto; Viti Decl., ¶ 2. | Undisputed, except that Plaintiff notes that the board member appointed by Taco Bell must be the "Franchisor," *i.e.* a person standing in the place of Taco Bell Corp. Ex. R, Art. VI, §6.3. As such, the board member isn't just "appointed by" Taco Bell Corp., the board member *is* Taco Bell Corp. |
| 6. The Chicago Association has observed corporate formalities.<br><br>Borkan Decl., ¶¶ 3-6; Viti Decl., ¶¶ 2, 3. | Plaintiff lacks sufficient information to respond, so therefore states this fact is Undisputed. |
| 7. The Chicago Association entered into a contract with ESW Partners to be the Chicago Association's advertising agency.<br><br>Borkan Decl., ¶ 8; Rosen Depo., 241:19-242:5 [Ex.C]; [Ex. F]. | Undisputed. |

Plaintiff's Statement of Genuine Disputes and Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 8.  Taco Bell was not a party to the Chicago Association's contract with ESW Partners.<br><br>Rosen Depo., 241:19-242:5 [Ex. C]; [Ex. F]. | Disputed.  Plaintiff objects that the term "party" is undefined.  Plaintiff disputes this statement, as Taco Bell Corp. was a member of the Chicago Association, and as such was a beneficiary of and acted pursuant to the Contract between the Chicago Association and ESW Partners.  Ex. R, Art. III. |
| 9.  The Chicago Association and ESW Partners decided to sponsor a local, independent Nachos BellGrande promotion.<br><br>Borkan Decl., ¶¶ 9, 13; Rosen Depo., 260:20-261:7, 275:1-6 [Ex. C]. | Disputed.  The Nachos BellGrande promotion was not a "local, independent promotion" but rather was a National promotion that was being supported, or "plussed out" by the Chicago Association and ESW.  (SAF ¶¶ 17-22, 25, 26.)<br><br>The Marketing Fund Policy required local promotions to "be consistent with Taco Bell Corp.'s objectives and strategies," be consistent with "then-current national and regional programs and campaigns," properly use "Taco Bell Corp.'s trademarks, trade names, service marks, logos, and the like," and "contribute to the name, reputation, and goodwill of Taco Bell Corp."  (Ex. K § 4).  Taco Bell testified that the policy is |

adhered to.  (SAF ¶¶ 58-59.)

Plaintiff also disputes this statement to the extent that it suggests only the "Chicago Association and ESW" decided to sponsor the text message component of the Nachos BellGrande campaign, as Taco Bell voted for the campaign twice.  (SAF ¶¶ 39, 43, 45.)

Plaintiff further disputes that the Chicago Association and ESW "sponsored" the Nachos BellGrande campaign, as Taco Bell Corp. used its own funds from Company-owned stores within the Chicago DMA to pay Ipsh and ESW for the text message campaign.  (SAF ¶¶ 49-65.)  Taco Bell directly paid for this campaign using its own money.

Further, Taco Bell Corp. paid for the campaign by releasing funds from NAFA to pay for the campaign after determining that the campaign met the standards set forth in the Marketing Funds Policy.  (SAF ¶¶ 58-63).

Plaintiff's Statement of Genuine Disputes and
Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 10.  ESW Partners developed the local promotion for chicken and steak Nachos BellGrande for the Chicago Association.<br><br>Borkan Decl., ¶¶ 9, 10; Rosen Depo., 259:20-260:15; 260:20-261:7, 272:12-17; 275:1-6 [Ex. C]; Ostrowski Decl., ¶ 4. | Disputed to the extent that Defendant claims this was a "local promotion." (*See* Plaintiff's Statement of Genuine Disputes of Material Fact ("SDF") ¶ 9, above.) |
| 11.  The Chicago Association's Board of Directors, and a majority of the Chicago Association members, approved the local promotion for chicken and steak Nachos BellGrande.<br><br>Borkan Decl., ¶¶ 11, 12; Rosen Depo., 60:17-62:18 [Ex. C]; Borkan Depo. 99:18-101:3 [Ex. B]; Kalseim Depo. 41:8-24, 42:11-43:1 [Ex. A]; [Exs. G, H, I, J, K, L]. | Plaintiff disputes that the Nachos BellGrande promotion was a "local promotion." (SDF ¶ 9, above.)  It is undisputed that the Chicago Association's Board of Directors, which included Taco Bell Corp., and the Chicago Association members, which also included Taco Bell Corp., approved the local component of the chicken and steak Nachos BellGrande campaign. (SAF ¶¶ 34-39, 40-43, 45.) |
| 12.  ESW Partners and ipsh!net, Inc. ("Ipsh") entered into a contract to create and send the text message to publicize the local promotion for chicken and steak Nachos BellGrande for the Chicago Association. | Plaintiff disputes that the Nachos BellGrande promotion was a "local promotion."  (SDF ¶ 9, above.)  Plaintiff also disputes that the text message promotion was done solely for the Chicago Association, as each individual |

Plaintiff's Statement of Genuine Disputes and Additional Statements of Material Fact

| | |
|---|---|
| [Ex. P]. | member of the Chicago Association, including Taco Bell Corp., approved, authorized, paid for, and benefitted from the messages.  *See* SAF ¶¶ 34-39, 40-43, 45 (Taco Bell Corp.'s approval); ¶¶ 49-65 (Taco Bell Corp.'s payment); ¶¶ 17-22, 25-27, 69-71, 79-82 (Taco Bell Corp.'s benefit). |
| 13.  Taco Bell was not a party to the contract between ESW and Ipsh.  [Ex. P]. | Undisputed. |
| 14.  Ipsh procured the "short code" used in connection with the text message.  Rosen Depo., 55:8-57:4, 60:4-7 [Ex. C]. | Undisputed, except Plaintiff notes that Taco Bell Corp. paid for the short code. (SAF ¶¶ 51, 62-64.) |
| 15.  Ipsh procured a list of approximately 17,000 Chicago-area cellular phone numbers from a third party.  Jelly Depo., 68:23-69:6; 168:17-23 [Ex. O]. | Undisputed. |
| 16.  Ipsh sent the text message that Plaintiff allegedly received on October 11, 2005.  Jelly Depo., 50:6-13 [Ex. O]; Rosen | Disputed.  The term "sent" is undefined, and the Telephone Consumer Protection Act, 47 U.S.C. § 227, contemplates liability for "any person who makes a call."  As such, Taco Bell Corp. also |

Plaintiff's Statement of Genuine Disputes and
Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| Depo., 183:7-20 [Ex. C]; [Ex Q]; *See* Fourth Amended Complaint (Dkt. No. 78) at p. 8:13-15. | "made a call" on or about October 11, 2005 so as to expose it to liability under the TCPA. |

Plaintiff Tracie Thomas submits this Statement of Additional Undisputed Material Facts ("SAF") that bear on the issues raised by Defendant Taco Bell Corp. in support of its Renewed Motion for Summary Judgment.

All exhibits referenced herein are exhibits to the Declaration of Michael J. McMorrow, filed contemporaneously herewith.

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 17.  During October and November 2005, Taco Bell Corp. launched a nationwide promotional campaign promoting its Chicken and Steak Nachos BellGrande. | Ex. A, Viti Dep. 68:22-25 – 69:1-4.<br>Ex. J at ¶ 2.<br>Ex. I at CA 0003. |
| 18.  As part of this Nachos BellGrande promotional campaign, Taco Bell Corp., though its national advertising agency, prepared national advertising in the form of television ads to promote Chicken and Steak Nachos BellGrande. | Ex. J at CA 0013 ("1175 National & Local TV TRP's")<br>Ex. A, Viti Dep. 111:10-23.<br>Ex. B, Rosen Dep. 310:20-24 – 311:1-18. |

| | |
|---|---|
| 19.  One of Susan Viti's job duties as a Field Marketing Manager of Taco Bell Corp. was to present the national advertising calendar to the Chicago Taco Bells Owners Advertising Association ("Chicago DMA"), and all other local associations she worked with, which she did at an August 1, 2005 meeting of the Chicago DMA. | Viti Decl. ¶ 9 (Dkt. 169-5). Ex. A, Viti Dep. 31:5-16. Ex. J at ¶ 2. |
| 20.  Local Associations generally promote whatever product is being promoted by Taco Bell Corp. nationally. | Ex. A, Viti Dep. 71:13-22. Ex. B, Rosen Dep. 296:16-24 – 297:1-18. Ex. K at § IV (B)(2). |
| 21. The Taco Bell National Advertising calendar was "omnipresent" at ESW Partners, the advertising agency for the Chicago DMA. | Ex. C, Kalseim Dep. 53:4-24. |
| 22.  During the same time that Taco Bell Corp. was running its Nachos BellGrande promotion, several local DMA's, including the Chicago DMA, were running a "Cast your vote: Chicken or Steak NBG Promotion." | Ex. A, Viti Dep. 71:13-22. Ex. B, Rosen Dep. 296:16-24 – 297:1-18. Ex. I at CA 0003. Ex. L at CA 0177. |

Plaintiff's Statement of Genuine Disputes and Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 23. The "Cast your vote: Chicken or Steak NBG Promotion" was supported with radio ads, bags and trayliners, and a text message blast to 17,000 individuals. | Ex. I at CA 0003. Ex. M at CA 0120. |
| 24. By the time the "Cast your vote" Promotion was completed, approximately 28,000 text messages had been transmitted. | Ex. N. |
| 25. The 2005 "Cast your vote" Promotion, which included the text message-marketing component, was run to plus-out the simultaneous national campaign. | Ex. D, Arnoldt Dep. 65:5-22. |
| 26. It was important that the 2005 "Cast Your Vote" Promotion, with its text message marketing component, be conducted simultaneously with the National Nachos BellGrande campaign. | Ex. O. |
| 27. Plaintiff Tracie Thomas received a text message from shortcode "47336" on or around October 11, 2005, stating the following: VISIT TACO BELL TO TRY THE NEW CHICKEN & STEAK NACHOS BELL GRANDE RPLY "CHX" OR "STK" 2 VOTE 4 UR FAVE! U MAY WIN A YEAR OF | Ex. P. Ex. Q. |

Plaintiff's Statement of Genuine Disputes and
Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| FREE TACOS! PWRDBYZINGY 2STOP2OPTOUT" | |
| 28.  Susan Viti was, at all times relevant to this litigation, employed by Taco Bell Corp. as a field marketing manager. | Ex. A, Viti Dep. 16:6-17.<br>Ex. D, Arnoldt Dep. 80:15-16.<br>Ex. E, Borkan Dep. 22:14-15.<br>Ex. C, Kalseim Dep. 71:8 – 72:2. |
| 29.  The Chicago DMA is governed by Bylaws. | Ex. R. |
| 30.  The Chicago DMA may not exist without approval by Taco Bell Corp. | Ex. R, Art. I "Upon approval from Taco Bell Corp. (the "Franchisor"), the Association is to act as the "Local Association . . . ." |
| 31.  Pursuant to the Chicago Association Bylaws, the Taco Bell Corp. (defined as "Franchisor") "shall be a member of the Chicago Area Restaurant Owners Advertising Association" | Ex. R, Art. III. |
| 32.  In 2005, Taco Bell was a member of the Chicago DMA. | Ex. E, Borkan Dep. 14:7-12. |

Plaintiff's Statement of Genuine Disputes and
Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 33.  At all times relevant to this litigation, Susan Viti, an employee of Taco Bell, stood in the shoes of Taco Bell Corp. and represented the Taco Bell Corp.-owned stores existing within the Chicago DMA. | Ex. A, Viti Dep. 31:24-25 – 32:1-4. Ex. S. |
| 34.  Pursuant to the Chicago DMA Bylaws, "one seat on the Board of Directors shall be filled by the Franchisor." | Ex. R, Art. VI. Ex. E, Borkan Dep. 23:12-24 – 24:1-3. |
| 35.  During the relevant time period in the Complaint, Taco Bell Corp. was a member of the Board of Directors of the Chicago DMA. | Ex. E, Borkan Dep. 20:24 – 21:1-3; 23:23-24 – 24:1-3. Ex. A, Viti Dep. 33:2-10. |
| 36.  According to Chicago DMA President Neil Borkan, Susan Viti represented Taco Bell Corp. as the "Franchisor" on the Board of Directors of the Chicago DMA. | Ex. E, Borkan Dep. 11:3-13; 23:24 – 24:1-5. |
| 37.  On August 1, 2005, a meeting of the Board of Directors of the Chicago DMA took place where ESW Partners presented a plan for "Cast your vote: Chicken or Steak NBG Promotion," which included the intended recipients of the message ("17k Chicagoans 18- | Ex. J, at CA 0013. |

Plaintiff's Statement of Genuine Disputes and Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 34yrs") and the cost of the promotion ("$17,920"). | |
| 38.  A representative of Taco Bell Corp., Susan Viti, attended this August 1, 2005 Meeting. | Ex. J. |
| 39.  Susan Viti voted in her capacity as a Franchisor-Board Member representative of Taco Bell Corp. to proceed with the "Cast your vote: Chicken or Steak NBG Promotion." | Ex. R, Art. VI.<br>Ex. E, Borkan Dep. 23:24 – 24:1-5.<br>Viti Decl. ¶ 12 (Dkt. 169-5). |
| 40.  On August 5, 2005, Jennifer Kalseim of ESW sent a fax ballot to all "Chicago Association Members" via email, including Susan Viti, that contained details of how the "text to win" component of the promotion worked. | Ex. C, Kalseim Dep. 79:13-22.<br>Ex. S.<br>Ex. I, at CA 0003-0004; 0018. |
| 41.  The fax ballot described a "text message push to 17,000 Chicagoans." | Ex. I. |
| 42.  In response to Jennifer Kalseim's emails, Taco Bell Corp., through its representative Susan Viti, sent an email stating "Company votes yes." | Ex. S.<br>Ex. A, Viti Dep. 78:5-24 – 79:1-22. |

Plaintiff's Statement of Genuine Disputes and
Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 43.  Taco Bell Corp., through its representative Susan Viti, stated that its vote to proceed with the promotion as a Board Member corresponded with the description of the Promotion contained in Ex. I. | Ex. I.<br>Ex. A, Viti Dep. 88:21-25 – 89:1-2. |
| 44.  Pursuant to the Marketing Fund Policy, "advertising, marketing and promotion efforts of the local association have to be approved in advance, in writing, by Taco Bell Corp . . . ."  The Policy provides approval criteria and instructions for the routing for approval of materials. | Ex. K, § 4. |
| 45.  Taco Bell Corp., through its representative Susan Viti, also voted on behalf of its Taco Bell Corp.-owned restaurants to proceed with the Promotion. | Viti Decl. ¶ 12 (Dkt. 169-5). |
| 46.  Taco Bell Corp., through its representative Susan Viti, approved the text message marketing campaign a third time before forwarding materials on to Jennifer Arnoldt and Bernadette Jones. | Ex. T, at CA 0046-0047. |

Plaintiff's Statement of Genuine Disputes and
Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 47.  Susan Viti informed fellow Taco Bell employees Jennifer Arnoldt and Bernadette Jones that the 2005 "Cast Your Vote" Promotion contained a text messaging component. | Ex. T, at CA 0048 ("there is a text messaging component to the promotion"). |
| 48.  Bernadette Jones, an employee in Taco Bell Corp.'s Legal Department, approved the "Cast your vote: Chicken or Steak NBG Promotion." | Ex. T, at CA 0046. |
| 49.  During the relevant time period, Defendant Taco Bell Corp. owned approximately 24 of the 160 Taco Bell Restaurants within the geographic location of the Chicago DMA, which encompasses approximately 15% of the Taco Bell Restaurants in the Chicago DMA. | Ex. B, Rosen Dep. 267:11-13; 268:12-14.<br><br>Ex. A, Viti Dep. 28:22-25; 31:24-25 – 32:1-4; 47:22-24 – 48:1-5.<br><br>Ex. C, Kalseim Dep. 24:22-24 – 25:1-4. |
| 50.  Each franchise-owned store contributes 4.5% of its sales towards Taco Bell's Marketing Fund. | Ex. F, Halloran Dep. 19:15-24. |
| 51.  Each store owned by Taco Bell Corp. contributes 4.5 % of its sales towards Taco Bell's Marketing Fund. | Ex. F, Halloran Dep. 19:25 – 21:1. |
| 52.  The National Advertising Funds Administration (NAFA) is a division of Taco Bell Corp. that is legally indistinct from Taco Bell Corp. | Ex. F, Halloran Dep. 27:24 – 28:1-3; 78:4-15. |

| | |
|---|---|
| 53. NAFA is staffed solely by Taco Bell Employees. | Ex. F, Halloran Dep. 27:19-24; 78:7-8. |
| 54. NAFA collects the contributions of both franchisee-owned stores and Taco Bell Corp.-owned stores and holds the funds in a bank account at U.S. Bank. | Ex. F, Halloran Dep. 14:21-25; 18:2-4. |
| 55. NAFA controls the disbursement of funds held in the U.S. Bank account. | Ex. F, Halloran Dep. 18:2-4; 14:21-25. Ex. K, § 3-4. |
| 56. A portion of the funds collected by NAFA goes towards advertising conducted by Taco Bell Corp.'s national advertising agency of record, DraftFCB. | Ex. F, Halloran Dep. 23:11-25, 25-27. Ex. D, Arnoldt Dep. 21:6-7. |
| 57. A portion of the funds held by NAFA are also used to pay for the advertising done by advertising agencies of local associations. | Ex. F, Halloran Dep. 22:7-19. |
| 58. According to Taco Bell 30(b)(6) representative Lisa Halloran, NAFA adheres to the Marketing Fund Policy. | Ex. K. Ex. F, Halloran Dep. 9:16-15 – 10:1-20; 38:18-25 – 39:1-6; 42:13-19; 70:3-6. |
| 59. The Marketing Fund Policy dictates that NAFA cannot release funds to pay vendors unless the marketing meets certain criteria. | Ex. K, § 3(D). |

Plaintiff's Statement of Genuine Disputes and
Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 60.  The contributions of both company stores and franchisee-owned stores are disbursed by NAFA to pay invoices for marketing initiated by local associations. | Ex. F, Halloran Dep. 22:20-25 – 23:1-10; 41:4-15. |
| 61.  ESW Partners submitted invoices from Ipsh for the text message marketing campaign to NAFA for reimbursement. | Ex. U at TBC 000093-95; 000097-98. Ex. F, Halloran Dep. 45:6-15; 58:23-25. |
| 62.  NAFA reimbursed ESW Partners for invoices from Ipsh for procuring the vanity shortcode "TBELL." | Ex. F, Halloran Dep. 52:5-15; 54:15-25 - 56:1-6. Ex. U at TBC 000091-000093. |
| 63.  NAFA reimbursed ESW Partners for invoices from Ipsh for conducting the text message marketing campaign at issue in this litigation. | Ex. U. Ex. F, Halloran Dep. 53:12-25 – 54:1-3; 56:7-25 – 58:1-8; 62:21-25 – 64:1-4. |
| 64.  The funds of Taco Bell-owned stores within the Chicago DMA were used to pay the vendor Ipsh. | Ex. F, Halloran Dep. 22:20-25 – 23:1-10. Ex. T, at 8 (Creative Approval Form stating contest was "comingled," as opposed to company-only or franchise-only.) *See* SAF ¶¶ 49, 51, 54, 57, 60-63, above. |
| 65.  Taco Bell Corp. directly paid for the 2005 text message marketing campaign because it was an owner of 24 Taco Bell restaurants within the Chicago DMA and contributed funds to NAFA, which were then in turn used to pay Ipsh for the text message marketing campaign. | *See* SAF ¶¶ 49, 51, 54, 57, 60-64, above. |

Plaintiff's Statement of Genuine Disputes and Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 66. Vendors would not receive funds from NAFA for local advertising unless that advertising met the criteria set forth in the Marketing Fund Policy. | Ex. K, § 3(D).<br><br>Ex. F, Halloran Dep. 38:18-25 – 39:1-6; 42:13-19; 70:3-6. |
| 67. Taco Bell Corp. also controlled the use of Taco Bell trademarks by local association-initiated marketing. | Ex. G, Jones Dep. 20:12-25. |
| 68. Taco Bell Corp. approved the creative execution," or "look and feel," or creative aspects of local association-initiated advertising. | Ex. D, Arnoldt Dep. 37:13-21; 76:19 – 77:4. |
| 69. The phrase "Taco Bell" is a registered mark owned by Taco Bell Corp. | Ex. G, Jones Dep. 21:5-6. |
| 70. The phrase "Nachos BellGrande" is a trademark of Taco Bell Corp. | Ex. E, Borkan Dep. 76:12-18.<br><br>Ex G, Jones Dep. 48: 17-25. |
| 71. Both terms "Taco Bell" and "Nachos BellGrande" appeared in the body of the text message received by Plaintiff Tracie Thomas. | *See* SAF ¶ 27.<br><br>Ex. Q. |
| 72. The bags and trayliners used in the "Cast your vote: Chicken or Steak NBG Promotion" contained the shortcode "TBELL" and encouraged consumers to "go to mylocaltacobell.com or text in to this short code to participate in the promotion." | Ex. B, Rosen Dep. 302:6-18.<br><br>Ex. T, at 14-15. |

Plaintiff's Statement of Genuine Disputes and
Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 73.  Taco Bell Corp. approved the use of the bags and trayliners. | Ex. D, Arnoldt Dep. 76:19-25.<br>Ex. G, Jones Dep. 52:4-17. |
| 74.  Taco Bell Corp. currently licenses the shortcode "82355" or "TBELL." | Ex. V (Dkt. 101-2). |
| 75.  During the times relevant to this litigation, Jennifer Kalseim was an account executive at ESW Partners, the advertising agency that worked with the Chicago DMA. | Ex. C, Kalseim Dep. 20:2-7; 22:20-24 – 23:1-7. |
| 76.  Jennifer Kalseim was present at board meetings of the Chicago DMA, as well as full meetings of the Chicago DMA. | Ex. J.<br>Ex. C, Kalseim Dep. 43:13-23; 46:15-24 – 47:1-2. |
| 77.  Discussions were had amongst ESW Partners whether the registered mark "®" should appear in the text message at issue in this case. | Ex. W.<br>Ex. X. |
| 78.  The text message that is at issue in this case would have been "brought to" the Board of Directors of the Chicago Association (of which Taco Bell Corp. was a member), and that "[the Board] would have known exactly what it was going to say before [ESW Partners] would ever send it." | Ex. C, Kalseim Dep. 195:17-25 – 196:1-2. |

Plaintiff's Statement of Genuine Disputes and Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

| | |
|---|---|
| 79.  The language of the text message at issue in this case originally read "VISIT CHGOLAND TACO BELL 2 TRY NACHOS BELLGRANDE! RPLY "CHICKEN" OR "STEAK" 2 VOTE 4 UR FAVE! U MAY WIN A YEAR OF FREE TACOS! PWDBYZINGY. QUIT2OPTOUT." | Ex. Q, at CA 0111. |
| 80.  The version of the text message that was actually transmitted omitted reference to "Chicagoland," and instead encouraged consumers to visit Taco Bell restaurants generally. | Ex. Q, at CA 0111. *See* SAF ¶ 27, above. |
| 81.  If a consumer responded "help" to the text message transmitted as part of the "Cast your vote" Promotion, she would receive a message stating that the contest was "supported by Taco Bell." | Ex. X, at ipsh 0000492. |
| 82.  Plaintiff believed that the text message she received promoted Taco Bell stores generally. | Ex. H, Thomas Dep. 8:5-23. |

Plaintiff's Statement of Genuine Disputes and Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)

Dated: April 2, 2012

Respectfully submitted,

TRACIE THOMAS, individually and on behalf of a class of similarly situated individuals

By_____/s/ John C. Ochoa_____
                       One of Plaintiff's Attorneys

David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California   91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)

EVAN M. MEYERS (admitted *Pro Hac Vice*)
emeyers@edelson.com
JOHN C. OCHOA (admitted *Pro Hac Vice*)
jochoa@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

MICHAEL J. MCMORROW (*Pro Hac Vice*)
mjmcmorrow@smithmcmorrow.com
SMITH & MCMORROW, P.C.
53 West Jackson Boulevard, Suite 1018
Chicago, Illinois 60604
T: 312.546.6139

*ATTORNEYS FOR PLAINTIFF*

## **CERTIFICATE OF SERVICE**

I, John C. Ochoa, an attorney, certify that on April 2, 2012, I served the above and foregoing ***Plaintiff's Separate Statement of Genuine Disputes of Material Fact and Additional Statement of Undisputed Material Fact in Opposition to Defendant's Motion for Summary Judgment*** by causing true and accurate copies of such paper to be transmitted by electronic mail to the persons registered to receive such notice via the Court's CM/ECF electronic filing system.


/s/  John C. Ochoa

Plaintiff's Statement of Genuine Disputes and
Additional Statements of Material Fact

Case No.: SACV09-1097 CJC (AN)