Stephen G. Larson (SBN 145225)
larson.stephen@arentfox.com
Robert C. O'Brien (SBN 154372)
obrien.robert@arentfox.com
Steven E. Bledsoe (SBN 157811)
bledsoe.steven@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401

Attorneys for Defendant
TACO BELL CORP.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| TRACIE THOMAS, individually and on behalf of class of similarly situated individuals,<br><br>        Plaintiff,<br><br>    v.<br><br>TACO BELL CORP., a California corporation, et. al,<br><br>        Defendants. | Case No.  SACV09-1097 DOC (ANx)<br><br>*Assigned to The Hon. Cormac J. Carney*<br><br>**DEFENDANT TACO BELL CORP.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE FOURTH AMENDED COMPLAINT**<br><br>**[Concurrently filed with<br>(1) Defendant's Response to Statement of Genuine Disputes; and<br>(2) Defendant's Objections to Declaration of McMorrow]**<br><br>Date:           April 23, 2012<br>Time:           1:30 PM<br>Courtroom:    9B<br><br>Complaint Filed:   September 15, 2009<br>Trial Date:         TBA |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

SACV09-1097 DOC (ANx)

TACO BELL'S REPLY IN SUPPORT OF
MSJ ON 4TH AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.    ARGUMENT ....................................................................................... 2

    A.    Standard Elements Of Vicarious Liability Apply To The TPCA ......... 2

        1.    Section 227(b)(1)(A)(3)'s Plain Language Does Not
Provide For Vicarious Liability ....................................... 2

        2.    Customary Elements Of Vicarious Liability Apply To
The TCPA ....................................................................... 2

        3.    Plaintiff's Cases Support Taco Bell .......................... 4

        4.    Plaintiff Has Not Sued The Directors That Voted For The
Text Message Promotion, Nor Proffered Any Evidence Of
Intentional Wrongdoing .................................................. 6

        5.    Plaintiff Overlooks Basic Legal Principles That Support
Taco Bell's Position ........................................................ 7

    B.    Plaintiff Has Failed To Meet Her Burden Of Demonstrating A
Material Issue Of Triable Fact ............................................................ 7

        1.    Evidence That Susan Viti Voted For The Text Message
Promotion Does Not Establish Taco Bell's Liability ................. 8

        2.    Taco Bell Did Not "Pay" For The Text Message, And
Even If It Did, That Does Not Establish Vicarious
Liability .......................................................................... 9

        3.    Alleged "Coordination" Between Taco Bell And The
Chicago Association Demonstrates That The Entities Are
Separate, Supporting Taco Bell's Position ............................... 10

        4.    Taco Bell's Right To Control Its Trademarks Is
Insufficient To Establish Liability ........................................... 11

1

2

3          5.      The Text Message's Reference To "Taco Bell" Does Not

4                  Establish Taco Bell's Liability .................................................. 12

5          6.      Whether Taco Bell Obtained A Benefit From The Text

6                  Message Is Irrelevant ............................................................... 13

7          7.      Plaintiff Does Not Demonstrate That Taco Bell

8                  Controlled The Chicago Association ........................................ 14

9    III.   CONCLUSION ............................................................................... 15

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Abbas v. Selling Source, LLC*,
  No. 09-cv-3413, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ........................... 4

*Account Outsourcing, LLC v. Verizon Wireless Personal Communications, L.P.*,
  329 F. Supp. 2d 789 (M.D. La. 2004) ................................................. 3

*Applestein v. Fairfield Resorts, Inc.*,
  No. 0004, 2009 WL 5604429 (Md. App. July 8, 2009) ........................ 4, 5, 6, 12

*Baltimore-Wash. Tel. Co. v. Hot Leads Co., LLC*,
  584 F. Supp. 2d 736 (D. Md. 2008) ...................................................... 6

*Brookhouser v. State of Cal.*,
  10 Cal. App. 4th 1665 (1992) ............................................................. 7

*Browning Ferris Indus. Of Ill., Inc. v. Ter Maat*,
  195 F.3d 953 (7th Cir. 1999) ............................................................ 9

*Charvat v. EchoStar Satellite, LLC*,
  676 F. Supp. 2d 668 (S.D. Ohio 2009) .............................................. 15

*Charvat v. Farmers Ins. Columbus, Inc.*,
  897 N.E.2d 167 (Ohio App. 2008) ................................................. 3, 15

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ........................................................... 9

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995) ....................................................... 10, 12

*Gomez v. Campbell-Ewald Co.*,
  No. CV 10-2007 DMG (CWx), 2010 WL 7345680, at *3
  (C.D. Cal. Nov. 5, 2010) ................................................................ 3

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ......................................................... 14

*Herman v. YellowPages.com, LLC*,
  780 F. Supp. 2d 1028 (S.D. Cal. 2011) ............................................. 11

*In re Jiffy Lube, Int'l, Inc.*,
  --- F. Supp. 2d ---, 2012 WL 762888 (S.D. Cal. Mar. 9, 2012) ................. 3

*ING Bank, FSB v. Chang Seob Ahn*,
758 F. Supp. 2d 936 (N.D. Cal. 2010)..................................................................8

*Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil Inc.*,
456 F. Supp. 831 (D. Del. 1978) ........................................................................10

*Joiner v. Ryder System, Inc.*,
966 F. Supp. 1478 (C.D. Ill. 1996).............................................................10, 12

*Juarez v. Jani-King of Cal., Inc.*,
273 F.R.D. 571 (N.D. Cal. 2011) .................................................................12, 15

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
529 F.3d 371 (7th Cir. 2008) ..............................................................10, 11, 15

*Kramer Mot., Inc. v. British Leyland, Ltd.*,
628 F.2d 1175 (9th Cir. 1980) .............................................................................9

*Kramer v. Autobytel, Inc.*,
759 F. Supp. 2d 1165 (N.D. Cal. 2010)..............................................................4

*Lozano* v. *Twentieth Century Fox Film Corp.*,
702 F. Supp. 2d 999 (N.D. Ill. 2010)...................................................................4

*Maryland v. Universal Elections*,
787 F. Supp. 2d 408 (D. Md. 2011) ...........................................................2, 3, 6

*Material Supply Int'l, Inc. v. Sunmatch Ind. Co., Ltd.*,
62 F. Supp. 2d 13 (D. D.C. 1999) ...............................................................10, 14

*Omaha Indem. Co. v. Royal Am. Managers, Inc.*,
755 F. Supp. 1451 (W.D. Mo. 1991)...................................................................9

*Russello v. United States*,
464 U.S. 16 (1983) ..........................................................................................4, 7

*Salkin v. United Servs. Auto Ass'n*,
767 F. Supp. 2d 1062 (C.D. Cal. 2011)............................................................13

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ...............................................................................4

*Spillman v. Dominos Pizza, LLC*,
No. 10-cv-349, 2011 WL 721498 (M.D. La. Feb. 22, 2011)........................5, 6

*Steven v. Roscoe Turner Aeronautical Corp.*,
324 F.2d 157 (7th Cir. 1963) .............................................................................15

*Texas v. American Blastfax, Inc.*,
121 F. Supp. 2d 1085 (W.D. Tex. 2000) ............................................................3

*Texas v. Am. Blastfax, Inc.*,
   164 F. Supp. 2d 892, 899 (W.D. Tex. 2001) ...................................................... 6

*U.S. v. Freeman*,
   498 F. 3d 893 (9th Cir. 2007) ........................................................................ 13

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ............................................................................................ 8

*United States v. Naftalin*,
   441 U.S. 768 (1979) .......................................................................................... 7

*United States v. Wong Kim Bo*,
   472 F.2d 720 (5th Cir. 1972) ............................................................................ 4

*Williams v. I.B. Fischer Nev.*,
   999 F.2d 445 (9th Cir. 1993) .......................................................................... 14

*Worsham v. Nationwide Ins. Co.*,
   772 A.2d 868 (Md. App. 2001) ........................................................................ 5

STATUTES

47 U.S.C. Section 227(b)(1)(A)(3) ........................................................................ 1, 3

47 U.S.C. Section 227(c)(5) ........................................................................... 1, 3, 4, 5

OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (6th ed. 1969) ............................................................... 6

1    I.    **INTRODUCTION**

2          Plaintiff's opposition confirms that Taco Bell Corp. did ***not*** send the text

3    message at issue here.  Accordingly, Plaintiff seeks to construct a novel legal

4    regime under which Taco Bell can be liable based on her interpretation of the

5    purported facts.  But her opposition is based on a fundamental misconstruction of

6    both the legal principles and the facts at issue in this case.  Accordingly, Plaintiff

7    gives short shrift to the fundamental question this Court must resolve in order to

8    decide Taco Bell's summary judgment motion—against what standard should Taco

9    Bell's potential for vicarious liability be determined?

10         Plaintiff offers two conclusory and unhelpful arguments.  She first argues

11   that this Court should rewrite the legislation by taking the "by or on behalf of"

12   language of 47 U.S.C. Section 227(c)(5) and inserting it into 47 U.S.C. Section

13   227(b)(1)(A)(3), but completely fails to explain why this Court should do what

14   Congress did not.  She also fails to define her proposed legal standard, support its

15   application with precedent, or explain how it applies in this case.  In contrast, Taco

16   Bell has demonstrated why Plaintiff's proposed standard does not apply, but also

17   demonstrated that it prevails under that standard anyway.

18         Plaintiff's second proposal is no better than her first, positing an amorphous

19   standard found nowhere in the statute, abrogating causation as a TCPA predicate,

20   and assigning liability to any entity allegedly "benefitting" from a TCPA violation.

21   This would bring within the TCPA's auspice any party that "benefits" from a text

22   message, no matter how distant, attenuated, or even non-existent, the connection

23   between a sender and a third party.  Essentially,  Plaintiff proposes to eliminate

24   causation as a TCPA element altogether.  Nothing suggests that Congress intended

25   that extreme result.  In the absence of such intent, this Court must apply standard

26   vicarious liability principles.

27         Finally, Plaintiff argues that she has been able to cobble together enough

28   evidence, "slight though it is," to demonstrate "a triable issue of fact."  The few

1   "facts" raised in her opposition, however—whether considered alone or together—
2   do not satisfy her burden, particularly since she argues untrue and nonexistent facts.
3       In sum,  Plaintiff cannot prove Taco Bell's vicarious liability for the actions
4   of the other parties as alleged in the Fourth Amended Complaint.   Summary
5   Judgment for Taco Bell should be granted.

6   **II.   ARGUMENT**

7       **A.   Standard Elements Of Vicarious Liability Apply To The TPCA.**

8       Plaintiff attempts to recast her case as one of direct liability, not vicarious
9   liability.  Her effort runs counter to the TCPA's own language and all of the
10  relevant case law establishing that if Taco Bell is to be held liable at all, it must be
11  through standard principles of vicarious liability.

12      **1.   Section 227(b)(1)(A)(3)'s Plain Language Does Not Provide
13      For Vicarious Liability.**

14      Plaintiff argues that the TCPA's "plain meaning" holds Taco Bell directly
15  liable for the text message.  This is false.  Section 227(b)(1)(A)(3)'s plain language
16  applies only to a person who "make[s]" a call that otherwise violates its provisions.
17  It is undisputed that ipshNet, Inc. (Ipsh) "made" the text message "call."[1]  (SUF
18  16.)  If this case were merely about the statute's plain language, it would have been
19  over long ago.[2]

20      **2.   Customary Elements Of Vicarious Liability Apply To The
21      TCPA.**

22      Instead, as Taco Bell argued in its motion, standard principles of vicarious

23  _____

24  [1]  Plaintiff argues that Taco Bell "also" made a call, based solely on her flawed legal
    interpretation of the TCPA, but does not deny that Ipsh made the call.  Indeed, she
25  could not reasonably do so, because the evidence is replete that Ipsh made the call.
    [2]  Plaintiff implies, without expressly arguing, that the term "any person" abrogates
26  any causation element of the TCPA, allowing for the unlimited liability she
    proposes.  This is an extreme misreading of the statute.  As the case law explains,
27  that phrase means exactly what it says—"any person" can violate the TCPA,
    including individuals.  *See Maryland v. Universal Elections*, 787 F. Supp. 2d 408,
28  415-16 (D. Md. 2011).  It does not, however, define the violation itself.

liability apply here.  Plaintiff's opposition bolsters that position, as demonstrated by *In re Jiffy Lube, Int'l, Inc.*, --- F. Supp. 2d ---, 2012 WL 762888, at *2 (S.D. Cal. Mar. 9, 2012).  In *Jiffy Lube*, defendant filed a motion to dismiss arguing that its engagement of a third party to send text messages precluded its own liability.  The trial court—relying on *Account Outsourcing, LLC  v. Verizon Wireless Personal Communications, L.P.*, 329 F. Supp. 2d 789, 805-06 (M.D. La. 2004), just as Taco Bell did in its motion—held that "congressional tort actions implicitly include the doctrine of vicarious liability."  *Jiffy Lube*, 2012 WL 762888 at *2.  The trial court denied the motion because, at that early stage of the lawsuit, the "relationship between the [defendant] and the [sender was] not currently clear."[3]  *Id.*

Plaintiff's attempts to avoid *Account Outsourcing* and *Jiffy Lube* are unavailing.  To support her position that Section 227(c)(5)'s language should be incorporated into Section 227(b)(1)(A)(iii), she argues the FCC's position that "its 'rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations.'"  (Opp. at p. 7.)  The FCC disputed the *Charvat* court's analysis of the "on behalf of" language in Section 227(c)(5), though it failed to offer an alternative interpretation.[4]  But Plaintiff does not bring her claim under Section 227(c)(5).  Her attempt to insert the "on behalf of " language into a statutory provision expressly failing to include that term is

---

[3]  None of Plaintiff's other cases aid her position.  In *Gomez v. Campbell-Ewald Co.*, No. CV 10-2007 DMG (CWx), 2010 WL 7345680, at *3 (C.D. Cal. Nov. 5, 2010), the trial court refused to apply an "on behalf of" exemption to Section 227(b)(1)(A)(iii) because there was no "language providing Defendant with such an exemption in the actual text of the statute or the governing regulations."  That is akin to Taco Bell's position.  In *Texas v. American Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1089 (W.D. Tex. 2000), the trial court—having noted that "Congress did not give the FCC complete power to determine who is liable under the statute"— discussed a separate TCPA provision regarding fax broadcasters.  *Universal Elections*, 787 F. Supp. 2d at 415-16, simply holds that individuals can be sued under the TCPA.

[4]  Taco Bell cited *Charvat* to (1) illustrate that Taco Bell should prevail even if this Court adopted the Section 227(c)(5) standard, and (2) illustrate the appropriate application of the vicarious liability principles that govern this case. (MSJ at p. 15.)

1   improper, if only because basic principles of statutory construction direct

2   otherwise.[5]  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where

3   Congress includes particular language in one section of a statute but omits it in

4   another section of the same Act, it is generally presumed that Congress acts

5   intentionally and purposely in the disparate inclusion or exclusion.") (quoting

6   *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

7          Plaintiff also argues that a "beneficiary of the message has never escaped

8   liability simply because the transmission of the offending text message was

9   ultimately distributed by others."  (Opp. at p. 8.)  This is not the applicable legal

10  standard, it does not reflect the facts of this case, it is not true, and, ultimately, none

11  of the cases she cites supports this position.[6]

12                    **3.      Plaintiff's Cases Support Taco Bell.**

13         Plaintiff relies on *Applestein v. Fairfield Resorts, Inc.*, No. 0004, 2009 WL

14  5604429, at *7 (Md. App. July 8, 2009), for the premise that "Taco Bell can be held

15  directly liable under the TCPA if Plaintiff presents evidence showing that [Taco

16  Bell] directed or authorized the 2005 text message campaign."  (Opp at p. 9.)  But

17  the *Applestein* court granted summary judgment to the defendant even though there

18  was evidence that the defendant was entitled to approve the "content" of the

19  telemarketing scripts used in the call.  *Id.*  Otherwise, the sender retained the "full

20  _____

21  [5]  Plaintiff takes Taco Bell to task for citing Section 227(b)(1)(B)'s provision that a liable party must "initiate" a phone call, but makes no effort to square her own

22  attempt to shoehorn the "on its behalf" language from Section 227(c)(5) with her criticism of Taco Bell.  Section 227(b)(1)(B) simply helps demonstrate that,

23  contrary to Plaintiff's position, Congress did not intend to abandon elementary tort principles such as causation in adopting the TCPA.

24  [6]  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), decided issues

25  of statutory interpretation wholly separate from the issues posed here.  *Abbas v. Selling Source, LLC*, No. 09-cv-3413, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009),

26  and *Lozano* v. *Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010), discuss whether a text message is a TCPA "call."  *Kramer v. Autobytel, Inc.*,

27  759 F. Supp. 2d 1165, 1170 (N.D. Cal. 2010) generally states that "courts have held both advertisers and advertisement broadcasters subject to liability under the

28  TCPA," but offers no further insight.

1  power and authority of the means, manner and methods of performing its

2  responsibilities." *Id.* That was dispositive of the summary judgment motion.

3       Indeed, the *Applestein* court rejected the argument that "on behalf of,"

4  whether it applies here or not, equates to "strict vicarious liability," i.e., liability

5  without causation. *Id.* It held instead that the "de facto relationship" between

6  contractual parties was what mattered in determining whether the sender acted at

7  the principal's "direction and request."[7] *Id.* Plaintiff's problem here is the same

8  that has bedeviled her throughout this litigation—the text message was directed and

9  requested by the Chicago Association, not Taco Bell.[8] And thus, there is and can

10  be no evidence that Taco Bell directed, or assumed, any power or authority over the

11  "means, manner and methods" of, the text message's transmission.[9]

12       Other cases cited by Plaintiff support the same, or a similar, standard. For

13  example, *Spillman v. Dominos Pizza, LLC*, No. 10-cv-349, 2011 WL 721498, at *3-

14  4 (M.D. La. Feb. 22, 2011) denied a motion to dismiss on the grounds that a

15  complaint had sufficiently alleged that certain calls were "placed by Domino's or

16  by a mandatary of Domino's." *Id.* Black's Law Dictionary defines "mandatary" as

17  "[h]e to whom a mandate, charge, or commandment is given," implying that the

---

18  [7] Plaintiff cannot explain how this materially differs from the "initiate" language
19  employed in Section(b)(1)(B). No matter how the standard is formulated, the
   common theme is clear—the TCPA incorporates causation, whether Plaintiff
20  recognizes it or not.

21  [8] Indeed, even if Plaintiff could pierce the multiple layers of corporate separation
   between Taco Bell and Ipsh, Plaintiff offers no evidence that the "independent
22  contractor" relationship between ESW Partners and Ipsh was any different than the
   one that was insufficient in *Applestein*. (SUF 12, 13.)

23  [9] *Worsham v. Nationwide Ins. Co.*, 772 A.2d 868, 878-79 (Md. App. 2001) is
24  distinguishable for several reasons. First, it was determined under the "on whose
   behalf" standard of 47 U.S.C. Section 227(c)(5) that is not applicable here.
25  Second, there is no direct contractual relationship between Taco Bell and the
   sender, as there was in that case. Third, the *Worsham* court held that, in the
26  absence of "additional information" about the defendant's "contractual and de facto
   relationship" with the alleged phone calls, two different callers' use of
27  "substantially identical scripts" supported the inference that Nationwide may have
   directed both callers. No similar inference can be drawn here in light of the
28  undisputed evidence Taco Bell has presented. (SUF 1, 2, 4, 5, 6, 7, 8, 11, 13.)

1  mandating party is in a position to command and control the mandatary.[10]

2  Plaintiff's proffered standard, meanwhile, is nowhere to be found.

3          **4.**     <u>**Plaintiff Has Not Sued The Directors That Voted For The**</u>

4             <u>**Text Message Promotion, Nor Proffered Any Evidence Of**</u>

5             <u>**Intentional Wrongdoing.**</u>

6          Plaintiff cites to *Universal Elections*, 787 F. Supp. 2d at 415-416, for the

7  proposition that "persons acting on behalf of a corporation or entity may be held

8  personally liable for TCPA violations if they 'had direct, personal participation in

9  <u>or</u> personally authorized the conduct found to have violated the statute.'" (*See* Opp.

10  at p. 9.)  She implies that if Susan Viti herself knowingly violated the TCPA—a

11  showing Plaintiff cannot make—then Taco Bell can be liable.  Her argument is

12  unfounded.  Plaintiff's cases merely establish that, under certain circumstances,

13  individual directors can be personally liable.  *See Universal Elections*, 787 F.

14  Supp. 2d at 415-16 (holding that the officer and employee of a company could

15  personally be liable for TCPA violations); *Texas v. Am. Blastfax*, Inc., 164 F. Supp.

16  2d 892, 899 (W.D. Tex. 2001) (holding that the two sole officers of a company

17  were jointly and severally liable for TCPA violations).[11]  But Ms. Viti is not a

18  defendant here.  Moreover, even if Ms. Viti had violated the TCPA in her capacity

19  as a Chicago Association director, the Chicago Association would be responsible.

20  And even if Plaintiff had named Ms. Viti (or the Chicago Association) as a

21  plaintiff, there is no evidence that she "actually committed the conduct that violated

22  the TCPA" or "actively oversaw and directed the conduct."  *See Baltimore-Wash.*

23  *Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 745 (D. Md. 2008).  Ms. Viti

24  was not even aware of Ipsh, much less did she oversee any of the details of the text

25  message's transmission.  (Viti Decl., ¶ 8.)  Plaintiff adduced no evidence otherwise.

26  This theory of liability is a non-starter and has no application to Taco Bell.

---

27  [10]  BLACK'S LAW DICTIONARY 962 (6th ed. 1969).

28  [11]  Neither *Spillman* nor *Applestein* are relevant to the director liability issues raised by Plaintiff here.

5.  **Plaintiff Overlooks Basic Legal Principles That Support Taco Bell's Position.**

In her attempt to survive summary judgment, Plaintiff fails to rebut the application of numerous basic legal principles cited by Taco Bell in its motion.  Her failure to consider these basic principles is fatal because they individually and collectively defeat her claim.  They include:

- Standard causation analysis, requiring a showing that the liable party caused a tort (*see Brookhouser v. State of Cal.*, 10 Cal. App. 4th 1665, 1677 (1992) (noting that "[i]t is axiomatic that a defendant cannot be held liable in tort for an injury he or she did not cause");
- Standard vicarious liability analysis, requiring a showing of "control" or "day-to-day oversight" (MSJ at pp. 12-13, 21);
- Standard franchisor-franchisee analysis, providing that franchisors can license their trademarks without exercising control over the entities to whom those trademarks are licensed.  (MSJ at pp. 16-17); and
- Standard corporate liability analysis, providing that members are not generally responsible for a corporation's torts (MSJ at p. 21 n.9).

Plaintiff argues, absent any legal authority, that this Court should ignore these fundamental legal principles on the flimsy premise that, within the phrase "on behalf of," a phrase found in a separate part of the statute, lies unspoken congressional intent to abrogate decades of established boundaries determining liability.  Put simply, "Congress did not write the statute that way."  *Russello*, 464 U.S. at 23 (citing *United States v. Naftalin*, 441 U.S. 768, 773-74 (1979)).

B.  **Plaintiff Has Failed To Meet Her Burden Of Demonstrating A Material Issue Of Triable Fact.**

Plaintiff's burden was to demonstrate the evidence necessary to establish Taco Bell's vicarious liability.  Absent that evidence, this Court must presume that

1   no such relationship exists.  *See ING Bank, FSB v. Chang Seob Ahn*, 758 F. Supp.

2   2d 936, 941 (N.D. Cal. 2010).  Plaintiff falls far short of meeting her burden.

### 1.   Evidence That Susan Viti Voted For The Text Message Promotion Does Not Establish Taco Bell's Liability.

5          First, Plaintiff argues that Susan Viti's votes, as a member of the Chicago

6   Association Board of Directors and representing Taco Bell's as a Chicago

7   Association member, establish a triable issue of material fact.  She is wrong.

8          Ms. Viti was a director of the Chicago Association, not Taco Bell.  Even if

9   she voted for the promotion as a Chicago Association director, it is settled law that

10   those holding positions with multiple entities can and do "change hats."  *United*

11   *States v. Bestfoods*, 524 U.S. 51, 69 (1998).  Courts "generally presume 'that the

12   directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting

13   for the subsidiary," and thus liability cannot be established even where "dual

14   officers and directors made policy decisions and supervised activities."  *Id*.  This is

15   particularly true where "the act is perfectly consistent with the norms of corporate

16   behavior," as Ms. Viti's acts were here.  *Bestfoods*, 524 U.S. at 70 n.13.

17          Plaintiff admits that Ms. Viti, in her capacity as director, voted during an

18   August 1, 2005, meeting of the ***Chicago Association*** Board of Directors.[12]  (Opp. at

19   p. 11; SUF 11.)  This is consistent with the Chicago Association's bylaws, giving

20   the board power to "make final determinations as to local programs which then

21   must be voted on for approval by Association Members."  (Borkan Decl., Ex. B at

22   art. VI.15.)  The bylaws also provided that an advertising initiative needed to pass

23   by "a majority of the votes cast."  (*Id.*, Ex. B at § 5.4.)  Plaintiff admits that these

24   corporate norms were followed.  (*See* SUF 6.)  These admissions are dispositive.

25

---

26   [12]  Plaintiff argues that "Taco Bell" was a director of the Chicago Association.  The
     Chicago Association bylaws provide that "[o]ne seat on the Board of Directors shall
27   be filled by [Taco Bell]," and that seat was filled by Susan Viti. (Borkan Decl., Ex.
     B at art. VI.3.)  Plaintiff's attempt to dispute this by claiming "Taco Bell Corp."
28   was a Chicago Association director is pure sophistry, leading to nowhere at all.

1   Ms. Viti's individual vote is no more probative of Taco Bell's liability than

2   her vote as a director of the Chicago Association.  Shareholders are not legally

3   liable for corporate obligations unless "a corporation is the alter ego or

4   instrumentality of its shareholders."  *See Omaha Indem. Co. v. Royal Am.*

5   *Managers, Inc.*, 755 F. Supp. 1451, 1458 (W.D. Mo. 1991); *Browning Ferris Indus.*

6   *Of Ill., Inc. v. Ter Maat*, 195 F.3d 953, 959 (7th Cir. 1999) (holding that general

7   rule is that shareholders and parent companies are not liable for debts).  But as

8   explained in Taco Bell's motion, Plaintiff has not demonstrated that either Taco

9   Bell or the Chicago Association ignored corporate forms or that the evidence

10  "suggest[s] such a unity of interest and ownership . . . that their separate corporate

11  personalities no longer exist."  *See Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th

12  Cir. 2001); *Kramer Mot., Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th

13  Cir. 1980).  Indeed, the very fact that Taco Bell and other franchisees held a vote is

14  undisputed evidence that these corporate forms were followed.  (SUF 11.)

15          **2.      Taco Bell Did Not "Pay" For The Text Message, And Even**

16                 **If It Did, That Does Not Establish Vicarious Liability.**

17          Second, Plaintiff argues that Taco Bell "paid" for the text message.  This is

18  factually wrong and, in any event, legally insufficient to demonstrate Taco Bell's

19  liability.  The evidence is undisputed that ESW Partners paid Ipsh's invoices, then

20  sought reimbursement from NAFA.  (SUF 61.)  NAFA's manager, Lisa Halloran,

21  testified that NAFA maintains funds reserved for the use of local associations, like

22  the Chicago Association, to fund local promotions.[13]  (SUF 57, 60.)  Plaintiff

23  admits that she has no evidence that NAFA actually reimbursed ESW Partners, but

24  even if it had, that would simply be evidence of an uneventful financial transaction

25  between separate entities, and would not be indicative of illegitimate control.[14]

26  ─────────────────

27  [13]  Mr. Borkan confirmed Ms. Halloran's testimony.  (Haskins Decl., Ex. B at 121:19-122:18.)

28  [14]  Plaintiff's argument that Taco Bell has refused to produce certain records deliberately misleads.  (*See* Opp. at p. 14 n.15.)  As this Court well knows, both

1   *Joiner v. Ryder System, Inc.*, 966 F. Supp. 1478, 1484 (C.D. Ill. 1996) (evidence of

2   transfer of funds between separate entities was not evidence of "improper control").

3         Plaintiff also implies that NAFA's holding of the Chicago Association's

4   funds is indicative of control because NAFA is a division of Taco Bell.  But

5   separate corporate entities can use a common cash management system without (1)

6   it being a commingling of funds; and (2) the existence of a parent-subsidiary

7   relationship.  *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,

8   529 F.3d 371, 380 (7th Cir. 2008) ("[U]se of a cash management system alone is

9   not evidence that funds are being improperly commingled."); *Fletcher v. Atex, Inc.*,

10  68 F.3d 1451, 1459 (2d Cir. 1995) ("Courts have generally declined to find alter

11  ego liability based on a parent corporation's use of a cash management system.");

12  *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil Inc.*, 456 F. Supp. 831, 846 (D.

13  Del. 1978) (holding that common arrangements by related entities "for economy of

14  expense and convenience of administration" do not establish vicarious liability).  In

15  response, Plaintiff cites no cases at all.

16      **3.**    **Alleged "Coordination" Between Taco Bell And The**

17      **Chicago Association Demonstrates That The Entities Are**

18      **Separate, Supporting Taco Bell's Position.**

19        Third, Plaintiff argues that the facts demonstrate "coordination" between

20  Taco Bell and the Chicago Association.  Not only is her argument unavailing, it

21  supports Taco Bell.  Courts regularly refuse to find vicarious liability even between

22  parent companies and their wholly-owned subsidiaries—situations where

23  coordination is presumably the norm.  *Japan Petroleum*, 456 F. Supp. at 846;

24  *Material Supply Int'l, Inc. v. Sunmatch Ind. Co., Ltd.*, 62 F. Supp. 2d 13, 21 (D.

25

26

27  Magistrate Judge Nakazato and this Court denied Plaintiff's demands for these
   documents on the grounds that Taco Bell "withheld [no] pertinent information" and

28  that Plaintiff "failed to embark on a diligent discovery program."  (Dkt. Nos. 158, 168.)  And indeed, these documents are irrelevant to the issues in this motion.

D.C. 1999) ("Nor is agency established by showing merely that parent and subsidiary are in the same business and have worked together in the past.").

Indeed, Plaintiff's "coordination" argument confirms that Taco Bell and the Chicago Association are separate entities because, if not, there would have been no need for them to coordinate.  *See Judson Atkinson*, 529 F.3d at 379-80; *Herman v. YellowPages.com, LLC*, 780 F. Supp. 2d 1028, 1035 (S.D. Cal. 2011) (parent company's benefit from subsidiaries does not invite vicarious liability, even where the parent engages "in major policy decisions to coordinate several subsidiaries").  Instead, Taco Bell simply could have gone forward.[15]  There would have been no need for Ms. Viti to make a presentation to a separate board of directors, and no need for votes of the Chicago Association's directors and membership.  Any evidence of "coordination" simply demonstrates that these entities maintained their corporate "separateness."  *See Judson Atkinson*, 529 F.3d at 380 ("In Illinois, the principle that "[a] corporation is a legal entity separate and distinct from its shareholders, directors, and officers . . . applies even where one corporation wholly owns another and the two have mutual dealings.").

**4.**   **Taco Bell's Right To Control Its Trademarks Is Insufficient To Establish Liability.**

Plaintiff misstates the evidence in arguing that Taco Bell "directly or indirectly approved" the text message.  Her argument that "approval" was given by Ms. Viti has been previously addressed (see *supra* § II.B.1), but she also argues that some materials were forwarded to two Taco Bell employees—Bernadette Jones and Jennifer Arnold—for review, thus creating a material issue of triable fact.

Neither Bernadette Jones nor Jennifer Arnold reviewed the text message, nor had anything to do with its sending.  (*See* Dkt. No. 169-7, Ex. D at 109:17-20; *id.*, Ex. GG at 59:3-5.)  Plaintiff instead argues that Taco Bell approved "bags and

---

[15] Plaintiff admits that the Chicago Association "arranged for a complimentary local advertising campaign [] supporting the national campaign."  (Opp. at p. 4; *see also* FAC at ¶ 2.)

1  trayliners," but even if so, Plaintiff's alleged TCPA violation is triggered only by

2  the unsolicited outbound transmission of a text message—not bags or trayliners.

3  Nor does Plaintiff refute Taco Bell's argument that it can reasonably exercise

4  control over the use of its trademarks.  *See Juarez v. Jani-King of Cal., Inc.*, 273

5  F.R.D. 571, 582-83 (N.D. Cal. 2011) (holding that "policies required to protect [a

6  franchisor's] service mark and goodwill" were irrelevant to agency analysis).  In the

7  absence of countervailing law, Plaintiff's argument fails.

8       Indeed, even if Taco Bell had reviewed the text message for the purposes of

9  trademark compliance (which it did not), that would not demonstrate vicarious

10  liability.  The right to approve content, for example, did not demonstrate control in

11  *Applestein*.  2009 WL 5604429, at *7.  Nor is this principle limited to the franchisor

12  context.  It is generally the case that even parental oversight of subsidiaries does not

13  defeat the presumption of corporate separation.[16]  *See Joiner*, 966 F. Supp. at 1484

14  (refusing to find vicarious liability where evidence demonstrated nothing more than

15  "a parent corporation exercising permissible control over its corporate offspring");

16  *Fletcher*, 861 F. Supp. at 245 (holding that a parent corporation may "approve

17  major . . . policies involving the subsidiary, and for employees of the parent and

18  subsidiary corporations to meet periodically to discuss business matters").

19       Plaintiff's reference to the Marketing Funds Policy does not change this:

20  rather, it simply expresses Taco Bell's policies for reasonably overseeing its

21  trademarks.  *See Juarez*, 273 F.R.D. at 582-83; *Joiner*, 966 F. Supp. at 1485 ("no

22  problem" that parent's approval was required before subsidiary could make "major

23  capital expenditures").  This cannot be the basis for finding vicarious liability.

24       **5.   The Text Message's Reference To "Taco Bell" Does Not**

25       **Establish Taco Bell's Liability.**

26       Plaintiff's argument that the text message used the term "Taco Bell," and not

27  ─────────────

28  [16]  Taco Bell, of course, has a far more distant relationship with the Chicago Association than existed in these parent/subsidiary cases, all the more reason why Taco Bell cannot be held vicariously liable in this case.  (*See* MSJ at p. 21 n.8.)

1   the term "your local Chicagoland Taco Bell," is likewise unavailing.  Courts bypass

2   mere logos and titles and instead review the pertinent facts.  *See Salkin v. United*

3   *Servs. Auto Ass'n*, 767 F. Supp. 2d 1062, 1066-67 (C.D. Cal. 2011).  Here, the

4   evidence demonstrates that the Chicago Association was responsible for the text

5   message, not Taco Bell.  That the text message advertised Taco Bell products is to

6   be expected in this factual context, where Taco Bell is a franchisor of a selection of

7   branded products, and franchisees sell those same products.  Indeed, this argument

8   is a rehash of Plaintiff's fundamentally flawed argument that any party mentioned

9   in a text message can be liable for its sending.  (*See supra* § II.A.2.)

10       Plaintiff similarly argues that, because she previously opined that the text

11   message was from Taco Bell, it follows that "consumers" must have considered the

12   message to be an advertisement "on behalf of" Taco Bell, and thus, *voila*, she

13   defeats summary judgment.  This argument is without merit.  First, the text

14   message's use of the term "Taco Bell" does not establish Taco Bell's vicarious

15   liability.  *See Salkin*, 767 F. Supp. 2d at 1066-67.  Second, Plaintiff's opinion as to

16   the text message's origin is inadmissible, and irrelevant.  *See U.S. v. Freeman*, 498

17   F. 3d 893, 904 (9th Cir. 2007) (finding that lay witness's opinion was speculative

18   and inadmissible).  Third, for Plaintiff to extrapolate her own opinion as

19   representative of "consumer" belief, at best, is completely speculative.  Even if

20   Plaintiff's opinion were admissible, it cannot provide a legal basis for defeating the

21   motion.

22       **6.    Whether Taco Bell Obtained A Benefit From The Text**

23       **Message Is Irrelevant.**

24       Plaintiff's argument that she can defeat summary judgment because Taco

25   Bell benefitted from the text message likewise fails.  As a threshold matter, Plaintiff

26   merely assumes, without support, that Taco Bell benefited from the text message.

27   But setting that aside, whether one party "benefits" from another's actions does not

28   determine liability.  Any parent corporation benefits from its subsidiary, but

1   vicarious liability does not result.  *Material Supply*, 62 F. Supp. 2d at 20-21 ("[I]t is

2   not relevant that the parent ultimately benefitted from the activities of the

3   subsidiary or that the subsidiary's supervisors reported to the parent's officers.").

4        Meanwhile, the undisputed evidence demonstrates that Taco Bell was merely

5   one member of the Chicago Association, a separately incorporated entity that

6   followed corporate formalities to proceed with the local promotion.  (SUF 2.)  It

7   had its own board of directors, only one of which was appointed by Taco Bell.

8   (SUF 5.)  There was no evidence that ESW Partners or Ipsh ever entered into a

9   contract with Taco Bell; to the contrary, the Chicago Association retained ESW

10  Partners, which in turn retained Ipsh.  (SUF 7, 8, 13.)[17]  It is also undisputed—

11  indeed, it is the linchpin of Plaintiff's opposition (see Opp. at p. 4)—that the text

12  message was sent because the Chicago Association voted to proceed with the

13  Nachos BellGrande promotion, and the Chicago Association's advertising agency,

14  ESW Partners, carried out that direction.[18]  (SUF 11, 12.)

15        **7.   <u>Plaintiff Does Not Demonstrate That Taco Bell Controlled</u>**

16              **<u>The Chicago Association.</u>**

17        Again without citing case law, Plaintiff offers various theories arguing that

18  Taco Bell "controlled" the Chicago Association.  None of them hold water.

19        First, Plaintiff argues that the Chicago Association could not exist without

20  Taco Bell's express approval.  (Opp. at p. 22.)  But this is presumably true of any

21  subsidiary or affiliate, and does not imply vicarious liability.  *See Harris Rutsky &*

22  *Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)

23  (holding that a wholly-owned subsidiary is not an alter ego of its parent).

24  _____

25  [17]  Plaintiff's "dispute" regarding undisputed fact number 8 is, again, pure legal
     sophistry to avoid the conclusive effect of her admission.  Her argument is

26  meritless.

27  [18]  Plaintiff's citation to *Williams v. I.B. Fischer Nev.*, 999 F.2d 445 (9th Cir. 1993)
     is of no help.  *Williams* makes no reference to a "non-competitive environment,"

28  and the antitrust allegations at issue there are far afield from the vicarious liability
     issues raised here.

1    Likewise, Plaintiff argues that the Marketing Funds Policy establishes Taco

2    Bell's control, but this simply restates her argument that Taco Bell's legitimate

3    control over its trademarks can be bootstrapped into a finding of illegitimate

4    control.  The case law holds otherwise.  *See Juarez*, 273 F.R.D. at 582-83.

5        Third, and finally, Plaintiff argues—again without legal basis—that control

6    can be inferred because Taco Bell is a Chicago Association "member" and Ms. Viti

7    was a director.  (Opp. at p. 24.)  Again, it is hornbook law that a shareholder is a

8    separate entity from the corporation.  *Charvat v. Farmers Ins. Columbus, Inc.*, 897

9    N.E.2d 167, 178 (Ohio App. 2008) ("Shareholders, officers, and directors will

10   generally not be held personally liable for the acts of a corporation," unless "the

11   corporate veil could be pierced").  And courts consistently hold that affiliated

12   companies may share multiple directors without inviting vicarious liability.  *See*

13   *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 161 (7th Cir. 1963)

14   (holding that interlocking officers and directors are "common business practice").

15   Indeed, where Taco Bell is a minority member of the Chicago Association

16   appointing one director on a four-member board, the undisputed facts demonstrate

17   that Taco Bell did not have even the "opportunity" to create a "unity of interest,"

18   much less that it did so.  *Judson Atkinson*, 529 F.3d at 381.

19       Absent actual evidence that Taco Bell and the Chicago Association are one

20   entity, or locked in a principal-agency relationship, Taco Bell's position remains

21   stronger than EchoStar's in *Charvat v. EchoStar Satellite, LLC*, 676 F. Supp. 2d

22   668, 674-75 (S.D. Ohio 2009), because Taco Bell was two steps removed from the

23   sender, had no contractual relationship with the sender, and, as a result, had no

24   power or control over the sender at all.  Plaintiff has failed to demonstrate Taco

25   Bell's liability under the TCPA.

26   **III.   CONCLUSION**

27       For the foregoing reasons, Taco Bell's summary judgment motion should be

28   granted.

1

2   Dated: April 9, 2012                    **ARENT FOX LLP**

3
                                            By:      */s/ Stephen G. Larson*
4                                                    _____
                                                     Stephen G. Larson
5                                                    Robert C. O'Brien
                                                     Steven E. Bledsoe
6                                            Attorneys for Defendant
                                             TACO BELL CORP.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28