Stephen G. Larson (SBN 145225)
larson.stephen@arentfox.com
Robert C. O'Brien (SBN 154372)
obrien.robert@arentfox.com
Steven E. Bledsoe (SBN 157811)
bledsoe.steven@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401

Attorneys for Defendant
TACO BELL CORP.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| TRACIE THOMAS, individually and on behalf of class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>TACO BELL CORP., a California corporation,<br><br>Defendants. | Case No.  SACV09-1097 CJC (ANx)<br><br>*Assigned to The Hon. Cormac J. Carney*<br><br>**[PROPOSED] JUDGMENT GRANTING DEFENDANT TACO BELL CORP.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed concurrently with Reply In Support Of Motion for Summary Judgment<br><br>Date:          June 13, 2012<br>Time:         2:00 p.m.<br>Courtroom:  9B<br><br>Complaint Filed:   September 15, 2009<br>Trial Date:            TBA |

## **[PROPOSED] JUDGMENT**

On September 15, 2009, Plaintiff Trace Thomas initiated a class action suit against Defendant Taco Bell Corp. ("Taco Bell") under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii). Her suit is based on an October 2005 text message marketing campaign conducted by the Chicago Area Taco Bell Local Owners Advertising Association (the "Chicago Association"). The essence of Plaintiff's allegation is that, as a result of the Chicago Association's advertising campaign, she and members of her putative class received unauthorized text messages in violation of the TCPA. She argues that Taco Bell should be held vicariously liable for the sending of the text message. After considering the moving, opposing and replying papers, and having given careful consideration to the parties' arguments at the June 13, 2012, hearing, the Court hereby GRANTS Taco Bell's motion.[1]

## **BACKGROUND**

In 2005, the Chicago Association was a non-profit incorporation incorporated in the State of Illinois. (Declaration of Neal Borkan (Borkan Decl.), Ex. A.) Its membership was comprised of owners of Taco Bell stores in the Chicago, Illinois area. (*Id.*, ¶ 6.) The Chicago Association had twelve members, one of whom was Taco Bell. (*Id.*) The other members of the Chicago Association were Taco Bell franchisees that owned stores in the Chicago area. The Chicago Association was governed by a set of bylaws. (*See* Declaration of Michael McMorrow, Ex. R.) Under those bylaws, the Chicago Association was headed by a four-member board of directors. (*Id.*, Ex. R at § 6.3.) Three directors were elected by a majority vote of the Chicago Association's membership. (*Id.*) The bylaws provided that the fourth director would be appointed by Taco Bell. (*Id.*) In 2005, the Taco Bell-appointed director was Susan Viti. (*Id.*)

---

[1] As a consequence of the Court's ruling, the Court withdraws its order of April 13, 2012 (Dkt. No. 175), and substitutes this order in its stead.

Prior to the events described in the Fourth Amended Complaint, the Chicago Association retained ESW Partners to act as its advertising agency. (Haskins Decl., Ex. F.) Taco Bell was not a party to that contract.[2] (*Id.*)

In 2005, ESW Partners and the Chicago Association decided to sponsor a Nachos BellGrande promotion. (Borkan Decl., ¶¶ 9, 13.) The promotion included sending an outbound text message. (*See* id., *see also* Haskins Decl., Ex. HH). The Chicago Association's board of directors voted to proceed with the promotion. Ms. Viti participated in that vote and voted for the promotion. (Declaration of Susan Viti, ¶ 12.) The Chicago Association also held a vote of its general membership. (McMorrow Decl., Ex. C at 79:13-22.) As part of that vote, Susan Viti sent an e-mail to Jennifer Kalseim, an ESW Partners employee, stating that "Company votes yes." (*Id.*, Ex. S.) The promotion passed by a majority vote taken among all the members of the Chicago Association. (Declaration of Steven A. Haskins (Haskins Decl.), Ex. HH.)

After the Chicago Association approved the promotion, ESW Partners contracted with ipshNet, Inc. ("Ipsh") to assist in preparing and sending the text message. (*Id.*, Ex. P.) Taco Bell was not a party to that contract. (*Id.*) Ipsh procured a telephone short code and a list of cellular phone numbers. (*Id.*, Ex. C at 55:8-57:4, 60:4-7.) Thereafter, Ipsh caused the text message to be sent on or about October 11, 2005. Plaintiff believes that she received a text message mentioning Taco Bell products in October, 2005, but she failed to preserve a copy of the text message on which her suit is based. (*Id.*, Ex. AA.)

---

[2] Plaintiff purports to disagree, but the Court cannot identify any evidence suggesting that Taco Bell was a party to that contract. It is clear from the face of the contract that the Chicago Association executed the contract with ESW Partners through its duly-named officer, Neal Borkan.

SACV09-1097 CJC (ANx) - 1 - [PROPOSED] JUDGMENT GRANTING DEFENDANT'S MSJ

## LEGAL STANDARD

Summary judgment is designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The movant bears the initial burden of demonstrating that there is "no genuine issue of material fact." *See Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). Non-material factual disputes will not defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). An issue of material fact is "genuine" only when the evidence allows "a reasonable jury" to "return a verdict for the nonmoving party." *Id.* The burden is discharged by "'showing' . . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. Pro. 56(c)(1); *Taylor*, 880 F.2d at 1045 (holding that no genuine issue of fact exists if "a rational trier of fact could not find in favor of the party opposing the motion").

Once the moving party discharges its burden, the burden shifts to the opposing party to establish a genuine issue of material fact as to an essential element of its claim. *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(e). The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v.*

*Philip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993). Absent such a showing, summary judgment is appropriate.

## ANALYSIS

Plaintiff brings her suit under Section 227(b)(1)(A)(iii) of the TCPA, providing that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> […]
>
> to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

The TCPA's plain language of the TCPA assigns civil liability to the party that "makes" a call. Ms. Thomas argues that the TCPA does not incorporate traditional vicarious liability standards, but instead employs a broader standard which suggests that a party can be held liable if a call or text message is made on its "behalf." That language is used in a different section of the TCPA, Section 227(c)(5), which Ms. Thomas argues extends vicarious liability to any party that benefits from the text message.

The Court must employ the usual principles of statutory interpretation to determine this pure question of law. *See Miranda v. Anchondo*, --- F.3d ---, 2012 WL 360767, at *4 (9th Cir. Feb. 6, 2012) ("The construction or interpretation of a

statute is a question of law also reviewed de novo."); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987) (courts must decide "pure question[s] of statutory construction").

Section 227(b)(1)(A)(iii) includes no language regarding vicarious liability. The United States Supreme Court has held that, when Congress creates a tort action, "it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules. . . . It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."). *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Absent a clear expression of Congressional intent to apply some other standard, this Court presumes that Congress intended to apply the traditional standards of vicarious liability with which it is presumed to be familiar. *See Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'ns, L.P.*, 329 F. Supp. 2d 789, 806 (M.D. La. 2004) (interpreting the TCPA to extend to advertisers hired to send unsolicited fax messages and holding that "congressional tort actions," such as those authorized under the TCPA, "implicitly include the doctrine of vicarious liability, whereby employers are liable for the acts of their agents and employees") (citing *Meyer*, 537 U.S. at 285); *Charvat v. Echostar Satellite*, 676 F. Supp. 2d 668, 676 (S.D. Ohio 2009) (requiring that plaintiff demonstrate principal's "right of control" over agent to subject principal to liability for acts of third parties).

The Court is unconvinced by Plaintiff's attempt to graft the language of Section 227(c)(5) on to the portion of the statute at issue here. When Congress inserts a phrase into one part of the statute, but leaves it out of another, Congress intended that result. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts

intentionally and purposely in the disparate inclusion or exclusion.") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). Plaintiff does not overcome that legal presumption here.[3]

Therefore, this Court holds that as a matter of law, a party can be held liable under Section 227(b)(1)(A)(iii) if it personally "makes" a call in the method proscribed by the statute. Alternatively, a defendant can be held liable under Section 227(b)(1)(A)(iii) if the plaintiff can demonstrate that the non-sending party was in an agency or alter ego relationship with the party that sent the text message. Having determined the applicable legal standard here, the Court now turns to the merits of Taco Bell's summary judgment motion.

## I. Taco Bell Did Not Send The Text Message

As a threshold matter, it is apparent, both from the Fourth Amended Complaint and the undisputed evidence, that Taco Bell did not personally send the text message. It is undisputed that the sender of the text message was ipshNet, Inc. ("Ipsh"), a separate provider of text-message based services retained by ESW Partners to assist with the Chicago Association's Nachos BellGrande promotion.

## II. Plaintiff Has Not Demonstrated A Genuine Issue Of Material Fact As To Taco Bell's Vicarious Liability For The Text Message

Employing traditional vicarious liability analysis, Ms. Thomas can attempt to demonstrate that Taco Bell is vicariously liable for sending the text message in one of two ways. First, she can demonstrate that Taco Bell is an alter ego of the parties that sent the text message. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995). Second, she can demonstrate that Taco Bell and the Chicago Association were in an agency relationship, in particular, that Taco Bell controlled the means

---

[3] The Court need not determine whether the language "on behalf of," as it is used in Section 227(c)(5), can be stretched as far as Plaintiff proposes, because Plaintiff brings her claim under a separate part of the statute.

and manner of how the text message was sent.[4] In either case, the Court must presume that no such agency or alter ego relationship exists, absent Plaintiff meeting her burden of production to demonstrate otherwise. *See Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002) (noting that party asserting alter ego doctrine "bears the burden of proof"); *ING Bank*, 758 F. Supp. 2d at 941(law presumes that no agency relationship exists).

To establish alter ego liability, Plaintiff must demonstrate that the Chicago Association and the other parties at issue were "mere instrumentalit[ies]" of Taco Bell. *See Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (citing *Inst. Of Veterinary Pathology, Inc. v. Cal. Health Labs., Inc.*, 116 Cal. App. 3d 111, 119 (1981)). The corporate veil can be pierced only when there is "such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist and when 'adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Judson Atkinson Candies, inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378-79 (7th Cir. 2008) (internal citations and quotations omitted).

A principal-agency relationship requires that the principal have "the right to control the means and manner in which the result is achieved." The predicates to a principal-agency relationship are (1) that the alleged agent "holds a power to alter the legal relations between the principal and third persons;" (2) the agent is a fiduciary for the principal; and (3) the principal has the right to control the agent's

---

[4] *See Wickham*, 168 Cal. App. 3d at 58-59 ("[I]t is the right to control the means and manner in which the result is achieved that is significant in determining whether a principal-agency relationship exists"); *ING Bank, FSB v. Chang Seob Ahn*, 758 F. Supp. 2d 936, 941 (N.D. Cal. 2010) (citing *Stilson v. Moulton-Niguel Water Dist.*, 21 Cal. App. 3d 928, 936-37 (1971)); *Figi Graphics, Inc. v. Dollar Gen. Corp.*, 33 F. Supp. 2d 1263, 1266-67 (S.D. Cal. 1998) (holding that plaintiff failed to sufficiently demonstrate defendant's control over third party).

conduct "with respect to matters entrusted to him." *Alvarez v. Felker Mfg. Co.*, 230 Cal. App. 2d 987, 999 (1964).

While control is a prerequisite of agency, not every example of "control" triggers the finding of a principal-agent relationship. *See, e.g.*, *C.I.R. v. Bollinger*, 485 U.S. 340, 346 (1988) ("[T]he mere fact of the parent's control over the subsidiaries, however, not establish the existence of an agency, since such control is typical of all shareholder-corporation relationships. . . ."). For example, it is a "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Courts must set aside these inherent indicia of control when considering whether vicarious liability is appropriate. *See Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, No. C080-1372 RSM, 2010 WL 2079694, at *7 (W.D. Wash. May 20, 2010). As such, the question is not whether Taco Bell exercises some sort of control over the Chicago Association, but whether Plaintiff has met her burden of production to establish the type of control sufficient to establish vicarious liability under governing principles of law.

The Court has reviewed Plaintiff's facts, and finds them insufficient as a matter of law to meet her burden. She does not demonstrate that the Chicago Association, much less the third parties described in the Fourth Amended Complaint, was a "mere instrumentality" of Taco Bell, or that Taco Bell controlled "the manner and means" of how the text message was sent.

  A. **<u>Ms. Viti's Status As A Director Of The Chicago Association Is Not Evidence Of An Alter Ego Or Agency Relationship</u>**

Plaintiff argues that Susan Viti, a Taco Bell employee, was a director of the Chicago Association. This is not competent evidence to demonstrate vicarious liability. Separate entities can share employees and directors without inviting

vicarious liability. *Bestfoods*, 524 U.S. at 61; *Judson Atkinson*, 529 F.3d at 381 (having common officers and directors is "insufficient to justify disregarding the corporate form"); *Wyatt v. Ford Motor Co.*, No. C04-5666 RBL, 2006 WL 1663676, *4 (W.D. Wash. June 13, 2006) (granting summary judgment because fact that Ford employees sat on the board of an authorized Ford dealer did not create a triable issue of Ford's liability). There is no evidence that Ms. Viti, herself, could control the Chicago Association, or that corporate forms were disregarded by Ms. Viti or Taco Bell.

### B. Taco Bell's Membership In The Chicago Association Is Not Evidence Of Vicarious Liability

Plaintiff argues that because Taco Bell was one of twelve members of the Chicago Association, that is evidence of vicarious liability. (Borkan Decl., ¶ 6.) As a matter of law, a shareholder (or member) of a corporation is not liable for a corporation's torts. *Charvat v. Farmers Ins. Columbus, Inc.*, 897 N.E.2d 167, 178 (Ohio App. 2008) ("Shareholders, officers, and directors will generally not be held personally liable for the acts of a corporation," unless "the corporate veil could be pierced"); *see also Campagnolo*, 2010 WL 2079694, at *7 ("A corporation's managers always act as agents for its shareholders—the principals. Yet even where a subsidiary is wholly owned, the parent corporation—the shareholder or principal—is generally not liable for the subsidiary's torts. The purpose of incorporation is to override the common law principal-agent relationship to limit liability."). A shareholder may only be held liable for the corporation's torts if the corporate veil is pierced. Here, the evidence demonstrates that the Chicago Association largely followed corporate formalities, including:

- Formal incorporation as a separate entity in the State of Illinois; (Borkan Decl., Ex. A.)
- Adhering to a set of corporate by-laws; (McMorrow Decl., Ex. R.)

- Holding the elections called for by the by-laws; (Viti Decl., ¶ 12)
- Holding meetings of the board of directors and membership of the Chicago Association; (Haskins Decl., Ex. E at 44:5-22.)
- Keeping minutes and other records of those meetings. (Haskins Decl., Ex G.)

Indeed, Plaintiff falls short of demonstrating that Taco Bell even had the opportunity to create a "unity of interest" between itself and the Chicago Association, since the evidence is that Taco Bell was only one of twelve members of the Chicago Association. *Judson Atkinson*, 529 F.3d at 379. Moreover, the Chicago Association entered into all of its own contracts, including the contract with Ipsh at issue here, further establishing that it did not have the power to enter into those contracts on behalf of Taco Bell. *See Alvarez*, 230 Cal. App. 2d at 999.

### C. **Plaintiff's Evidence That Ms. Viti "Approved" The Nachos BellGrande Promotion Does Not Demonstrate Vicarious Liability**

Plaintiff argues that Ms. Viti "approved" the Nachos BellGrande promotion three times—once as a director of the Chicago Association, once as a member of the Chicago Association, and once as a Taco Bell employee. Even if this is true, it does not establish that the Chicago Association is an "instrumentality" of Taco Bell, or that Taco Bell "controlled" the means and manner of how the text message was sent.

As a matter of law, this Court must presume, absent other evidence, that Ms. Viti's first vote for the promotion was as a director of the Chicago Association. *Bestfoods*, 524 U.S. at 69. Plaintiff has failed to overcome that presumption.

Second, Ms. Viti's vote as a member of the Chicago Association does not trigger vicarious liability. As discussed above, shareholders and members are not liable for actions taken by the corporation. Plaintiff admits that the Chicago Association held a vote according to its usual practices, and that a majority of

members approved of the promotion. This collective action, contrary to Plaintiff's argument, demonstrates that Taco Bell could not impose its will on the Chicago Association, either through an alter ego or agency relationship. Plaintiff thus has it backward. This vote is evidence that no agency or alter ego relationship existed.

Third, Plaintiff argues that Ms. Viti again "approved" the Nachos BellGrande promotion as a Taco Bell employee, pursuant to Taco Bell's Marketing Funds Policy. As explained further below, Taco Bell is entitled to enforce contractual licensing agreements involving its trademarks without being posed with the threat of vicarious liability for doing so. Absent evidence of day-to-day control of the Chicago Association—and no such evidence is forthcoming here—Ms. Viti's "approval" of the promotion does not demonstrate "control."

### D. **Evidence Regarding NAFA Is Not Probative Of Vicarious Liability In This Action.**

Plaintiff argues that Taco Bell stores reserve a certain percentage of their revenues to fund local advertising. (McMorrow Decl., Ex. F at 19:15-21:1.) She complains that those funds were held by a division of Taco Bell, the National Advertising Funds Administration. (*Id.*, Ex. F at 27:24-28:1-3.) She also claims that NAFA reimbursed the Chicago Association for the text message.

Whether such a payment was made is immaterial because even if it was made, that does not support a "mere instrumentality" or "control" finding. The evidence demonstrated that Taco Bell managed advertising funds generated by the Chicago Association's members for local promotions. There was no evidence that these funds were commingled with Taco Bell's own funds. Taco Bell's employment of a cash management system to assist the Chicago Association and its members was a permissible sharing of resources, not evidence that the Chicago Association is somehow an alter ego or agent of Taco Bell. *See Aleksick v. 7-Eleven, Inc.*, --- Cal. Rptr. 3d ---, 2012 WL 1589017, at *7-8 (Cal. App. May 8,

2012) (holding that franchisor's provision of "ministerial functions" such as payroll service does not create agency relationship); *Judson Atkinson*, 529 F.3d at 379 ("[U]se of a cash management system alone is not evidence that funds are being improperly commingled.") (citing supporting cases).

### E. "Coordination" Between Taco Bell And The Chicago Association Does Not Prove That The Chicago Association Is An Instrumentality Of Taco Bell

Plaintiff argues that because Taco Bell and the Chicago Association share and coordinate similar interests. But it is normal corporate practice for related entities with similar interests to coordinate their efforts. Vicarious liability does not follow. *Campagnolo*, 2010 WL 2079694, at *7 (holding that "close relationship and nearly perfectly aligned business interests" is not grounds for piercing corporate veil); *Material Supply Int'l, Inc. v. Sunmatch Ind. Co., Ltd.*, 62 F. Supp. 2d 13, 21 (D. D.C. 1999) ("Nor is agency established by showing merely that parent and subsidiary are in the same business and have worked together in the past."). Limited liability is the *sine qua non* of corporate separation. *See Anderson v. Abbott*, 321 U.S. 349, 362 (1944) ("Limited liability is the rule, not the exception."). The fact that related entities share similar interests does not overcome that basic legal premise.

### F. Taco Bell's "Approval" Of the Chicago Association's Existence Does Not Establish Vicarious Liability

Plaintiff argues that the Chicago Association could not exist without Taco Bell's approval. Because Taco Bell is a franchisor, none of Taco Bell's franchisees could exist without Taco Bell's express or implicit approval. That fact does not override the legal presumption that corporations are expressly created to manage legal liability, and in the absence of a showing that the corporate veil could be pierced, this Court must respect corporate forms.

### G. Taco Bell's Review Of Bags Or Trayliners Is Irrelevant

Plaintiff argues that the Chicago Association forwarded designs of bags and trayliners to two Taco Bell employees—Bernadette Jones and Jennifer Arnoldt—for review. (Pl. SUF 73.) This evidence is insufficient for two reasons. First, as described above, Taco Bell may legally control its trademarks without inviting vicarious liability. *See Juarez*, 273 F.R.D. at 582-83 (holding that "policies required to protect [a franchisor's] service mark and goodwill" were irrelevant to agency analysis); *Applestein v. Fairfield Resorts, Inc.*, No. 0004, 2009 WL 5604429, at *7 (Md. App. July 8, 2009) (holding that "general control over the content" of scripts did not create liability). Second, Plaintiff's TCPA claim is triggered only by sending an unsolicited outbound text message—not the use of bags or trayliners. *See* 41 U.S.C. § 227(b)(1)(A)(iii). In short, Plaintiff has not demonstrated that Taco Bell's review or oversight of its trademarks is sufficient to demonstrate that the Chicago Association is an "instrumentality" of Taco Bell, or that an agency relationship existed.

### H. The Marketing Funds Policy Does Not Establish Taco Bell's Liability

Plaintiff argues that Taco Bell has implemented a "Marketing Funds Policy" to oversee the franchisees' use of Taco Bell's trademarks. But Taco Bell has the legal right, indeed, the duty, to do so under federal law. *See Kiobel v. Royal Dutch Petroleum*, 621 F.3d 111, 195 (2d Cir. 2010) (holding that "allegations that Shell approved certain conduct undertaken by SPDC does not show an agency relationship"). Indeed, as a matter of law, Taco Bell is legally permitted to create policies and guidelines for franchisees without triggering vicarious liability. *See Juarez*, 273 F.R.D. at 582-83 (setting aside from agency analysis "policies required to protect [the franchisor's] service mark and goodwill," and holding that no agency

or employer-employee relationship existed between franchisor and franchisee).[5] Moreover, even the general, but unexercised, right to control is insufficient to establish an agency relationship. *See Joiner*, 966 F. Supp. at 1490 (holding that an actor is not subject to liability if he fails to exercise his ability to control the action of third persons, even if it could be done "with only the most trivial of efforts and without any inconvenience to himself.").

## I. References In The Text Message To "Taco Bell" Do Not Trigger Vicarious Liability

Plaintiff argues that the text message included the term "Taco Bell." (Pl. SUF 71.) That fact has not been established, in no small part because Plaintiff destroyed the text message before filing her suit. Nevertheless, this fact is not material because even if Plaintiff was correct, the shared use of logos and titles is insufficient to establish alter ego or agency liability. *See Salkin v. United States Auto Ass'n*, 767 F. Supp. 2d 1062, 1066-67 (C.D. Cal. 2011) (holding that "presence of [] logo on documents and correspondence" did not prove alter ego liability) (citing *BBA Aviation PLC v. Superior Court*, 190 Cal. App. 4th 421, 431(2010)). Even extensive use of a common name and logo is insufficient to demonstrate an agency or alter ego relationship, because such use is not evidence of day-to-day control. *BBA Aviation*, 190 Cal. App. 4th at 431 (holding that use of brand on "signage, uniforms, and stationary" did not constitute substantial evidence of vicarious liability).[6]

---

[5] *See also Campagnolo*, 2010 WL 2079694, at *8 (ability to exercise control "owing to [] ownership of [] trademark" not sufficient to prove vicarious liability); *Wyatt*, 2006 WL 16663676, at *3 (holding that Ford's creation of guidelines for management of dealer did not create triable issue of fact); *Cislaw*, 4 Cal. App. 4th at 1292 (holding that a "franchisor's interest in the reputation of its entire system allows it to exercise certain controls over the enterprise without running the risk of transforming its independent contractor franchisee into an agent").

[6] *See also In re Motor Fuel Temperature Sales Practices Litig.*, Nos. 06-2582-KHV, 07-1840-KHV, 2012 WL 1536161, at *7 (D. Kan. Apr. 30, 2012) (holding that use

### J. Corporate Forms Were Followed

Plaintiff offers little to no evidence that Taco Bell and the Chicago Association did not follow appropriate corporate firms. The board of directors regularly held meetings, and in this particular case, voted on the Nachos BellGrande promotion. Minutes of meetings were taken. A membership vote was also held. Plaintiff has not offered evidence, in other words, to overcome the presumption that the Chicago Association was a separate corporate entity from Taco Bell.

### K. Plaintiff Offers No Evidence That Failure To Pierce The Corporate Veil "Would Sanction A Fraud Or Promote Injustice"

Plaintiff has not demonstrated that failure to pierce the veil "would sanction a fraud or promote injustice." *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991). There is no evidence that the Chicago Association was formed to escape legal liabilities, or to "squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation." *Id.* at 524. Indeed, Plaintiff attempted to include the Chicago Association in this lawsuit. (Dkt. No. 27.) There is no evidence that the Chicago Association is merely a sham corporation to avoid legal liability.

### III. Ms. Thomas Offers No Evidence Of An Alter Ego Or Agency Relationship Between ESW Partners And Ipsh.

Plaintiff offers no probative evidence at all to demonstrate an agency relationship between ESW Partners and Ipsh, the sender of the text message. Thus,

---

of franchisee's use of franchisor's name and logo was "not enough to permit a reasonable jury to infer that the franchisee is [franchisor]'s agent"); *Enterprise Rent-A-Car*, 735 F. Supp. 2d at 323 ("Enterprise Rent-A-Car is portrayed as a single brand to the public, but this evidence does not demonstrate the necessary control by defendant parent over the subsidiaries."); *Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 637 F. Supp. 2d 1029, 1041 (M.D. Fla. 2009) ("[A] franchisee's mere use of the franchisor's trademarks is insufficient as a matter of law to establish the reliance prong of apparent authority.").

even if there were a triable issue of fact as to the relationship between Taco Bell and the Chicago Association, Plaintiff has offered no facts to demonstrate such a relationship between ESW Partners and Ipsh.  The only evidence in front of this Court is a contract between Ipsh and ESW Partners which disclaims an agency relationship and establishes an independent contractor relationship.  While it is true that a court may disregard the parties' labels depending on the facts of the case, that evidence can be considered in the absence of contradicting facts.  For that reason, Taco Bell's potential liability is cut off before it ever reaches the third-party, Ipsh, that made the call.

## **CONCLUSION**

Plaintiff having failed to demonstrate that Taco Bell either sent the text message described in the Fourth Amended Complaint, or to show that Taco Bell can be held vicariously liable for a third party's transmission of the text message, fails to raise a genuine issue of material fact as to Taco Bell's liability.  Summary judgment for Taco Bell is hereby **GRANTED** as to the Fourth Amended Complaint.

**IT IS SO ORDERED.**


Dated: _____, 2012          _____
                                       Hon. Cormac J. Carney
                                       United States District Court Judge

Respectfully submitted,

Dated: June 1, 2012                **ARENT FOX LLP**

By:     */s/ Stephen G. Larson*
Stephen G. Larson
Attorneys for Defendant
TACO BELL CORP.